**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CINDY GLASS PEASLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 3167 |
| v. | ) | |
| | ) | Judge Samuel Der-Yeghiayan |
| ILLINOIS STUDENT ASSISTANCE | ) | |
| COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT ILLINOIS STUDENT ASSISTANCE COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, the Illinois Student Assistance Commission (hereinafter "ISAC"), by and through its attorney, LISA MADIGAN, Illinois Attorney General, hereby submits the following memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), on the basis that the Eleventh Amendment deprives the Court of subject matter jurisdiction over ISAC, an agency of the State of Illinois, and in support of its request that this Court strike Plaintiff's request for injunctive relief:

### BACKGROUND

Plaintiff filed this action on June 2, 2008 claiming a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.* Specifically, Plaintiff claims that the United States Department of Education discharged her student loan based on permanent disability, but that the Illinois Student Assistance Commission has given information to various credit reporting agencies that the account status is "payment after charge off/collection." (Complaint, ¶5, 6) Plaintiff claims this status is inaccurate and that she disputed this information to the three main credit reporting agencies (Trans Union, Equifax and Experian). (Complaint, ¶9) Plaintiff further

alleges "upon information and belief" that the credit agency notified ISAC of the dispute, but that ISAC continued to publish and disseminate the inaccurate information thus damaging Plaintiff.  (Complaint, ¶10, 12, 14).

Plaintiff's claims of damages are based on the out of pocket expense of disputing the information, emotional distress and mental anguish resulting from the inaccurate information and "decreased credit score which *may* result in inability to obtain credit on future attempts." (Complaint, ¶14, emphasis added)  Plaintiff claims that the actions of ISAC were in violation of the FCRA, namely with respect to sections §1681n, §1681o and §1681s-2(b).  (Complaint, ¶21) Plaintiff seeks actual, statutory and punitive damages as well as injunctive relief in the form of court orders directing that ISAC correct the information and provide updated information to all entities who received the allegedly inaccurate information.  (Complaint, p. 5)

## ARGUMENT

## I.    PLAINTIFF'S COMPLAINT AGAINST ISAC MUST BE DISMISSED FOR LACK OF JURSIDICTION PURSUANT TO THE ELEVENTH AMENDMENT

ISAC is entitled to Eleventh Amendment immunity in this case and therefore Plaintiff's complaint must be dismissed with prejudice in its entirety.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  The Eleventh Amendment has further been interpreted to provide immunity to states "from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  Additionally, the Eleventh Amendment applies not only to a state itself but also to state agencies.  *Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991); *Envoy v. Ill. State Police*, 429 F. Supp. 2d 989, 992 (N.D. Ill. 2006).  There are,

however, two circumstances in which the Eleventh Amendment does not provide immunity to a State:  (1) abrogation of sovereign immunity by Congress and (2) when a State voluntarily waives such immunity and consents to be sued in federal court.  *Tennessee v. Lane*, 541 U.S. 509, 521 (2004); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

### A.    Congress Did Not Abrogate Eleventh Amendment Immunity

As noted above, Congress does have the authority to abrogate a state's sovereign immunity under the Eleventh Amendment, but specific criteria demarcate when Congress can abrogate immunity.  First and foremost, Congress must unequivocally express its intent to abrogate such immunity, and second, the abrogation must be pursuant to a valid grant of constitutional authority.  *Fitzpatrick*, 427 U.S. at 456.  There is no such abrogation in this case under the FCRA.

Under the FCRA, the term "person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. §1681(b).  At no point in this definition does Congress specifically and unequivocally express its intent that a "government or governmental subdivision or agency" effect an abrogation of sovereign immunity.  However, even if this Court were to assume that the definition was intended to abrogate state sovereign immunity, there is no valid grant of constitutional authority in this case.  Congress may only abrogate Eleventh Amendment sovereign immunity under Section 5 of the Fourteenth Amendment; it may not abrogate a State's Eleventh Amendment immunity pursuant to Article I's Commerce Clause.  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59-66 (1996).  As the FCRA was enacted pursuant to the Commerce Clause, no such abrogation by Congress is possible.

Numerous Federal Courts have already recognized that Eleventh Amendment immunity applies to claims brought by individuals against states and state agencies under the FCRA. *See Betts v. Commonw. of Va.*, 2007 WL 515406, Slip Copy (E.D. Va. 2002); *O'Diah v. New York City*, 2002 WL 1941179 at *6 (S.D.N.Y. 2002)(unreported opinion, attached as Exhibit A); *Richmond v. TRW Info Servs. Div.*, 1997 WL 1037886 at *4 (S.D. Cal. 1997)(unreported opinion, attached as Exhibit B). Notably, the Central District of Illinois has already rendered an opinion on this matter as it applies to ISAC. In *Sorrel v. ISAC*, 314 F.Supp.2d 813 (C.D. Ill. 2004), the Court ruled that claims brought against ISAC pursuant to the FCRA were barred by the Eleventh Amendment, finding that Congress did not have the authority to abrogate such immunity under the Commerce Clause. *Id.* at 817.

**B.      Neither Illinois or the Illinois Student Assistance Commission Have Waived Eleventh Amendment Immunity Pursuant to the FCRA**

Neither the State of Illinois nor ISAC have waived Eleventh Amendment immunity under the FCRA. The District Court in the *Sorrel* case recognized as such, finding that no waiver existed such to subject ISAC to the jurisdiction of the Federal Courts. *Id.*

Therefore, as there has neither been abrogation of the Eleventh Amendment by Congress nor a waiver by the State of Illinois or ISAC, Plaintiff's complaint must be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

**C.      Plaintiff May Not Seek Injunctive Relief Against ISAC**

Plaintiff in this case seeks not only actual, statutory and punitive damages, but also seeks injunctive relief in the form of court orders directing ISAC to correct the allegedly inaccurate information regarding Plaintiff's account and to notify those who requested credit information regarding Plaintiff of the correction. (Complaint, p. 5) However, the Eleventh Amendment also bars these claims for injunctive relief.

4

Although there are certain exceptions which allow a private individual to sue a state actor in his or her official capacity for injunctive relief, no such exception exists to permit a suit for injunctive relief against a state or its agencies. *See Ex Parte Young*, 209 U.S. 123 (1908); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)(finding *Ex Parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought.")

## II. PLAINTIFF'S PRAYER FOR INJUNCTIVE RELIEF SHOULD BE STRICKEN

As the Eleventh Amendment clearly bars Plaintiff's claims in this case, there should be no need for the court to address the propriety of the relief sought. However, in the event the Court does address Plaintiff's claims and prayer for relief, there is no proper claim for injunctive relief in this matter. As previously discussed, Sections 1681n and1681o provide remedies to individual consumers under the FCRA. The remedies set forth in these sections are actual/statutory damages, punitive damages and costs of the action and attorneys' fees. 15 U.S.C.A. §§ 1681n, 1681o. However, neither section grants a private individual injunctive relief. Rather, injunctive relief is available under Section 1681s(a) which grants enforcement power to the Federal Trade Commission ("FTC"). 15 U.S.C.A. §1681s(a)

In determining whether a court has the power to issue equitable relief, a Court looks to the statute, and must determine "if Congress has clearly and unambiguously limited the court's equity jurisdiction." *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 339 (N.D. Ill. 2002) In the present case under the FCRA, Defendant ISAC suggests that this Court adopt the reasoning of other courts and find that injunctive relief under the FCRA has been vested solely with the FTC.

Although the Seventh Circuit has made passing references which may suggest the availability of equitable relief in private actions under the FCRA, the court has not analyzed or definitively ruled on this issue. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001). In another case, *Albert v. Trans Union Corp.*, the Seventh Circuit reviewed the District Court's ruling that injunctive relief was not available in FCRA cases brought by private plaintiffs. 346 F.3d 734 (7th Cir. 2003). However, the Court specifically did not reach the issue of the availability of injunctive relief to private plaintiffs under the FCRA but rather ruled it lacked jurisdiction to hear the interlocutory appeal. *Id.*

Although the law in the Seventh Circuit is currently unclear, the Fifth Circuit has definitively ruled that in FCRA cases, injunctive relief is not available to private plaintiffs. In *Washington v. CSC Credit Servs., Inc.*, the Court recognized that the District Courts were split on the issue of the availability of injunctive relief, but held that:

> The affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC.

199 F.3d 263, 268 (5th Cir. 2000). An amendment to the FCRA, Section 1681u, bolstered this conclusion by expressly permitting injunctive relief in certain cases involving governmental gathering of credit information. *Id.* at 269. The Court found that "where Congress intended to allow private injunctive relief under the FCRA, it expressly stated that this relief was available. This language would be unnecessary if injunctive relief were otherwise available." *Id.* This decision is the only Circuit decision which analyzed and definitively ruled on this issue, and

therefore this Court is well within its discretion in adopting the Fifth Circuit's reasoning in *Washington*.

This holding has been also been adopted by Judge Gettleman in the case *In re Trans Union Corp.*, 211 F.R.D. at 339.  Additionally, the Western District of Wisconsin has also held that no injunctive relief is available to individuals under the FCRA.  *Anderson v. Capital One Bank*, 224 F.R.D. 444 (W.D. Wis. 2004).  Numerous other districts have also found no injunctive or other equitable relief is available, including those within the Second, Third, Fourth, Fifth, Seventh, Ninth, Tenth and Eleventh Circuits.[1]  *See also* 20 ALR Fed.2d 509, §60-64 (full discussion of the availability of equitable relief as a matter of law in a private FCRA suit).

There are courts which have found injunctive or other equitable relief to be available, including one unpublished Northern District decision (*Murray v. E\*Trade Fin. Corp.*, 2006 WL 2054381 at \*4 (N.D. Ill., 2006)(unreported opinion, attached as Exhibit D))[2], however these cases are not binding on this Court and therefore do not preclude this Court from following *Washington* and Judge Gettleman's opinion in *Trans Union*.  In *Murray v. E\*Trade*, Judge

---

[1]    *See White v. First Am. Registry, Inc.*, 378 F. Supp. 2d 419 (S.D. N.Y. 2005); *Bentley v. Providian Financial Corp.*, 2003 WL 22234700 (S.D. N.Y. 2003) (unreported opinion); *Miller v. CoreStar Fin. Group of Pa., Inc.*, 2006 WL 1876584 (E.D. Pa. 2006) (unreported opinion); *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525 (E.D. Va. 1998); *Poulson v. TransUnion, LLC*, 370 F.Supp.2d 592 (E.D. Tex. 2005); *Thompson v. Homecomings Fin.*, 2005 WL 3534234 (N.D. Tex. 2005) (unreported opinion); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328 (N.D. Ill. 2002); *Anderson v. Capital One Bank*, 224 F.R.D. 444 (W.D. Wis. 2004); *Hogan v. PMI Mortg. Ins. Co.*, 2006 WL 1310461 (N.D. Cal. 2006) (unreported opinion); *Yeagley v. Wells Fargo & Co.*, 2006 WL 193257 (N.D. Cal. 2006) (unreported opinion); *White v. E-Loan, Inc.*, 409 F. Supp. 2d 1183 (N.D. Cal. 2006); *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal. 2005); *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350 (D. Kan. 2006); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320 (D. Utah 1997); *Crowder v. PMI Mortg. Ins. Co.*, 2006 WL 1528608 (M.D. Ala. 2006) (unreported opinion); *Mangio v. Equifax, Inc.*, 887 F. Supp. 283 (S.D. Fla. 1995) (injunctive relief).  All unreported opinions are contained in Exhibit C.

[2]    There have been a few other District Courts in other Circuits which have allowed injunctive relief claims under the FCRA.  *See* 20 ALR Fed.2d 509, §62; *See also Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092 (D. Ariz. 1974), aff'd on other grounds, 524 F.2d 1145 (9th Cir. 1975); *Andrews v. Trans Union Corp., Inc.*, 7 F. Supp. 2d 1056 (C.D. Cal. 1998), aff'd in part and remanded on other grounds, rev'd in part on other grounds, 225 F.3d 1063 (9th Cir. 2000), Judgment rev'd and remanded on other grounds, 534 U.S. 19 (2001) and aff'd on other grounds, 289 F.3d 600 (9th Cir. 2001); *Natale v. TRW, Inc.*, 1999 WL 179678 (N.D. Cal. 1999)(unreported opinion).  However, the Northern District of California later held that equitable relief is not available as a matter of law.  *Yeagley v. Wells Fargo & Co.*, 2006 WL 193257 (N.D. Cal. 2006)(unreported opinion).  All unreported opinions are contained in Exhibit E.

Plunkett relied on the suggestion in *Murray v. GMAC Mortg. Corp.* (434 F.3d at 956) as potentially allowing injunctive relief. *Id.* The Court therefore denied Defendant's motion for judgment on the pleadings to preclude injunctive relief, but did so without prejudice. *Murray*, 2006 WL 2054381 at *4.

However, as *Murray v. E\*Trade* is an unreported case, and as the Seventh Circuit has not definitively addressed the issue of whether or not injunctive relief is available to private plaintiffs in FCRA cases, Defendant ISAC suggests this Court follow the reasoning of the Fifth Circuit in *Washington* and of Judge Gettleman in the *Trans Union* case. The language of Sections 1681n and 1681o, which clearly set forth the remedies available to a private plaintiff and do not include injunctive or equitable relief, when examined in conjunction with Section 1681s, authorizing the FTC to seek injunctions/equitable relief, are a clear indication that Congress intended injunctive and equitable relief to fall solely to the FTC. Therefore, Defendant ISAC respectfully requests this Court strike Plaintiff's request for injunctive relief.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant ISAC respectfully requests this Honorable Court dismiss Plaintiff's Complaint with prejudice as it is barred by the Eleventh Amendment. In the event the Court addresses Plaintiff's prayer for relief, Defendant ISAC respectfully suggests that Plaintiff's request for injunctive relief be stricken.

Respectfully submitted,

/s/ Meghan Maine
Meghan Maine
Assistant Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, IL  60601
(312) 814-5165
mmaine@atg.state.il.us

LISA MADIGAN
Illinois Attorney General

8

**EXHIBIT A**

*O'Diah v. New York City*
2002 WL 1941179



Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

**H**
O'Diah v. New York City
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Aror Ark O'DIAH, Plaintiff,
v.
NEW YORK CITY, the Puro Water Group, Richard
Ehlers, New York State, Nassau County, Tsunis &
Gasperis, Sears Roebuck and Company, Village of
Flower Hill, New York State Department of Motor
Vehicles, PA Transit Port Authority of Allegheny
County in Pittsburgh, Equifax Credit Information,
Experian, IPC International Corp., Trans Union,
Allied Spectaguard, Collectech, Inc., Credit Man-
agement Company, Mercy Hospital of Pittsburgh,
South Hills Ent., I.C. Systems, Inc., Jae Chil Kim
Rehab., Ford Motor Credit Corporation, Michigan
State University, Pierce Hamilton and Stern, North-
ern Glen Apartment Homes, Volkswagen Credit
Inc., Volkswagen of America Inc., Nassau County
Attorney, Nassau District Attorney, the United
States Court of Appeals for the Second Circuit,
NCO Financial Systems, Mercy Providence, New
York State Workers Compensation Board, Braun-
stein and Chase, L.L.C., City of Boston, U.S. Filter
Inc., Piping Rock Natural Water, and Leonard
Wexler, Defendants.
**No. 02 CIV. 274(DLC).**

Aug. 21, 2002.

Action was brought against private and public entit-
ies asserting statutory and constitutional claims, as
well as claims for harassment and libel, arising
from alleged conspiracy to discriminate against and
harass plaintiff based on race, national origin,
Christian values, and Republican party affiliation.
On defendants' motion to dismiss, the District
Court, Cote, J., held that: (1) res judicata barred
pursuit of some, but not all, claims; (2) sovereign
immunity protected New York Department of Mo-
tor Vehicles (DMV) and Workers' Compensation
Board from liability; (3) conclusory allegations re-

garding conspiracy between private defendants and
public officials failed to state § 1983 conspiracy
and civil rights conspiracy claims; (4) private right
of action against furnishers of credit information
did not exist under Fair Credit Reporting Act
(FCRA); (5) supplemental jurisdiction would not be
exercised over state law claims; and (6) issuance of
filing injunction against plaintiff would be proper.

Motions granted in part and denied in part.

West Headnotes

**[1] Judgment 228 ☞570(12)**

228 Judgment
    228XIII Merger and Bar of Causes of Action
and Defenses
        228XIII(A) Judgments Operative as Bar
            228k570 Judgment on Discontinuance,
Dismissal, or Nonsuit
                228k570(12) k. Want of Prosecution.
Most Cited Cases

**Judgment 228 ☞585(2)**

228 Judgment
    228XIII Merger and Bar of Causes of Action
and Defenses
        228XIII(B) Causes of Action and Defenses
Merged, Barred, or Concluded
            228k585 Identity of Cause of Action in
General
                228k585(2) k. What Constitutes
Identical Causes. Most Cited Cases
Former employee's claim against former employer
and related entities had to be dismissed on ground
of res judicata; earlier action against a related entity
had been dismissed for failure to prosecute, a final
adjudication on merits, and factual allegations in
the complaints indicated that former employee was
targeting the same alleged conduct. Fed.Rules
Civ.Proc.Rule 41(b), 28 U.S.C.A.

**[2] Judgment 228 ☞570(4)**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 2

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(A) Judgments Operative as Bar
            228k570 Judgment on Discontinuance, Dismissal, or Nonsuit
                228k570(4) k. Involuntary Dismissal or Nonsuit in General. Most Cited Cases
Res judicata would bar former employee from pursuing wrongful termination claims against former employer, although in employee's prior wrongful termination action against employer district court had failed to enter order dismissing all claims with prejudice for failure to replead within 30 days; in prior action, the claims were dismissed with permission to replead within 30 days, and former employee failed to comply with the order, and the order warned that dismissal of the action could result. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.

**[3] Judgment 228 ☞585(2)**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
            228k585 Identity of Cause of Action in General
                228k585(2) k. What Constitutes Identical Causes. Most Cited Cases

**Judgment 228 ☞587**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
            228k587 k. Theory of Action or Recovery. Most Cited Cases
Claims asserted against port authority, arising from port authority's alleged failure to pay medical bills incurred as result of bus accident, would be barred by res judicata; the wrong for which redress was sought, material facts and necessary evidence, and

theory of recovery were identical to prior state action against port authority.

**[4] Federal Courts 170B ☞269**

170B Federal Courts
    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
        170BIV(A) In General
            170Bk268 What Are Suits Against States
                170Bk269 k. State Officers or Agencies, Actions Against. Most Cited Cases
New York State Department of Motor Vehicles (DMV) and Workers' Compensation Board were protected by sovereign immunity from § 1983 claims arising from DMV's alleged conspiracy to issue traffic tickets to plaintiff and alleged denial of plaintiff's right to equal access to Workers' Compensation Board forum; DMV and the Board were state entities, for purposes of sovereign immunity, and the Civil Rights Act and § 1983 did not abrogate sovereign immunity. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983; Civil Rights Act of 1964, § 201 et seq., 42 U.S.C.A. § 2000a et seq.

**[5] Federal Courts 170B ☞265**

170B Federal Courts
    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
        170BIV(A) In General
            170Bk264 Suits Against States
                170Bk265 k. Eleventh Amendment in General; Immunity. Most Cited Cases
Fair Credit Reporting Act (FCRA) could not abrogate sovereign immunity, since Congress enacted the FCRA pursuant to Commerce Clause authority. U.S.C.A. Const. Art. 1, § 8, cl. 3; U.S.C.A. Const.Amend. 11; Consumer Credit Protection Act, § 602 et seq., as amended, 15 U.S.C.A. § 1681 et seq.

**[6] Conspiracy 91 ☞13**

91 Conspiracy
    91I Civil Liability

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 3

91I(A) Acts Constituting Conspiracy and Liability Therefor
91k12 Persons Liable
91k13 k. In General. Most Cited Cases
New York, New York Department of Motor Vehicles (DMV), and New York Workers' Compensation Board were not "persons" under civil rights conspiracy statute, as required to support civil rights conspiracy claims. 42 U.S.C.A. § 1985.

**[7] Federal Civil Procedure 170A ☞1837.1**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1837 Effect
170Ak1837.1 k. In General. Most Cited Cases

**Judges 227 ☞36**

227 Judges
227III Rights, Powers, Duties, and Liabilities
227k36 k. Liabilities for Official Acts. Most Cited Cases
Judge's actions would be protected by absolute immunity from civil liability arising from his judicial acts in landlord and tenant dispute, and thus, to extent former tenant named village as defendant in action to address alleged judicial misconduct in landlord and tenant dispute, claims against village had to be dismissed with prejudice.

**[8] Federal Courts 170B ☞287**

170B Federal Courts
170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
170BIV(B) Controversies Between Citizens of Different States
170Bk286 Coplaintiffs and Codefendants
170Bk287 k. Particular Cases. Most Cited Cases
Diversity jurisdiction did not exist over New York resident's claims in federal district court, where at

least seven defendants named in action were also New York residents.

**[9] Conspiracy 91 ☞18**

91 Conspiracy
91I Civil Liability
91I(B) Actions
91k18 k. Pleading. Most Cited Cases
Conclusory allegations regarding conspiracy between private defendants and public officials failed to state § 1983 conspiracy claim against private defendants, for alleged discrimination and harassment based on race, national origin, Christian values, and Republican party affiliation; no details of time and place were provided, and the factual basis necessary to enable the defendants to intelligently prepare their defense was not described. 42 U.S.C.A. § 1983.

**[10] Civil Rights 78 ☞1395(6)**

78 Civil Rights
78III Federal Remedies in General
78k1392 Pleading
78k1395 Particular Causes of Action
78k1395(4) Criminal Law Enforcement; Police and Prosecutors
78k1395(6) k. Arrest, Search, and Detention. Most Cited Cases
(Formerly 78k235(6))
*Monell* claim was not stated against municipal defendants, in action alleging false arrest and imprisonment, police brutality, and police harassment claims, absent factual allegations mentioning that municipalities espoused practice or custom of such behavior. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[11] Civil Rights 78 ☞1088(1)**

78 Civil Rights
78I Rights Protected and Discrimination Prohibited in General
78k1088 Police, Investigative, or Law Enforcement Activities

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 4

78k1088(1) k. In General. Most Cited Cases
(Formerly 78k132.1)
Robbery victim failed to identify federal law viol-
ated by county district attorney who failed to
provide victim with contact information for rob-
bers, as required for victim to state § 1983 claim
against county district attorney. 42 U.S.C.A. § 1983.

**[12] Conspiracy 91 ☞18**

91 Conspiracy
    91I Civil Liability
        91I(B) Actions
            91k18 k. Pleading. Most Cited Cases
Civil rights conspiracy claim, arising from alleged
conspiracy to deprive plaintiff of his constitutional
rights and property based upon his Christian values,
moral views, political affiliation with Republican
party, national origin, and race, primarily occurring
through dissemination of false credit information,
was not stated, absent facts demonstrating agree-
ment between any named defendants, when or
where any agreement was made, or precise nature
of such agreement. 42 U.S.C.A. § 1985.

**[13] Federal Civil Procedure 170A ☞1838**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1837 Effect
                    170Ak1838 k. Pleading Over. Most
Cited Cases
Leave to replead civil rights conspiracy claims
against public and private defendants would not be
proper, although plaintiff was pro se; motions to
dismiss claims set out in detail the pleading inad-
equacies, plaintiff submitted an opposition and un-
authorized sur-reply which repeated conclusory al-
legations of the complaint, and plaintiff had already
been given chance to replead conspiracy claim. 42
U.S.C.A. § 1985.

**[14] Credit Reporting Agencies 108A ☞4**

108A Credit Reporting Agencies
    108Ak4 k. Actions by or Against Agency. Most
Cited Cases
Private right of action against furnishers of credit
information did not exist under Fair Credit Report-
ing Act (FCRA) subsection relating to furnishers'
duty to report accurate information and ongoing
duty to correct inaccurate information. 15 U.S.C.A.
§ 1681s-2(a).

**[15] Civil Rights 78 ☞1326(10)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(10) k. Attorneys and Wit-
nesses. Most Cited Cases
    (Formerly 78k198(9))
Plaintiff failed to state claim against law firm, un-
der Civil Rights Act, absent allegations of state ac-
tion on part of law firm that would sustain a due
process or equal protection claim. Civil Rights Act
of 1964, § 201 et seq., 42 U.S.C.A. § 2000a et seq.

**[16] Fraud 184 ☞7**

184 Fraud
    184I Deception Constituting Fraud, and Liabil-
ity Therefor
        184k5 Elements of Constructive Fraud
            184k7 k. Fiduciary or Confidential Rela-
tions. Most Cited Cases
Port authority was not in fiduciary relationship with
passenger on port authority bus, as required to sup-
port passenger's breach of fiduciary duty claim
arising from port authority's alleged breach of a
promise to pay all medical expenses incurred fol-
lowing an accident.

**[17] Fraud 184 ☞7**

184 Fraud
    184I Deception Constituting Fraud, and Liabil-
ity Therefor

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 5

184k5 Elements of Constructive Fraud
    184k7 k. Fiduciary or Confidential Relations. Most Cited Cases
Judge did not have fiduciary relationship with tenant who was before judge in eviction proceeding, as required to support tenant's breach of fiduciary duty claim against judge.

**[18] Action 13 ⛒17**

13 Action
   13II Nature and Form
      13k17 k. What Law Governs. Most Cited Cases

**Civil Rights 78 ⛒1702**

78 Civil Rights
   78V State and Local Remedies
      78k1702 k. What Law Governs. Most Cited Cases
   (Formerly 78k448.1)
New York law's choice of law analysis would apply to supplemental state law claims the law of jurisdiction with most significant interest in, or relationship to, claims arising from state law disputes, in action arising from alleged conspiracy to discriminate against and harass plaintiff on basis of race, national origin, Christian values, and Republican party affiliation.

**[19] Labor and Employment 231H ⛒758**

231H Labor and Employment
   231HVIII Adverse Employment Action
      231HVIII(A) In General
         231Hk758 k. Wrongful Discharge in General. Most Cited Cases
   (Formerly 255k34.1 Master and Servant)
Under New York law, cause of action for tort of wrongful discharge did not exist.

**[20] Federal Courts 170B ⛒15**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General

         170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
            170Bk15 k. Federal Question Cases in General, Claims Pendent To. Most Cited Cases
District court would not exercise supplemental jurisdiction over former employee's state law wrongful discharge claims against former employer; wrongful discharge claims against former employer could be severed from remaining claims allegedly arising from conspiracy to discriminate against and harass plaintiff based on race, national origin, Christian values, and Republican party affiliation. 28 U.S.C.A. § 1367(c)(3).

**[21] Federal Civil Procedure 170A ⛒1742(5)**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)2 Grounds in General
            170Ak1742 Want of Jurisdiction
               170Ak1742(5) k. Improper Venue. Most Cited Cases

**Federal Civil Procedure 170A ⛒1837.1**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1837 Effect
               170Ak1837.1 k. In General. Most Cited Cases
Former employee's wrongful termination claim against former employer would be dismissed with prejudice to extent former employee should seek to refile it in venue other than the district in which the employment relationship and termination occurred; alleged civil rights conspiracy claims, which relied in part upon wrongful termination claim, were dismissed and could not provide basis for retention of jurisdiction for improperly venued claim. 28 U.S.C.A. § 1391(b).

**[22] Federal Courts 170B ⛒431**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 6

170B Federal Courts
   170BVI State Laws as Rules of Decision
      170BVI(C) Application to Particular Matters
         170Bk431 k. Torts in General; Indemnity and Contribution. Most Cited Cases
Although New York and Pennsylvania each imposed strict pleading requirements on claims sounding in defamation, defamation action, under New York and Pennsylvania law, brought in federal court would be governed by federal procedural rule governing pleading, requiring a short and plain statement of claim. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.; N.Y. McKinney's CPLR Rule 3016(a).

**[23] Libel and Slander 237 ⟜80**

237 Libel and Slander
   237IV Actions
      237IV(B) Parties, Preliminary Proceedings, and Pleading
         237k79 Declaration, Complaint, or Petition
            237k80 k. Form and Requisites in General. Most Cited Cases
Allegations in defamation complaint, asserting claims under New York and Pennsylvania law arising from allegedly false credit reporting information, failed to disclose sufficient information to permit defendants to understand basis of plaintiff's complaints, and thus claims were required to be dismissed under procedural rule governing notice pleading. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[24] Federal Courts 170B ⟜15**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
            170Bk15 k. Federal Question Cases in General, Claims Pendent To. Most Cited Cases

**Federal Courts 170B ⟜18**

170B Federal Courts

170BI Jurisdiction and Powers in General
   170BI(A) In General
      170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
         170Bk18 k. Validity or Substantiality of Federal Claims and Disposition Thereof. Most Cited Cases
Supplemental jurisdiction would not be exercised on Massachusetts law conversion claim against automobile loan creditor, following creditor's alleged taking of vehicle from purchaser; no federal claims remained in the action, diversity jurisdiction did not exist, and state law conversion claim was severable from defamation and other state law claims which had been pleaded as part of civil rights conspiracy to discriminate against and harass plaintiff on basis of race, national origin, Christian values, and Republican party affiliation.

**[25] Antitrust and Trade Regulation 29T ⟜358**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(E) Enforcement and Remedies
         29TIII(E)5 Actions
            29Tk356 Pleading
               29Tk358 k. Particular Cases. Most Cited Cases
   (Formerly 92Hk38 Consumer Protection)

**Products Liability 313A ⟜73.5**

313A Products Liability
   313AII Actions
      313Ak72 Pleading
         313Ak73.5 k. Automobile Cases. Most Cited Cases
Gross and reckless negligence claims and alleged lemon law violations did not comply with notice pleading requirements, in action against automobile manufacturer arising from automobile accident; plaintiff failed to allege where vehicle was purchased, which state's lemon law manufacturer had violated, which defendant was liable, or where

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

automobile accident occurred, but rather, defendant attached a recall notice for braking system defect to complaint. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[26] Injunction 212 �kö 26(5)**

212 Injunction
    212II Subjects of Protection and Relief
        212II(A) Actions and Other Legal Proceedings
            212k26 Commencement and Prosecution of Civil Actions
                212k26(5) k. Successive Actions. Most Cited Cases
Issuance of filing injunction against litigant would be proper, to prevent harassment through abuse of the legal system; litigant received notice and opportunity to be heard and failed to oppose injunction, although litigant had opposed and filed unauthorized sur-reply to dismissal motions filed in underlying action.

Aror Ark O'Diah, pro se, Timespeed Information, Hicksville.
Rachel A. Seligman, Assistant Corporation Counsel, New York City Law Department, New York, for Defendant New York City.
Elliot D. Bernak, Jackson Lewis LLP, Woodbury, for Defendant Puro Water Group, Inc., sued herein as The Puro Water Group and U.S. Filter Inc.
Mary D. Tierney, Michael T. Clifford & Associates, PLLC, Riverhead, for Defendant the Honorable Richard A. Ehlers, sued herein as Richard Ehlers.
Benjamin J. Lee, Assistant Attorney General, New York, for Defendants New York State, New York State Department of Motor Vehicles, sued herein as New York State Department of Motor Vehicle, and New York State Workers' Compensation Board.
Nelly Stotland, Office of the Nassau County Attorney, Mineola, for Defendants Nassau County, Nassau County Attorney, and Nassau County District Attorney, sued herein as Nassau District Attorney.
Roy S. Dragotta, Tsunis, Gasparis & Dragotta, LLP, Hauppauge, Long Island, for Defendant Tsunis & Gasparis, LLP, sued herein as Tsunis and Gasperis.
Mark S. Mancher, Jackson Lewis LLP, Woodbury, for Defendant Sears Roebuck and Company.
Michael A. Miranda, Miranda & Sokoloff, LLP, Mineola, for Defendant Village of Flower Hill.
Nicholas J. Evashavik, Evashavik & Evashavik, Pittsburgh, PA, for Defendant Port Authority of Allegheny County, sued herein as PATransit Port Authority of Allegheny County in Pittsburgh.
Christine Marie Fecko, Ross & Hardies, New York, for Defendant Equifax Credit Information.
Sevan Ogulluk, Jones, Day, Reavis & Pogue, New York, for Defendant Experian.
Kevin T. Hughes, Lord, Bissell & Brook, New York, for Defendant IPC International Corp., sued herein as IPC International.
Bruce S. Luckman, Timothy P. Creech, Satzberg, Trichon, Kogan & Wertheimer, P.C., Philadelphia, PA, for Defendant Trans Union.
Francine N. Silverstein, Duane Morris LLP, New York, for Defendants Allied Spectaguard, Mercy Hospital of Pittsburgh, sued herein as Mercy Hospital, and Mercy Providence Hospital, sued herein as Mercy Providence.
Michael C. O'Malley, Ohrenstein & Brown, LLP, Garden City, for Defendant Collectech Inc.
Carl A. Ronald, Tucker Arensburg PC, Pittsburgh, PA, for Defendant South Hills Ent.
Kenneth A. Elan, Esq., New York, for Defendant I.C. System, Inc., sued herein as I.C. Systems Inc.
Mark G. Ledwin, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, for Defendant Ford Motor Credit Company, sued herein as Ford Motor Credit Corporation.
Michael J. Kiley, Office of the General Counsel, Michigan State University, East Lansing, MI, for Defendant Michigan State University.
Carl T. Grasso, Hertzfield & Rubin, P.C., New York, for Defendants Volkswagen Credit Inc. and Volkswagen of America Inc.
Kevin Barry McHugh, Jacobowitz, Garfinkel & Lesman, New York, for Defendant NCO Financial Systems.
David J. Breen, Assistant Corporation Counsel, City of Boston Law Department, Boston, MA, for

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                      Page 8
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Defendant City of Boston.

### OPINION AND ORDER

COTE, District J.

**\*1** Plaintiff *pro se* Aror Ark O'Diah ("O'Diah") filed this action on January 11, 2002, asserting claims against thirty-eight defendants, including statutory and constitutional claims, as well as claims for harassment, libel, and "moral and racial turpitude." O'Diah's principal claim appears to be that all of the defendants conspired to discriminate against and harass him based on his race and national origin, as well as his Christian values and Republican party affiliation. Specifically, O'Diah alleges that the defendants conspired to make false representations that the plaintiff owes child support and other monies, which resulted in unfavorable credit reports, garnishment of the plaintiff's wages, repossession of his automobile, eviction, and other problems. O'Diah also makes more particular allegations concerning specific incidents of harassment by certain defendants. The principal incidents alleged include false credit reporting, police harassment, brutality and false arrest, and denial of access to courts and administrative bodies. The plaintiff's complaint references alleged wrongs against him committed in four states over the last six years.[FN1] The alleged co-conspirators are individuals, corporations, former employers, judges, the Second Circuit Court of Appeals, and state and local governmental bodies.

> FN1. The complaint is 29 pages long, not including the 44 pages of exhibits appended to the complaint, and consists of 24 numbered paragraphs, some of which are greater than one full page in length.

Twenty-three defendants have moved to dismiss the complaint for various reasons including failure to state a claim and *res judicata*.[FN2] For the various reasons that follow, the motions to dismiss are granted. O'Diah is given leave to replead certain claims.

FN2. Motions to dismiss have been filed by the following defendants: the City of Boston, Allied Spectaguard, Mercy Hospital of Pittsburgh (sued herein as Mercy Hospital), Mercy Providence Hospital (sued herein as Mercy Providence), New York State, the New York State Department of Motor Vehicles, the New York State Workers' Compensation Board, Volkswagen Credit, Inc., Volkswagen of America Inc., IPC International Corp. (sued herein as IPC International), New York City, Nassau County, the Nassau County Attorney, the Nassau County District Attorney (sued herein as the Nassau District Attorney), the Port Authority of Allegheny County (sued herein as PATransit Port Authority of Allegheny County in Pittsburgh), Puro Water Group, Inc., U.S. Filter Inc., Sears Roebuck and Company, the Honorable Judge Richard A. Ehlers (sued herein as Richard Ehlers), the Village of Flower Hill, I.C. System, Inc. (sued herein as I.C. Systems, Inc.), Ford Motor Credit Company (sued herein as Ford Motor Credit Corporation), and Tsunis & Gasparis, LLP (sued herein as Tsunis & Gasperis). Answers have been filed by the following defendants: Trans Union, the Village of Flower Hill, Nassau County, the Nassau County Attorney, the Nassau County District Attorney, Volkswagen Credit Inc., Volkswagen of America, Inc., Experian, NCO Financial Systems, and Equifax Credit Information. The plaintiff has filed affidavits of service with respect to all defendants except Northern Glen Apartment Homes, for which the plaintiff has filed an affidavit of "attempted" service, and Experian.

### BACKGROUND

The plaintiff has previously filed lawsuits against some of the defendants in this action. In an action

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 9

against the Port Authority of Allegheny County (the "Port Authority") in the Court of Common Pleas of Allegheny County, the plaintiff asserted claims based on the same events alleged in this action. In two separate actions in the United States District Court for the Eastern District of New York, he asserted claims against several defendants arising out of the same events alleged in this action.

*1996 Allegheny County Suit Against Port Authority*

O'Diah filed an action regarding a September 7, 1996 bus accident in Allegheny County against the Port Authority, in which he alleged the same facts and injuries he alleges in this action with respect to the same bus accident. In both suits he claims essentially that the Port Authority promised to pay his medical bills and then did not, and that such failure to pay injured his credit. The Allegheny County action was dismissed with prejudice for failure to comply with a Court Order on August 11, 1999. The Commonwealth Court of Pennsylvania affirmed the decision of the trial court by Order of March 2, 2000, and O'Diah's petition for appeal to the Pennsylvania Supreme Court was denied on August 22, 2000.

*Eastern District Actions*

In an action filed in the Eastern District of New York on December 7, 1999 (No. 99 Civ. 8010) ("1999 Eastern District Action"), O'Diah asserted claims against the following defendants also named in this action: U.S. Filter, Inc. ("U.S.Filter"); Piping Rock Natural Water ("Piping Rock"); IPC International Corporation ("IPC"); the City of Boston; Michigan State University; the Port Authority; and Volkswagen of America Inc. ("Volkswagen"), based on the same incidents that underlie the claims in the instant action.

*2 O'Diah alleged that the Port Authority had failed to pay his medical expenses in connection with a bus accident as promised and that, as a result, reports of unpaid bills were made to credit reporting

agencies. He alleged that Michigan State University denied him equal access to University transportation and made false reports to credit reporting agencies that he had defaulted on student loans. He alleged that his vehicle was vandalized in Boston, and that he was assaulted by a Boston police officer at a train station. O'Diah alleged that IPC had wrongfully terminated his employment, owed him unpaid wages, and made misrepresentations about him to his employers. He alleged that U.S. Filter had wrongfully terminated his employment and that his car was vandalized on corporate property. He alleged that a defect in his Volkswagen caused an accident, and that Volkswagen failed to replace the vehicle as promised. Finally, O'Diah alleged that Piping Rock "influenced" U.S. Filter to fire him. The claims asserted by O'Diah in the 1999 Eastern District Action included deprivation of constitutional rights, violation of the Civil Rights Act of 1964, violation of Sections 1983 and 1985 of Title 42, United States Code, breach of fiduciary duty, unpaid wages, gross negligence, and libel.

The claims against IPC, the City of Boston, Michigan State University, the Port Authority and Volkwagen, among others, were dismissed with prejudice to their refiling in the Eastern District on March 28, 2000.[FN3] Motions to dismiss by U.S. Filter and related entities, and by Piping Rock and individuals associated with these defendants were denied. On April 18, 2000, O'Diah filed a notice of appeal from the March 28 Order dismissing some of the defendants with prejudice in the Eastern District. The appeal was dismissed on September 26, 2000, when the Second Circuit determined that it lacked jurisdiction because the action had not yet been terminated as to all parties.

> FN3. Although the March 28 Order states only that the claims against these defendants are dismissed with prejudice, the hearing preceding the Order indicated that the dismissal was with prejudice in the Eastern District of New York but without prejudice to refiling in the proper jurisdiction.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 10

While the 1999 Eastern District Action was still pending with respect to defendants U.S. Filter, Piping Rock and related entities and individuals, [FN4] plaintiff filed a second action in the Eastern District on October 31, 2000 (No. 00 Civ. 6519) ("2000 Eastern District Action"). That action asserted claims against the following defendants also named in this action: Puro Water Group ("Puro") d/b/a U.S. Filter and Culligan, Long Real Estate Limited Partnership d/b/a Northern Glen Apartment Homes ("Northern Glen"), The Hon. Richard Ehlers ("Judge Ehlers"), Tsunis & Gasparis LLP ("Tsunis"), Sears Logistic Service Inc.,[FN5] Allied Spectaguard ("Allied"), The Hon. Leonard Wexler ("Judge Wexler"), Volkswagen, the Port Authority, IPC, the City of Boston, Michigan State University, and Nassau County.

> FN4. In the 1999 Eastern District complaint, O'Diah alleged that U.S. Filter "trades" as Culligan Bottled Water and Nature Best.

> FN5. O'Diah has named Sears Roebuck and Company ("Sears") as a defendant in this action.

The claims against these defendants included claims asserted against them in the instant suit. O'Diah alleged that Puro influenced Northern Glen to file a false eviction claim, made misrepresentations about him to his employers, and that his car was vandalized while on Puro's property. He alleged that Northern Glen, Tsunis, and Judge Ehlers conspired to evict him although he owed no rent, and reported him to credit collection agencies. He alleged that he was assaulted at Sears Logistic Services by a co-worker and that his employment was terminated in retaliation for complaints he had made about discrimination. O'Diah alleged that he was coerced to quit his job with IPC, that IPC owed him unpaid wages, and that his car was vandalized while parked at the mall where he worked for IPC. He alleged that Judge Wexler conspired to harass him and to deny him equal protection of the laws and access to the courts, and obstructed justice by

dismissing the 1999 Eastern District Action. He alleged that his Volkswagen automobile was involved in an accident because of a manufacturing defect which was concealed by the auto manufacturer. Finally, O'Diah alleged police brutality against the City of Boston based on the train station incident. The claims asserted by O'Diah included unconstitutional harassment, product liability, personal injury, lost wages, libel and housing discrimination.[FN6]

> FN6. O'Diah also asserted employment discrimination in the 2000 Eastern District Action, but does not appear to do so in the instant suit.

*3 While the 2000 Eastern District Action was pending, through an order entered in the 1999 Eastern District Action on May 17, 2001 ("May 17 Order"), the claims against U.S. Filter, Piping Rock, and related entities and individuals were dismissed with prejudice for failure to prosecute, based on the plaintiff's refusal to submit to a deposition, his failure to respond properly to defendants' discovery requests, and his failure to attend court-ordered conferences. The Clerk of Court was directed to close the case, and judgment was entered in the 1999 Eastern District Action with respect to all defendants on May 30, 2001.

Through an order issued in the 2000 Eastern District Action on May 24, 2001 (the "May 24 Order"), the court dismissed the claims against a number of defendants, including the following defendants also named in this action: IPC, the City of Boston, Michigan State University, the Port Authority, and Volkswagen, with prejudice to their re-filing in the Eastern District, but without prejudice to their filing in the "proper jurisdiction." The May 24 Order also dismissed with prejudice the claims against Judges Ehlers and Wexler pursuant to the doctrine of absolute judicial immunity. Finding that O'Diah had not sustained his burden of pleading his claim that all of the remaining defendants conspired to violate his constitutional rights, the court granted O'Diah leave to file an amended complaint within thirty days, and instructed the plaintiff to show in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

that amended pleading that there was a valid reason for joinder of his claims within the meaning of Rule 20, Fed.R.Civ.P., and to show that an Eastern District court had jurisdiction over the defendants remaining in the action. O'Diah never filed an amended pleading.[FN7]

> FN7. No final judgment was entered on the docket in the 2000 Eastern District Action.

On June 15, 2001, O'Diah filed a notice of appeal with the Court of Appeals for the Second Circuit, seeking review of the March 28 and May 17 Orders as well as the judgment in the 1999 Eastern District Action. His appeal was dismissed on July 11, 2001, for failure to pay the filing fee.

DISCUSSION

A. *Res Judicata*

The plaintiff's claims against Puro, U.S. Filter, Sears, and all of plaintiff's claims against the Port Authority with the exception of one defamation claim relating to Michigan State University, must be dismissed on the ground of *res judicata.*[FN8] Under the federal doctrine of *res judicata,* a final judgment on the merits of a federal action bars the parties or their privies "from relitigating claims that were or could have been raised in [the] prior action against the same defendant."*LTec Elec. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 87 (2d Cir.1999) (per curiam).*See also Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir.), *cert. denied,*531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000)."Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence."*L-Tec,* 198 F.3d at 88.

> FN8. Although IPC, the City of Boston, and Volkswagen have moved to dismiss O'Diah's claims against them on the ground of *res judicata* because of the dismissals in the Eastern District, the dis-

missals of claims against those defendants were without prejudice to the filing of such claims in a venue other than the Eastern District. "It is well established that a dismissal without prejudice has no *res judicata* effect on a subsequent claim."*Camarano v. Irvin,* 98 F.3d 44, 47 (2d Cir.1996) (per curiam).

Under the Full Faith and Credit Act, "judicial proceedings of any court of any [ ] State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."28 U.S.C. § 1738. Consequently, the proceedings brought in Allegheny County against the Port Authority are given the same preclusive effect that they would be given by the Pennsylvania courts. *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 87 (2d Cir.2000). Under Pennsylvania law, "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action."*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1429 (3d Cir.1994) (citation omitted). In Pennsylvania, "[a]pplication of the doctrine of *res judicata* requires the concurrence of four elements. They are (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; [and] (4) identity of the quality in the persons for or against whom the claim is made."*Id.* (citing *City of Pittsburgh v. Zoning Bd. of Adjustment,* 522 Pa. 44, 559 A.2d 896, 901 (Pa.1989)); *see also Yamulla Trucking & Excavating Co. v. Justofin,* 771 A.2d 782, 784 (Pa.Super.Ct.), *appeal denied,*566 Pa. 686, 784 A.2d 119 (Pa.2001) (citations omitted). While there is "no bright-line test" for determining when the causes of action in two suits are identical under Pennsylvania law for *res judicata* purposes, the criteria relevant to making this determination include:

**\*4** (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1065 (3d Cir.1991) (citation omitted).

*Puro and U.S. Filter*

[1] O'Diah's claims against U.S. Filter, Piping Rock and related entities and individuals were dismissed with prejudice in the 1999 Eastern District Action for failure to prosecute. Prior to these dismissals, O'Diah's claims against all other defendants had been dismissed. Judgment was entered with respect to all defendants in the 1999 Eastern District Action on May 30, 2001. A dismissal for failure to prosecute constitutes a final adjudication on the merits, *see* Rule 41(b), Fed.R.Civ.P., and requires the dismissal of O'Diah's claims against U.S. Filter on the ground of *res judicata.* The judgment in the 1999 Eastern District Action also requires the dismissal of O'Diah's claims against Puro, an affiliate of U.S. Filter, on the ground of *res judicata.*[FN9] The factual allegations in the three federal complaints indicate that O'Diah is targeting the same alleged conduct when he names either U.S. Filter or Puro.

> FN9. In the 2000 Eastern District Action, O'Diah named Puro d/b/a U.S. Filter and Culligan as defendants.

*Sears*

[2] Sears Logistic Service Inc. ("Sears Logistic") was named as a defendant in the 2000 Eastern District Action. Although Sears is the named defendant in this action, the allegations in both complaints make it clear that O'Diah's claims address the same alleged conduct by the same entity. Sears Logistic filed an answer in the 2000 Eastern District Action on January 17, 2001, thus preventing O'Diah from

voluntarily dismissing his claims against it pursuant to Rule 41(a), Fed.R.Civ.P. O'Diah's claims against Sears Logistic were later dismissed through the May 24 Order, and he did not replead those claims within thirty days as the order permitted.[FN10] In the May 24 Order, the court warned O'Diah that his "failure to comply" with the order "may result in dismissal of [the] action pursuant to Rule 41(b)," Fed.R.Civ.P. As previously noted, final judgment was not entered on the docket in the 2000 Eastern District Action.

> FN10. Defendant Allied has also moved to dismiss the claims asserted against it in this action pursuant to the doctrine of *res judicata* .While O'Diah's claims against Allied were dismissed with leave to replead through the May 24 Order in the same way that his claims against Sears Logistic were, Allied had not filed an answer in the 2000 Eastern District Action. Because Allied had not answered, O'Diah was free to withdraw his action against Allied voluntarily and without obtaining permission from the court. Rule 41(a)(1), Fed.R.Civ.P.; *see also Hester Indus., Inc. v. Tyson Foods, Inc.,* 160 F.3d 911, 916 (2d Cir.1998).

A judgment must be final in order to have preclusive effect, and finality for purposes of *res judicata* is generally the same as that required for appealability under the final judgment rule. *See Pure Distrib., Inc. v. Baker,* 285 F.3d 150, 156-57 (1st Cir.2002) (collecting cases); *Burge v. Parish of St. Tammany,* 187 F.3d 452, 467 (5th Cir.1999); *Shamley v. ITT Corp.,* 869 F.2d 167, 170 (2d Cir.1989); *First Alabama Bank of Montgomery v. Parsons Steel, Inc.,* 825 F.2d 1475, 1480 & n. 5 (11th Cir.1987); *Acha v. Beame,* 570 F.2d 57, 63 (2d Cir.1978). This general practice, however, does not mandate the elevation of form over substance. As the Second Circuit has noted in the context of collateral estoppel, "final ... is a word of many meanings." *Lummus Co. v. Commonwealth Oil Ref. Co.,*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                            Page 13
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

297 F.2d 80, 89 (2d Cir.1961) (citation omitted). When determining whether a judgment should be considered final with respect to a claim, the Restatement (Second) of the Law of Judgments notes that "a judgment will ordinarily be considered final in respect to a claim ... if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement."*See also Lummus,* 297 F.2d at 89 (Finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); *U.S. v. McGann,* 951 F.Supp. 372, 380 (E.D.N.Y.1997) (citing *Lummus* and holding that a grant of partial summary judgment was sufficiently final to have *res judicata* effect).

*5 Following the May 24 Order in the 2000 Eastern District Action, O'Diah could have amended his complaint in accordance with the court's order, or could have requested the entry of final judgment by the district court so that he could appeal the order. O'Diah followed neither course. He was warned that failure to comply with the court's directive could result in dismissal pursuant to Rule 41(b), Fed.R.Civ.P., and the filing of an answer by Sears prevented O'Diah from exercising any right to dismiss his claims voluntarily pursuant to Rule 41(a), Fed.R.Civ.P. The district court's failure to enter an order dismissing all claims with prejudice after the thirty days for repleading had passed and to enter final judgment in the action should not prevent the prior dismissal of O'Diah's claims against Sears from having *res judicata* effect. Any other conclusion would be wasteful of judicial resources, impose an unfair burden on defendants, and encourage plaintiffs to ignore court orders and file multiple suits to litigate the same injuries. The fundamental principle underlying the doctrine's application is the simple idea that a litigant should have one full and fair opportunity to litigate his claims. It cannot be said that O'Diah has not had this opportunity. Accordingly, O'Diah's claims against Sears are dismissed with prejudice pursuant to the doctrine of *res judicata.*

*Port Authority*

[3] In the Allegheny County action, O'Diah asserted two claims against the Port Authority arising from the same bus accident alleged in this action, and the Port Authority's subsequent failure to pay O'Diah's medical bills as allegedly promised: "gross negligence in bad faith," and "bad faith breach of statutory responsibility in violation of fiduciary duty to pay medical bill."Of the four elements required by Pennsylvania courts for the application of the doctrine of *res judicata,* the only one which is not clearly established is the identity of the cause(s) of action, a defect which is largely attributable to the deficiencies in the drafting of the pleadings. It is evident that the wrong for which redress is sought, the material facts and necessary evidence, and the theory of recovery are identical. Consequently, with the exception of one defamation claim relating to Michigan State University that will be addressed below, the claims against the Port Authority are barred by *res judicata.*

B. *Immunity*

*New York State Defendants*

[4] All of O'Diah's claims against New York State and the New York State Department of Motor Vehicles ("DMV"), and all but one of his claims against the New York State Workers' Compensation Board (the "Workers' Compensation Board"), are barred by the Eleventh Amendment. O'Diah alleges that New York State violated 42 U.S.C. § 1983 ("Section 1983") by engaging in a conspiracy to have the plaintiff fired from his jobs at Sears and Allied, to influence Nassau County and the New York City police department to harass the plaintiff, to encourage a co-worker at Sears to assault the plaintiff, and to garnish plaintiff's wages from Sears. O'Diah further alleges that New York State violated the Fair Credit Reporting Act, 15 U.S.C. §

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

1681, *et seq.* ("FCRA"), by providing false inform-ation and making false credit reports regarding un-paid child support to Northern Glen, Ford Motor Credit Corp. ("Ford"), Sears, IPC, U.S. Filter, Puro, Allied, Volkswagen and "several financial houses." O'Diah has also alleged that New York State made false statements about him to Puro, Northern Glen, Ford, IPC, Allied, and Sears.

**\*6** O'Diah alleges that the Workers' Compensation Board violated Section 1983 and the Civil Rights Act of 1964 by engaging in a conspiracy to encour-age the plaintiff's co-worker at Sears to attack him and to delay adjudication of plaintiff's workers' compensation claims, one of which appears to con-cern the alleged assault by the co-worker. O'Diah also alleges that the Workers' Compensation Board violated Section 1983 by denying him equal access to its forum and violated the FCRA by making mis-representations to the public concerning the plaintiff's debts.

O'Diah alleges that the DMV violated Section 1983 by engaging in a conspiracy with Nassau County and the New York City police department to harass plaintiff by issuing traffic tickets and taking his driver's license. O'Diah also alleges that the DMV has violated the FCRA by making misrepresenta-tions to the public concerning the plaintiff's debts. In an attempt to tie the disparate incidents and events alleged in the complaint together for the pur-poses of this action, O'Diah also asserts a conspir-acy claim against all defendants, including the New York State defendants, under 42 U.S.C. § 1985 ("Section 1985").

The Supreme Court has interpreted the Eleventh Amendment to mean that States, as sovereigns, are immune from suit in federal court absent consent or valid abrogation of that immunity by Congress. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999), *cert. denied,*531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000) (citing *Edelman v. Jordan,* 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662

). The immunity extends to state agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

Both the DMV and the Workers' Compensation Board are state entities for purposes of Eleventh Amendment immunity. *See Smith v. Schwartz,* No. 98 Civ. 2838(RJD), 1999 WL 294733, at \*1 (E.D.N.Y. Mar.22, 1999) (Workers' Compensation Board); *CBF Trustee v. Hymans,* No. 96 Civ. 9557(JFK), 1998 WL 91123, at \*4 (S.D.N.Y. Mar.2, 1998) (DMV); *Estes-El v. State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau,* No. 95 Civ. 3454(JFK), 1997 WL 342481, at \*3 (S.D.N.Y. June 23, 1997) (DMV); *Smith v. Workers' Compensation Bd. of State of N.Y.,* No. 89 Civ. 2748(ADS), 1990 WL 47778, at \*2-3 (E.D.N.Y. Apr.3, 1990), *aff'd,*923 F.2d 844 (2d Cir.1990) (Workers' Compensation Board).[FN11]

> FN11. While the Eleventh Amendment does not bar damages suits against state of-ficials in their individual capacities or suits for prospective injunctive relief against state officers, *see Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,* 290 F.3d 476, 480 (2d Cir.2002); *Huang v. Johnson,* 251 F.3d 65, 69-70 (2d Cir.2001), O'Diah has not sued any individuals and asserts claims only against New York State and two of its agencies.

[5][6] Since neither New York nor its agencies have consented to this suit in federal court, the de-fendants are subject to suit in federal court only if Congress effectively abrogated the States' sover-eign immunity. The federal statutes implicated by O'Diah's allegations against these defendants in-clude Section 1983, Section 1985, the FCRA, and the Civil Rights Act of 1964.Section 1983 does not abrogate a state's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). O'Diah's Section 1985 conspiracy claims against

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

the New York State defendants must be dismissed because "[i]t is well settled that a state and its agencies are not 'persons' under ...Section 1985."*Santiago v. State Dep't of Corr.,* 725 F.Supp. 780, 783 (S.D.N.Y.), *rev'd on other grounds,*945 F.2d 25 (2d Cir.1991); *see also Chadha v. Connecticut Med. Exam'rs Bd.,* No. 99 Civ. 874(EBB), 1999 WL 1067805, at *3 (D.Conn. Oct.29, 1999). Because Congress enacted the FCRA pursuant to its authority under the Commerce Clause, Congress is not empowered to abrogate a state's Eleventh Amendment immunity through the FCRA. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Hale v. Mann,* 219 F.3d 61, 67 (2d Cir.2000) ("After *Seminole Tribe* the only potential source for congressional abrogation is the Fourteenth Amendment."). Congress did, however, abrogate Eleventh Amendment immunity when enacting the Civil Rights Act of 1964. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 448, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

*7 Accordingly, all of O'Diah's claims against New York State and the DMV must be dismissed with prejudice to refiling them in federal court. With the exception of O'Diah's claim against the Workers' Compensation Board for violations of the Civil Rights Act of 1964, the plaintiff's claims against this defendant are also dismissed with prejudice to refiling them in federal court. O'Diah's allegations of a Civil Rights Act violation will be discussed in greater detail below.

*Judge Ehlers and Village of Flower Hill*

[7] O'Diah has alleged that Judge Ehlers and Judge Byrne, "a State Court Judge at the Village of Flower Hill," violated his constitutional and civil rights based on his national origin and race in violation of the Civil Rights Act of 1964. The plaintiff has also alleged that Judge Ehlers conspired with Northern Glen to remove O'Diah from his apartment based on false charges of failure to pay rent and child support, and because O'Diah is a support-

er of the Republican party's moral values and Christian principles. Judge Ehlers conducted a hearing in a landlordtenant dispute between the plaintiff and the owners of Northern Glen, and rendered an adverse decision against the plaintiff on July 5, 2000. To the extent O'Diah has named the Village of Flower Hill as a defendant in this action in order to address judicial conduct by Judge Byrne, his claims against this defendant are dismissed with prejudice. O'Diah's claims against Judge Ehlers also must be dismissed with prejudice.

A judge is absolutely immune from civil liability for his judicial acts.*Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997)."Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."*Mireles,* 502 U.S. at 10 (citation omitted). This judicial immunity is an immunity from suit, and is not limited to immunity from an ultimate assessment of damages. *Id.* at 11.In addition, judicial immunity is not overcome by allegations of bad faith or malice, nor by a judicial action taken in error or in excess of authority. *Id.* To the extent that O'Diah is seeking to assert his conspiracy claim and/or a Section 1983 claim against the Village of Flower Hill for actions not related to judicial conduct, those claims are addressed below.

*C. Jurisdiction*

[8] O'Diah contends that there is both diversity and federal question jurisdiction over his claims. O'Diah alleges that he is a resident of the State of New York. At least seven of the defendants named in this action are also resident in New York State. Consequently, there is no diversity jurisdiction over his claims. *See Moser v. Pollin,* 294 F.3d 335, 340 (2d Cir.2002) (complete diversity required for di-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 16

**\*8** In his opposition to the motions to dismiss filed by several defendants, O'Diah claims that he maintains "residents [sic] concurrently in the States of New York, Pennsylvania, and Massachusetts."Even if O'Diah could establish that he is a domiciliary of Pennsylvania or Massachusetts instead of New York, that would not create diversity since he has also named residents of both of those jurisdictions as defendants in this lawsuit. Accordingly, the only basis for subject matter jurisdiction is the federal causes of action alleged in the plaintiff's complaint.

### D. *Federal Question Claims*

O'Diah asserts claims under Section 1983, Section 1985, the FCRA, and the Civil Rights Act of 1964. Because O'Diah's complaint fails to state a claim under any of these statutes, his federal claims must be dismissed.

A court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted). In considering the motion, the court must "accept as true all allegations in the complaint,"*Hayden v. County of Nassau,* 180 F.3d 42, 47 (2d Cir.1999), and "draw[ ] all reasonable inferences in the plaintiff's favor."*Jackson Nat'l Life Ins. v. Merrill Lynch & Co.,* 32 F.3d 697, 699-700 (2d Cir.1994). The court can dismiss the claim only if, assuming all facts alleged to be true, the plaintiff still fails to plead the basic elements of a cause of action. Where a party is proceeding *pro se,* the court must "construe [the] pleadings broadly, and interpret them to raise the strongest arguments they suggest."*Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (citation omitted); *see also Cucco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

### *1. Section 1983 claims*

### a. *Non-Government Defendants*

A number of the defendants in this action are private entities rather than governmental bodies or officers. In order to state a claim under Section 1983, a plaintiff must allege that he was injured by "either a state actor or a private party acting under color of state law,"*Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002), and that such conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

[9] O'Diah appears to allege that the private defendants acted under color of state law by conspiring with the governmental defendants. O'Diah's conclusory allegations are insufficient to state a Section 1983 claim against any of the private defendants. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."*Ciambriello,* 292 F.3d at 324 (citation omitted). As the Second Circuit recently observed, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim."*Id.* (citation omitted). The plaintiff's allegations provide no details of time and place, and fail to describe "the factual basis necessary to enable defendants intelligently to prepare their defense."*Id.* at 325 (citation omitted); *see also Dwares,* 985 F.2d at 100 (details of time and place). Leave to replead plaintiff's Section 1983 conspiracy claims will not be granted for the reasons discussed below in connection with plaintiff's Section 1985 conspiracy claims.

### b. *Government Defendants: Nassau County Defendants, New York City, City of Boston, and Village of Flower Hill*

**\*9** O'Diah alleges that on October 25, 2000, the Nassau County Police arrested him without cause,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 17

undressed him, cuffed and chained him to a stationary metal pole where he remained for more than eleven hours, and placed him in jail for 21 hours without cause. The plaintiff was allegedly told that his detention related to his failure to pay child support and his requests to contact a lawyer were denied. O'Diah also alleges that Nassau County and the Nassau County Police have joined with the New York City Police in an effort to harass him, in part through the issuance of meritless traffic tickets. O'Diah alleges that the DMV has been involved in a joint effort with Nassau County to harass him and take away his driver's license. O'Diah also alleges that the Nassau County Attorney and District Attorney have withheld the names and contact information of the families of five robbers who took $25 from the plaintiff in Garden City on January 11, 2001. O'Diah alleges that he was assaulted by a Boston police officer at the Boston train station, while waiting for a train to New York. He alleges that he was pulled to the station floor, thrown against the station's double glass doors, and thrown against a stationary construction truck outside of the station. O'Diah alleges that Judge Bryne, a judge in the Village of Flower Hill, violated his constitutional rights in an unspecified way.

Liberally construing the complaint, O'Diah appears to assert a Section 1983 claim against Nassau County for police harassment, false arrest and imprisonment, against New York City for police harassment, and against the City of Boston for police brutality. Section 1983 does not create any substantive rights. It is, instead, the procedural mechanism for bringing an action based on an underlying violation of a federal right. *Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.,* 163 F.3d 749, 756 (2d Cir.1998). It is unnecessary to resolve, however, whether the complaint sufficiently identifies in each instance a federal right that has been violated since the plaintiff's claims against each of these defendants suffer from other infirmities.

In a suit brought under Section 1983, municipalities cannot be held liable unless the plaintiff can prove

that the unconstitutional action was taken pursuant to

a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] ... [or] pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (brackets in original); *see Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995) ("an actionable claim under § 1983 against a county or municipality depends on a harm stemming from a municipality's policy or custom"). In order to state a Section 1983 claim against these defendants, then, the plaintiff must allege that the city's or county's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" caused the injury. *Monell,* 436 U.S. at 694; *see Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Rookard v. Health & Hosps. Corp.,* 710 F.2d 41, 45 (2d Cir.1983) (municipal corporation).[FN12]

> FN12. In a Section 1983 action for use of excessive force, false arrest or other violations of federal rights, the proper defendant is the individual officer responsible for the alleged violation, unless a plaintiff is proceeding under a *Monell* theory. O'Diah may replead his claims that his rights under federal law were violated by filing separate lawsuits against the responsible individual officers in the jurisdictions in which the incidents occurred. If the plaintiff does not know the names of the individual officers, he may file a "John Doe" complaint, provide sufficient facts regarding the incidents to state a claim and to assist in identification of the officers, and seek the court's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

assistance in obtaining identification of the officers from their employers. *See Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997).

*10 [10] The plaintiff has not pled a *Monell* claim against any of these defendants. The complaint makes no mention of any practice or custom espoused by New York City, the City of Boston, the Village of Flower Hill, or Nassau County, nor does the complaint allege facts tending to support an inference that such a policy or custom exists.

In the case of the City of Boston, the plaintiff has alleged one incident of police brutality. In the case of Nassau County, the plaintiff has alleged one incident of false arrest and imprisonment. O'Diah has made no specific allegations against the Village of Flower Hill. While O'Diah has alleged harassment through the issuance of traffic tickets against Nassau County and New York City, these allegations of ongoing harassment do not state a *Monell* claim because they are unsupported by any factual allegations. While the plaintiff enjoys all favorable inferences from facts that have been pleaded for purposes of a motion to dismiss, this does not permit "conclusory statements to substitute for minimally sufficient factual allegations."*Elec.Communications Corp. v. Toshiba Am. Consumer Prods., Inc.,* 129 F.3d 240, 243 (2d Cir.1997). A *pro se* plaintiff's "conclusory allegation ... without evidentiary support or allegations of particularized incidents, does not state a valid claim."*Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990); *see also Ciambriello,* 292 F.3d at 324 (Section 1983); *Barrett v. Harwood,* 189 F.3d 297, 303 (2d Cir.1999), *cert. denied,*530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000) (same); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (same).

The plaintiff's Section 1983 claims against these Government defendants are dismissed with prejudice. O'Diah has not asked for leave to replead his Section 1983 claims against the Government defendants, and the motions to dismiss filed by these defendants set out in detail the pleading inadequacies in any *Monell* claim the plaintiff seeks to as-

sert. O'Diah did not respond to these inadequacies in his opposition and unauthorized sur-reply, both of which simply repeat the conclusory allegations in the complaint. As noted in *supra* note 12, O'Diah may file in the jurisdiction in which the alleged violation occurred a lawsuit against the individual government officers who were personally involved in any violation of plaintiff's rights under federal law.

[11] O'Diah has also alleged that the Nassau County District Attorney refused to provide him with contact information for the five robbers who attacked him in Garden City on January 11, 2001, information O'Diah sought in order to seek assistance from the robbers and their families in paying the medical bills he incurred as a result of the attack. The Nassau County District Attorney has moved to dismiss on the ground, *inter alia,* that O'Diah's allegation does not state any violation of law. In his opposition and sur-reply, O'Diah did not address this argument and does not identify a federal right that was violated by the District Attorney's alleged conduct.[FN13] Accordingly, O'Diah's claim against the Nassau County District Attorney for failure to provide contact information for the robbers is dismissed with prejudice.

> FN13. It should also be noted that to the extent O'Diah wishes to pursue a claim against the office of the District Attorney, his claim is not sufficiently pled as a *Monell* claim. To the extent O'Diah wishes to pursue this claim against the District Attorney individually, there is no indication from the allegations in the complaint that the District Attorney was personally involved in the conduct alleged.

2. *Section 1985 Conspiracy Claim Against All Defendants*

*11 Section 1985 of Title 42, United States Code, provides in relevant part that:

If two or more persons in any State ... conspire ...

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws. *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). To assert a claim under Section 1985(3), a plaintiff must allege that the defendants have, with racial or other class-based discriminatory animus, conspired to deprive the plaintiff of a constitutional or other federal right. *See LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 426-27 (2d Cir.1995); *Spencer v. Casavilla,* 903 F.2d 171, 175 (2d Cir.1990). Allegations of conspiracy must be pled with particularity and will not withstand a motion to dismiss if they are conclusory and vague.*Ciambriello,* 292 F.3d at 325 (Section 1983 conspiracy claim).

[12] In an attempt to tie together the disparate incidents alleged in the complaint, O'Diah has alleged that all of the defendants conspired to deprive him of his constitutional rights and property based upon his "Christian values, moral views, political affiliation with the Republican party, national origin" and race, principally through the dissemination of false credit information. O'Diah has also alleged a number of satellite conspiracies, involving participation by certain of the named defendants. For example, the plaintiff has alleged that New York State and Nassau County "influenced" Volkswagen and/or Volkswagen Credit Inc. ("Volkswagen Credit") to make a false credit report against him, and that the Workers' Compensation Board has conspired with his employers and an attorney at Braunstein & Chase ("Braunstein") to deny him equal access to its forum. O'Diah has also alleged that the defend-

ants have engaged in a conspiracy having as its objects his murder and the kidnaping and brainwashing of his teenage daughter.[FN14]

> FN14. O'Diah provides no factual background for these serious allegations. Defendants Ford, Volkswagen Credit and Volkswagen also ask the Court to strike these "scandalous" allegations pursuant to Rule 12(f), Fed.R.Civ.P. *See Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988).

O'Diah has not alleged facts to demonstrate an agreement between any of the named defendants. Indeed, O'Diah has not alleged facts supporting any connection between the defendants. The complaint is devoid of any allegations regarding with whom each defendant conspired, when or where any agreement was made, or the precise nature of such an agreement. In sum, the allegations in the complaint are not sufficient to state a claim under Section 1985 against all of the defendants jointly, or against groups of defendants. Accordingly, O'Diah's Section 1985 claim based on a conspiracy to commit the crimes above is dismissed with prejudice.

*12 [13] O'Diah has not asked for leave to replead his claims. In any event, leave to replead would not be appropriate. The motions to dismiss set out in detail the pleading inadequacies in the complaint, particularly with respect to the plaintiff's conspiracy claim. O'Diah submitted an opposition and an unauthorized sur-reply in response to these motions to dismiss, both of which simply repeat the conclusory allegations in the complaint. Moreover, O'Diah was already given a chance to replead his conspiracy claim against a number of the defendants named herein through the May 24 Order in the 2000 Eastern District Action. He declined to do so. While leave to replead is liberally granted to *pro se* litigants, leave need not be granted here in light of the likely futility of such a grant, as well as the several opportunities already given to the plaintiff to articulate the factual bases for his conspiracy claims.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 20

3. *FCRA Claim Against All Defendants*

[14] O'Diah alleges that the defendants, both jointly and individually, motivated by "racial stereotyping," violated the FCRA by reporting false credit information to other defendants, and by representing the plaintiff as a "bad debtor" to the general public. Specifically, O'Diah alleges that a number of these misrepresentations involved child support obligations and failure to pay medical bills. O'Diah alleges that he discovered these false credit reports on September 4, 2001.

The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *See* 15 U.S.C. § 1681, *et seq.; Aklagi v. Nationscredit Fin. Servs. Corp.,* 196 F.Supp.2d 1186, 1192 (D.Kan.2002); *Thomasson v. Bank One, Louisiana, N.A.,* 137 F.Supp.2d 721, 722 (E.D.La.2001). The defendants who have moved to dismiss the complaint are furnishers of credit information for purposes of the FCRA.

The FCRA imposes two duties on furnishers of information, codified at 15 U.S.C. §§ 1681s-2(a) and (b). The category of duties in subsection (a) relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information. Section 1681s-2(a) provides in relevant part as follows:

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate....

A person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer ... that specific information is inaccurate; and (ii) the information is, in fact, inaccurate....

A person who ... has furnished to a consumer reporting agency information that the person determ-

ines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

**\*13** 15 U.S.C. §§ 1681s-2(a)(1) and (2).

The category of duties in subsection (b) governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency. Subsection (b) states as follows:

After receiving notice [from a credit reporting agency] pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1).

There is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials. 15 U.S.C. § 1681s-2(d); *see also Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

1059 (9th Cir.2002); *Aklagi,* 196 F.Supp.2d at 1192;*Hasvold v. First USA Bank, N.A.,* 194 F.Supp.2d 1228, 1234 (D.Wyo.2002); *Scott v. Amex/Centurion S & T,* Nos. 3:01 Civ. 1594-H-3:01 Civ. 1602-H, 2001 WL 1645362, at *4 (N.D.Tex. Dec.18, 2001); *Fino v. Key Bank of New York,* No. 00 Civ. 375E, 2001 WL 849700, at *4 (W.D.Pa. July 27, 2001); *Yelder v. Credit Bureau of Montgomery, L.L.C.,* 131 F.Supp.2d 1275, 1283 (M.D.Ala.2001); *Quigley v. Pennsylvania Higher Educ. Assistance Agency,* No. 00 Civ. 1661, 2000 WL 1721069, at *2 (N.D.Cal. Nov. 8, 2000); *Olexy v. Interstate Assurance Co.,* 113 F.Supp.2d 1045, 1047 (S.D.Miss.2000).

Although there has been some disagreement, the majority of courts to have considered the issue have concluded that consumers may pursue claims for willful or negligent noncompliance with Section 1681s-2(b).*See, e.g., Nelson,* 282 F.3d at 1060;*Aklagi,* 196 F.Supp.2d at 1193;*Hasvold,* 194 F.Supp.2d at 1236;*Scott,* 2001 WL 1645362, at *4;*Fino,* 2001 WL 849700, at *5;*Wexler v. Banc of America Auto Fin. Corp.,* No. 00 Civ. 865, 2001 WL 428155, at *2 (N.D.Ill. Apr. 26, 2001); *Thomasson,* 137 F.Supp.2d at 723 (collecting cases); *Whitesides v. Equifax Credit Info. Servs., Inc.,* 125 F.Supp.2d 807, 812 (W.D.La.2000); *Mc-Millan v. Experian Info. Servs., Inc.,* 119 F.Supp.2d 84, 88 (D.Conn.2000); *Olexy,* 113 F.Supp.2d at 1047-48;*but see Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 502 (W.D.Tenn.1999). Those courts that have concluded that a private right of action exists under Section 1681s-2(b) have required a plaintiff to show that the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information is disputed. *See, e.g., Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639-40 (5th Cir.2002).[FN15] Since the complaint claims a violation of subsection (a) only, it is unnecessary to determine whether a private right of action exists under subsection (b).

FN15. O'Diah has not alleged that he noti-

fied a consumer reporting agency which in turn notified the furnisher of the incorrect information.

*14 O'Diah has alleged that the defendants, jointly and individually, have falsified credit reports against him, and recklessly disregarded his concerns when he contacted them to correct their reports.[FN16]Because there is no private right of action under subsection (a), O'Diah's claims pursuant to the FCRA must be dismissed. Dismissal is with prejudice; the plaintiff has not asked for leave to replead; the motion papers of several of the defendants explained the deficiencies in the plaintiff's pleading with respect to his claims under the FCRA; and neither the plaintiff's opposition nor his sur-reply attempted any answer to these deficiencies.

FN16. The complaint may also be read to allege that O'Diah's "medical history and condition" were made public as a result of the defendants' false credit reporting. The FCRA does contain provisions addressing the improper use of information contained in consumer credit reports. The complaint does not identify what medical information is at issue, who provided this information and to whom, or how it was made public. Each of these facts is a critical piece of information that any defendant would need to answer the allegation.

## 4. Federal Civil Rights Act of 1964

The only specific mention of the Civil Rights Act of 1964 in the complaint is O'Diah's allegation that Judges Ehlers and Wexler, the Village of Flower Hill, the Workers' Compensation Board, and the attorneys at Tsunis and at Braunstein engaged in a "joint systematic violation" of plaintiff's "rights protected by the Federal Civil Rights Act of 1964, based upon the identification of the plaintiff [sic] national origin, motivated by racial stereotyping in disregard."O'Diah appears to allege that the violation committed by these defendants involved a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                  Page 22
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

denial of due process and equal protection of the laws. In the complete absence of any factual allegations it is impossible to evaluate whether the plaintiff may be able to state a claim pursuant to the Civil Rights Act of 1964 against these defendants.

[15] In its motion to dismiss, Tsunis explains that O'Diah's complaint fails to state a claim for a Civil Rights Act violation because it fails to allege any state action on the part of Tsunis that would sustain a due process or equal protection claim. In his opposition and sur-reply, O'Diah does not provide any facts in response to the pleading deficiency noted by Tsunis. Because O'Diah has not requested leave to replead his Civil Rights Act claim against Tsunis and because he was given fair notice of the deficiencies in pleading this claim in Tsunis's motion to dismiss, O'Diah's Civil Rights Act claim against Tsunis is dismissed with prejudice.

O'Diah's Civil Rights Act claim against the Workers' Compensation Board is dismissed without prejudice to filing an amended pleading as described in a scheduling order issued in connection with this Opinion.[FN17]Should no amended pleading be filed in compliance with that order, this claim will be dismissed with prejudice.

> FN17. All claims against Judge Ehlers and the Village of Flower Hill are dismissed pursuant to the doctrine of judicial immunity as discussed above, or in the case of any attempted *Monell* claim against the Village of Flower Hill, dismissed with prejudice for failure to state a claim. Defendants Braunstein and Judge Wexler have neither answered nor moved to dismiss, although affidavits of service have been filed.

E. *State Law Claims*

[16][17] The state law claims asserted by O'Diah in this action appear to include claims of wrongful termination from employment, breach of fiduciary duty,[FN18] libel, defamation, slander, gross and reckless negligence, and violations of some state's lemon law.[FN19]This Court's exercise of jurisdiction over O'Diah's state law claims is an exercise of supplemental jurisdiction. For the reasons that follow, each of these claims must be dismissed.

> FN18. On the first page of his complaint, O'Diah has indicated his intent to pursue a claim for breach of fiduciary duty. There are no specific allegations in the complaint, however, which relate to such a claim nor are there allegations indicating which defendant or defendants against whom such a claim may be asserted, and the plaintiff has not alleged that any of the defendants named in this action owed him a fiduciary duty nor has he alleged any circumstances which would normally give rise to such a duty. A fiduciary is one who "owes to another the duties of good faith, trust, confidence, and candor" or one who has been entrusted with another's money or property and "must exercise a high standard of care in managing" it. Black's Law Dictionary 640 (7th ed.1999). For example, a trustee is a fiduciary of the beneficiaries of a trust, and a corporate officer is a fiduciary of shareholders in a corporation. In his sur-reply to the defendants' motions to dismiss, O'Diah indicates that his breach of fiduciary duty claims are directed at the Port Authority and Judge Ehlers. With the exception of one claim against the Port Authority, the claims against both of these defendants have been dismissed with prejudice on the grounds of *res judicata* and judicial immunity, respectively. In any event, neither defendant had a fiduciary relationship to O'Diah. The plaintiff was apparently a passenger on a Port Authority bus and alleges that the Port Authority breached a promise to pay all medical expenses incurred following an accident. Judge Ehlers presided over eviction proceedings brought by Northern Glen

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

against the plaintiff.

FN19. O'Diah has attached to his complaint copies of notices to consumers pursuant to the New York and Massachusetts lemon laws.

*Choice of Law*

**\*15** [18] A federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state. *See N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir.1999); *see also Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 607 (2d Cir.), *cert. denied,*534 U.S. 1042, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001) (federal choice of law analysis to be applied only where a significant federal policy is implicated). Using a flexible "interest analysis" approach, New York courts apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute. *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 301 (2d Cir.2000). Under this formulation, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort."*Id.* With the exception of O'Diah's claims of libel, slander, and defamation against Mercy Hospital of Pittsburgh ("Mercy Pittsburgh") and Mercy Providence Hospital ("Mercy Providence"), his claim of wrongful termination against IPC, and his claims of negligence and lemon law violations against Volkswagen, all of his state law claims arise out of events that took place in New York.

*Wrongful Termination-New York Law*

[19] Liberally construing O'Diah's complaint, he may be alleging that he was unlawfully fired from his employment with defendant Allied.FN20This claim must be dismissed because New York does not recognize the tort of wrongful discharge. *Lobosco v. New York Tel. Co.,* 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001); *DePetris v. Union Settlement Ass'n, Inc.,* 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (1995);

*Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *see also Rooney v. Tyson,* 127 F.3d 295, 296-97 (2d Cir.1997). Absent an arrangement establishing a fixed duration, an employment relationship is "presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason."*Lobosco,* 96 N.Y.2d at 316, 727 N.Y.S.2d 383, 751 N.E.2d 462. An at-will employee may only maintain an action to recover damages for wrongful discharge if he can establish detrimental reliance on an express written limitation upon the employer's otherwise unfettered right to terminate his employment at any time. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333-36, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *see also Murphy,* 58 N.Y.2d at 300-01, 461 N.Y.S.2d 232, 448 N.E.2d 86. There is no indication in the complaint that O'Diah's employment with Allied was for a fixed duration. Nor has O'Diah alleged facts indicating that he relied upon any express written limitation on the right of Allied to terminate his employment at any time.FN21

FN20. O'Diah's parallel claims against Puro and Sears are barred by the doctrine of *res judicata.*

FN21. O'Diah's allegations against his former employers for unlawful termination of his employment arise from his contention that others-such as New York State and Nassau County-provided his employers with "false information." Consequently, the wrongdoing at issue may be the defamation claims addressed below.

[20] Allied has asked that this Court decline to exercise supplemental jurisdiction over any state law claims asserted against it. O'Diah has not opposed the application. O'Diah's federal conspiracy and FCRA claims against Allied have been dismissed with prejudice, and O'Diah's federal claims are the only basis for this Court's exercise of subject matter jurisdiction. Where no federal claims remain in an action, and diversity jurisdiction is lacking, a dis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 24

trict court is not required to retain jurisdiction of re-maining state law claims. 28 U.S.C. § 1367(c)(3); *Rocco v. New York State Teamsters Conference Pension & Retirement Fund,* 281 F.3d 62, 72 (2d Cir.2002), *petition for cert. filed* May 14, 2002 (No. 01-10222); *see also Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("where the federal claims are dismissed before trial, the state claims should be dismissed as well"). Because any state law claim for wrongful discharge asserted against Allied is entirely severable from the claims remaining in this action, this Court declines to exercise supplemental jurisdiction over it and the claim is dismissed without prejudice to being refiled in a separate action.

### Wrongful Termination-Massachusetts

*16 O'Diah was employed by IPC in Massachusetts. IPC has moved to dismiss O'Diah's wrongful termination claim against it for improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P.

On a motion to dismiss for improper venue, the plaintiff has the burden of establishing that he has chosen the proper venue. *TBV Holdings Ltd. v. Schey,* No. 02 Civ. 1122(BSJ), 2002 WL 1733649, at *1 (S.D.N.Y. July 26, 2002); *Cent. Nat'l-Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F.Supp.2d 675, 677 (S.D.N.Y.2002). Because all defendants in this action do not reside in the same state, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."28 U.S.C. § 1391(b). While some of O'Diah's claims are asserted against defendants located in this judicial district or arise out of events that may have taken place in this judicial district, "[i]n a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted."*Solow Bldg. Co., LLC v. ATC Assoc. Inc.,* 175 F.Supp.2d 465, 469 (E.D.N.Y.2001) (citation omitted); *see also U.S. Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.,* 162 F.Supp.2d 173, 183 (S.D.N.Y.), *aff'd,*23 Fed. Appx. 81 (2d Cir.2001),

*cert. denied,*535 U.S. 1079, 122 S.Ct. 1963, 152 L.Ed.2d 1023 (2002). Dismissal of an improperly venued claim is not warranted, however, "if it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief."*Solow,* 175 F.Supp.2d at 469 (citation omitted).

[21] While O'Diah has attempted to tie all of his various claims together with allegations of a conspiracy and of FCRA violations, O'Diah's conspiracy and FCRA claims have been dismissed with prejudice as to all defendants, and thus cannot provide a basis for retention of jurisdiction in this district. Aside from these two overarching claims, there are no allegations in the complaint to connect O'Diah's claim of wrongful termination against IPC to this district. Accordingly, O'Diah's wrongful termination claim against IPC is dismissed with prejudice to the extent plaintiff should seek to refile it in a venue other than Massachusetts.

### Defamation, Libel, and Slander Claims

O'Diah has alleged that false credit information dispersed to the public by Mercy Pittsburgh, Mercy Providence, I.C. Systems, Inc. ("I.C.Systems"), and Nassau County constituted defamation, libel, and slander. O'Diah alleges that he discovered that the defendants had issued false credit reports about him on August 24, 2001.[FN22]The plaintiff was treated at Mercy Pittsburgh and Mercy Providence in Pennsylvania following the alleged Port Authority bus accident.[FN23]I.C. Systems is a debt collection company that was hired by defendant Jae Chil Kim Rehab. to collect on a debt for services rendered in Pennsylvania. New York and Pennsylvania both have a one year statute of limitations for actions sounding in defamation. *See*42 Pa.C.S.A. § 5523; N.Y. C.P.L.R. § 215(3).

> FN22. I.C. Systems has submitted an affidavit with attachments demonstrating that it made its credit report in early December 1997, and that O'Diah wrote to it and ac-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

cused it of violating the FCRA in late December 1997. If O'Diah learned of the alleged violation in 1997, then his claims for defamation, libel and slander would be barred by New York's one year statute of limitations. N.Y. C.P.L.R. § 215(3). O'Diah is reminded that sanctions may be imposed on any litigant knowingly making a false statement to a court. *See* Rule 11, Fed.R.Civ.P.

FN23. The Mercy defendants indicate that the evidence will show that O'Diah was treated for chronic sinusitis and hearing loss, services unrelated to any bus acci- dent.

*17 [22] O'Diah has not alleged in any detail the nature or substance of the statements of which he complains, nor has he alleged when, where, or in what manner they were made. New York and Pennsylvania each impose strict pleading require- ments on claims sounding in defamation, including that the particular words complained of be set out at least in part, and that the approximate timing, man- ner, and publication of the statement be alleged. *See* N.Y. C.P.L.R. Rule 3016(a); *Demas v. Levitsky,* 291 A.D.2d 653, 738 N.Y.S.2d 402, 408 (3d Dep't 2002); *see also Lawrence v. City of Bethlehem,* No. 97 Civ. 1824, 1997 WL 793012, at *4 (E.D.Pa. Dec. 4, 1997); *Lynch v. Borough of Ambler,* No. 94 Civ. 6401, 1995 WL 113290, at *5 (E.D.Pa. Mar.15, 1995). A defamation action brought in fed- eral court, however, is governed by Rule 8 of the Federal Rules of Civil Procedure, and not by partic- ularized state pleading requirements. *See Odom v. Columbia Univ.,* 906 F.Supp. 188, 196 (S.D.N.Y.1995) (citing *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986)); *but see Luethke v. Seagram Co.,* No. 00 Civ. 7946(DC), 2000 WL 1880324, at *3 (S.D.N.Y. Dec.28, 2000) (dismissing defamation claim for failure to comply with New York pleading requirements).

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the plead-

er is entitled to relief."Fed.R.Civ.P. 8(a)(2). The Rule also requires that "[e]ach averment of a plead- ing shall be simple, concise, and direct ."Fed.R.Civ.P. 8(e)(1)."Under the Rules' liberal pleading standards, a plaintiff must disclose suffi- cient information to permit the defendant 'to have a fair understanding of what the plaintiff is complain- ing about and to know whether there is a legal basis for recovery.' " *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

[23] O'Diah's allegations fail to disclose sufficient information to permit these defendants to under- stand what the plaintiff is complaining about let alone to determine if he has any legal basis for re- covery. Accordingly, O'Diah's claims of defama- tion, slander, and libel against these defendants must be dismissed for failure to comply with the pleading requirements of Rule 8.

The motion to dismiss by Nassau County may not have given the plaintiff sufficient notice that it was asserting a pleading deficiency with regard to his claims of defamation, slander, and libel. These claims against Nassau County will be dismissed without prejudice to the filing of an amended plead- ing in compliance with the scheduling order to be issued by this Court. Failure to comply with that scheduling order will result in dismissal with preju- dice.

The claims for defamation, libel and slander against I.C. Systems are dismissed with prejudice. This de- fendant's motion papers sufficiently identified the pleading deficiency. O'Diah's opposing papers did not cure the deficiency or request any opportunity to replead these claims.

*18 The defendants Mercy Pittsburgh and Mercy Providence (collectively the "Mercy Defendants") have asked that this Court decline to exercise sup- plemental jurisdiction over the defamation-related state law claims asserted against them. O'Diah has not opposed this appliation. O'Diah's federal con-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 26

spiracy and FCRA claims against the Mercy Defendants have been dismissed with prejudice. As noted above, where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction over remaining state law claims. Because the state law claims sounding in defamation asserted against the Mercy Defendants are entirely severable from the claims remaining in this action, this Court declines to exercise supplemental jurisdiction over them and they are dismissed without prejudice to being refiled in a separate action.

In addition to claims concerning false credit reports, O'Diah has alleged other instances of certain defendants' conveying false information about him to other defendants, often with no detail as to when such exchanges occurred or of what such exchanges consisted. He alleges that Nassau County, Piping Rock, [FN24] the City of Boston, and New York State conveyed false information about him to several defendants, including that he had been "bad-mouthing" his employer's products, owed child support, and had spoken out against the Democratic Party. O'Diah further alleges that the Port Authority informed Michigan State University that O'Diah has an "irreparable illness" and that accommodating him in University housing would cause trouble.

> FN24. Piping Rock has made no motion to dismiss.

To the extent these allegations also seek to assert claims sounding in defamation, they must also be dismissed for failure to comply with the pleading requirements of Rule 8. As noted above, O'Diah may replead any defamation and related claims against Nassau County, in compliance with this Court's scheduling order. Failure to comply with that order will result in the dismissal with prejudice of any defamation and related claims against Nassau County. Because all of O'Diah's claims against New York State must be dismissed with prejudice on immunity grounds, O'Diah may not refile any defamation or related claims against New York

State in any federal court.

The City of Boston has moved to dismiss any outstanding claims for improper venue. The plaintiff has not opposed this motion. For the reasons already discussed in connection with a similar motion made by IPC, this motion is granted. The claims against the City of Boston for defamation or conveying false information are dismissed with prejudice to refiling in any venue other than Massachusetts.

The plaintiff's defamation claim against the Port Authority regarding statements it allegedly made to Michigan State University is the only claim asserted against the Port Authority which may not be dismissed on the ground of res judicata. O'Diah may replead this single claim against the Port Authority in compliance with this Court's scheduling order. Failure to comply with that order will result in dismissal with prejudice.

*Conversion*

*19 O'Diah alleges that Ford "took" his car because the State of New York and Nassau County were threatening to sell the car for child support owed by the plaintiff. In connection with its motion to dismiss, Ford states that it repossessed the plaintiff's vehicle in Massachusetts on August 8, 2000, because the plaintiff defaulted in making payments on the vehicle.

Under Massachusetts law, the tort of conversion requires "an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." *Kelley v. LaForce,* 288 F.3d 1, 11 (1st Cir.2002) (citations omitted); *see also Cadle Co. v. Schlichtmann,* 267 F.3d 14, 21 (1st Cir.2001), *cert. denied,* 535 U.S. 1018, 122 S.Ct. 1607, 152 L.Ed.2d 622 (2002). An action for conversion requires "proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 27

of it, or destroyed the property."*Kelley,* 288 F.3d at 12 (citations omitted). A good faith, reasonable belief that one has a legal right to possession of goods is not a defense to a claim of conversion. *Id.* O'Diah has alleged simply that Ford "took" his car.

[24] It is not clear whether O'Diah seeks to assert a claim for conversion against Ford, but this Court declines to exercise supplemental jurisdiction over any such claim. O'Diah's federal conspiracy and FCRA claims against Ford have been dismissed with prejudice. As noted above, where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. Any state law claim for conversion is entirely severable from the claims remaining in this action. Accordingly, at the request of Ford and without opposition from O'Diah, this Court declines to exercise supplemental jurisdiction over any such claim and it is dismissed without prejudice to being refiled in a separate action.

*Gross Negligence, Reckless Negligence, and Lemon Law Violation*

[25] O'Diah alleges that the defects in a Volkswagen Passat caused an accident which resulted in $10,000 in damages and physical injury to his son. The plaintiff alleges that after he discovered the defect in the vehicle, apparently prior to the accident, Volkswagen attempted to repair the vehicle on four occasions. O'Diah appears to assert claims against Volkswagen for "gross and reckless negligence" and violation of some state's lemon law. The complaint does not identify where the vehicle was purchased, where the accident occurred, which state's lemon law Volkswagen has violated or which Volkswagen defendant is liable.[FN25] A recall notice for a defect in the Passat's braking system sent to the plaintiff is attached to the complaint, and offers repair of the defect free of charge. These allegations are not sufficiently detailed to permit either Volkswagen defendant to understand the precise claim being asserted against it or to permit an inquiry into

whether the allegations might make out a claim and how to defend such a claim. Accordingly, the claims brought by plaintiff for damages to the vehicle must be dismissed for failure to comply with the pleading requirements of Rule 8, Fed.R.Civ.P.

> FN25. Although the plaintiff has sued both Volkswagen of America, Inc. and Volkswagen Credit, Inc. in this action, the allegations in the complaint refer only to "Volkswagen."

*20 In its motion to dismiss, Volkswagen explicitly described these deficiencies in pleading and further noted that necessary conditions precedent for bringing suit under the lemon law had not been fulfilled. These defects were not cured in O'Diah's opposition or sur-reply to the motion to dismiss, and O'Diah has not requested leave to replead. Accordingly, O'Diah's claim for damages to the vehicle resulting from the auto accident, asserted as a negligence and lemon law claim, is dismissed with prejudice.

Any claims for injuries to the plaintiff's son, who is apparently a minor, must also be dismissed. This dismissal is without prejudice to filing in the jurisdiction in which the accident that injured the son occurred. The plaintiff is advised that many jurisdictions, including federal courts, require that any action brought on behalf of a minor be filed by an attorney. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*-F.3d-, 297 F.3d 195, 2002 WL 1560062, at *5 (2d Cir. July 16, 2002) (citing *Cheung v. Youth Orchestra Fdn. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990)); *Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 124-25 (2d Cir.1998) (per curiam) (citation omitted).

F. *Request for an Injunction*

[26] Defendants Puro, U.S. Filter, Tsunis, Sears, IPC, Allied, Volkswagen, and the City of Boston request an injunction preventing O'Diah from filing any actions or claims against them without the per-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 28

mission of the court in which any such action is filed. Such an injunction is only appropriate with respect to those defendants against whom the claims have been fully dismissed from this action with prejudice, namely, Puro, U.S. Filter, and Sears.

The Second Circuit has noted that the

district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting person- nel.

*Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) (per curiam), *cert. denied,* 534 U.S. 833, 122 S.Ct. 81, 151 L.Ed.2d 44 (2001) (citations omitted); *see also Malley v. New York City Bd. of Educ.,* 112 F.3d 69, 69 (2d Cir.1997); *In re Sassower,* 20 F.3d 42, 44 (2d Cir. Judicial Council 1994) ("the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints"). The issuance of a filing injunction is appropriate when a plaintiff "abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings." *Lau,* 229 F.3d at 123 (citation omitted). In determining whether or not to restrict a litigant's future access to the courts, a court should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*21 *Safir v. U.S. Lines, Inc.,* 792 .F.2d 19, 24 (2d Cir.1986). The ultimate question to be answered by the court is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* The " 'unequivocal rule" ' in this Circuit, however, is that the district court may not impose a filing injunction on a litigant " 'without providing the litigant with notice and an opportunity to be heard." ' *Lau,* 229 F.3d at 123 (quoting *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) (per curiam)); *see also MLE Realty Assoc. v. Handler,* 192 F.3d 259, 261 (2d Cir.1999).

This action is at least the fourth lawsuit filed by the plaintiff .[FN26] Three of these actions have named more than twenty defendants, and have asserted claims of alleged wrongs committed over several years and in several different states. These lawsuits have repeated claims arising out of the same events through complaints that are extremely difficult to interpret and understand. Two of O'Diah's prior lawsuits have been dismissed for failure to prosecute or failure to comply with court orders. His claims against several defendants in this lawsuit had already been dismissed in the 2000 Eastern District Action on *res judicata* grounds or pursuant to the doctrine of judicial immunity. The plaintiff has not honed his claims nor his list of defendants as time has gone on, but has instead added defendants including some of the judges to whom his prior actions were assigned. *See Sassower,* 20 F.3d at 45 (referring to "technique of other vexatious litigants of launching new complaints against judicial officers for their actions in dismissing his prior complaints"). He has failed each time to articulate sufficient facts to link the conduct of the co-defendants.

> FN26. The plaintiff may have filed a fifth suit. Ford indicates that it has previously been sued by the plaintiff in California.

After several defendants in this action filed motions to dismiss, O'Diah moved for the issuance of a preliminary injunction to enjoin several entities, some of which are not named defendants in this action,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

Page 29

from issuing false credit reports, and to bar pending proceedings at the DMV. An Order of May 21, 2002, indicated that briefing on the preliminary injunction motion would be scheduled should O'Diah's claims survive the pending motions to dismiss. Just over a week later, O'Diah filed an "Intermediate Intervention Request," referred to in his motion papers as a preliminary injunction request, asking the Court to enjoin several defendants from making misrepresentations in credit reports. An Order of June 5, 2002 repeated that a schedule for the plaintiff's request for injunctive relief would be addressed after consideration of the pending motions to dismiss.

In light of the above, an injunction is appropriate to prevent harassment through abuse of the legal system. O'Diah has received notice and an opportunity to be heard on the request made by several defendants for a filing injunction. In his opposition and sur-reply on those motions, the plaintiff did not oppose or even refer to the request for a filing injunction. An injunction shall be issued in connection with the filing of this Opinion.

CONCLUSION

*22 All claims pursuant to Section 1983, Section 1985, and the FCRA against all defendants who have filed motions to dismiss (*see supra* note 2) are dismissed with prejudice.

All claims against Puro Water Group, U.S. Filter, and Sears Roebuck and Company are dismissed with prejudice on the ground of *res judicata.* With the exception of plaintiff's defamation claim relating to Michigan State University, all claims against the Port Authority of Allegheny County are dismissed with prejudice on the ground of *res ju- dicata.*

All remaining claims against the Village of Flower Hill and Judge Richard Ehlers are dismissed with prejudice on the ground of judicial immunity.

Any remaining claims against New York State and

the New York State Department of Motor Vehicles are dismissed with prejudice to refiling in federal court. With the exception of plaintiff's Civil Rights Act claim, all remaining claims against the New York State Workers' Compensation Board are dismissed with prejudice to refiling in federal court.

The claim pursuant to the Civil Rights Act of 1964 against Tsunis & Gasparis is dismissed with prejudice.

The defamation-related claims against I.C. Systems are dismissed with prejudice. The negligence and lemon law claims against Volkswagen of America and Volkswagen Credit relating to damage incurred by plaintiff's vehicle as a result of a car accident are also dismissed with prejudice.

The claim for wrongful termination against IPC International and the defamation-related claims against the City of Boston are dismissed with prejudice to refiling in any venue other than Massachusetts. Any claim against Volkswagen of America and Volkswagen Credit for injuries sustained by plaintiff's son as a result of a car accident is dismissed, without prejudice to filing by or on behalf of the son in the jurisdiction in which the accident occurred.

The Court declines to exercise supplemental jurisdiction over the defamation claims against Mercy Hospital of Pittsburgh and Mercy Providence, as well as any wrongful termination claim against Allied Spectaguard and any conversion claim against Ford Motor Credit Corporation. These claims are dismissed without prejudice to refiling in the jurisdictions appropriate to each claim.

The defamation-related claims against Nassau County and against the Port Authority of Allegheny County regarding Michigan State University, and the claim against the New York State Workers' Compensation Board pursuant to the Civil Rights Act of 1964, are dismissed with leave to replead. The schedule for filing any amended pleading is set forth in a scheduling order also issued today. Fail-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                    Page 30
Not Reported in F.Supp.2d, 2002 WL 1941179 (S.D.N.Y.)

ure to comply with the scheduling order shall result
in dismissal with prejudice of the claims for which
plaintiff has been given leave to replead.

A filing injunction barring any future suit against
Puro Water Group, U.S. Filter, and Sears Roebuck
and Company without leave of the court in which
suit is filed for claims relating to the transactions or
occurrences alleged against these defendants in the
complaint filed in this action is issued today.

**\*23** SO ORDERED:

S.D.N.Y.,2002.
O'Diah v. New York City
Not Reported in F.Supp.2d, 2002 WL 1941179
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT B

*Richmond v. TRW Info. Servs. Div.*
1997 WL 1037886

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1997 WL 1037886 (S.D.Cal.), 80 A.F.T.R.2d 97-5970

**H**
Richmond v. TRW Info Services Div.
S.D.Cal.,1997.

United States District Court, S.D. California.
Curtis R. RICHMOND, Plaintiff,
v.
TRW INFO SERVICES DIV., Transunion, Equifax
Credit Info Services, United States of America,
State of California and Franchise Tax Board, De-
fendant.
**No. 96-1150 JM (POR).**

July 22, 1997.

Curtis R. Richmond, in pro per, Solana Beach, CA,
for plaintiff.
Michael D. Fabiano, Jones Day Reavis and Pogue,
Irvine, CA, for TRW Info Services Div.
Donald E. Bradley, Crowell and Moring, Irvine,
CA, for Transunion.
James W. Poindexter, Poindexter and Doutre Inc.,
San Francisco, CA, for Equifax.
George N. Harris, Jr., U.S. Dept. of Justice, Wash-
ington D.C., for USA.
Leslie Branman Smith, Deputy Attorney General,
Office of Attorney General, San Diego, CA, for
State of California and Franchise Tax Board.
MILLER, J.

ORDER DENYING PLAINTIFF'S MOTION TO
HOLD TRW INFO SERVICES DIV. IN CON-
TEMPT, DENYING PLAINTIFF'S MOTION TO
RECONSIDER, DENYING PLAINTIFF'S MO-
TION TO DECLARE RETIREMENT INFORMA-
TION IRRELEVANT, GRANTING DEFEND-
ANTS STATE OF CALIFORNIA AND FRAN-
CHISE TAX BOARD'S MOTION TO DISMISS
AND GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS

**\*1** The parties have filed multiple motions in this
case. Plaintiff moves (1) to hold TRW Info Services
Div. ("TRW") in contempt for violation of a con-

sent decree; (2) to reconsider a prior order of the
court; and (3) to have the court declare that retire-
ment information is irrelevant to the government's
defense in this action. Defendants State of Califor-
nia and the Franchise Tax Board move dismiss the
complaint under F.R.Civ.P. 12(b). Defendant TRW,
joined by defendants Transunion and Equifax Cred-
it Information Services, move to dismiss the
amended complaint. Having carefully considered
the paper submitted in the matter, the applicable au-
thority, and the oral arguments presented at the
time of hearing the court denies each of plaintiff's
motions, grants the motion of the State of Califor-
nia and the Franchise Tax Board, and grants in part
and denies in part TRW's motion to dismiss the
complaint.

NATURE OF CASE

Plaintiff Curtis R. Richmond ("Richmond") filed
the original complaint on June 24, 1996, seeking to
allege claims under the Fair Credit Reporting Act
("FCRA") and under California tort law for fraud
and deceit. He seeks compensatory and punitive
damages for defendants' failure to remove tax liens
from his credit reports.

In the original complaint, plaintiff named the
United States, TRW, Transunion, and Equifax
Credit Info Services ("Equifax"). Plaintiff contends
that the government failed to release a number of
federal tax liens recorded by the IRS despite his re-
quests to remove such liens. Plaintiff's claims
against the other defendants, all credit reporting
agencies, arise from his allegations that the agen-
cies acted improperly by continuing to report the
recorded IRS tax liens on his credit report notwith-
standing his request that the liens be removed. On
January 16, 1997, Magistrate Judge Porter granted
plaintiff's motion to amend the complaint to add the
State of California and the California Franchise Tax
Board ("Tax Board") as defendants. Plaintiff was
also denied leave to amend with respect to the IRS

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1997 WL 1037886 (S.D.Cal.), 80 A.F.T.R.2d 97-5970

because they were an improper party.

**\*2** The discharge of Plaintiff's tax liens resulted from his Chapter 7 bankruptcy commenced on July 27, 1990. On November 30, 1990, plaintiff alleges that he was discharged of all dischargeable debts including tax liabilities arising in tax years 1967, 1968, 1975, 1977, 1978, & 1979.

In his amended complaint filed on February 12, 1997, plaintiff seeks a declaration by this court that all his federal and state taxes prior to 1987 were discharged in his bankruptcy proceeding. Plaintiff also seeks to hold the credit agencies liable for failing to correct his credit reports. He alleges that he contacted both the IRS and the three credit reporting agencies regarding the discharged tax liens and they failed to correct the erroneous information. Plaintiff first contacted the three agencies in March of 1992 contesting the inclusion of these tax liens on his credit report and, over the following three years, he continued to demand the removal of the IRS liens from his credit report. Among the documents provided to the IRS and the three agencies was the November 30, 1990 discharge, but defendants continued to report the tax liens. In March 1996, Plaintiff commenced an action in Bankruptcy Court and the IRS finally recorded Certificates of Release of Federal Tax Liens for the contested years.

On November 16, 1996 Judge Moskowitz entered an order granting in part and denying in part the credit agencies' motions to dismiss. Judge Moskowitz granted defendants' motion on plaintiff's claims arising in 1992 and 1993 as being time barred but found that the statute of limitations had not run on the alleged inaccuracies contained in plaintiff's 1995 credit report. Judge Moskowitz also found that plaintiff stated a cause of action under 15 U.S.C. 1681i(a) and (c) for failing to report obsolete information, failing to investigate, and to indicate in the credit reports that plaintiff disputed the IRS liens. The Order also dismissed plaintiff's fraud claim but granted plaintiff leave to amend.

## ANALYSIS

### A.Plaintiff's Motion To Hold TRW In Contempt

Plaintiff moves to hold TRW in contempt for violating a consent order entered by the District Court for the Northern District of Texas in *Federal Trade Commission v. TRW Inc.,* 784 F.Supp. 361 (N.D.Tx.1991). The consent decree concerned certain credit reporting practices of TRW. Plaintiff contends that TRW's clear violation of the corrective procedures contained in the consent decree warrant the entry of a contempt order.

Plaintiff lacks standing to seek a contempt order arising from the consent decree. A consent degree with the government as plaintiff is not enforceable by one who is not a party to the consent decree "even though they were intended to be benefited by it."*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Hook v. State of Ariz. Dept. Of Corrections,* 972 F.2d 1012, 1015 (9th Cir.1992). A review of the consent order clearly indicates that the parties and the court contemplated a series of dispute resolution procedures which were only available to the Federal Trade commission and TRW. *Federal Trade Commission,* 784 F.Supp. at 366. Accordingly, plaintiff lacks standing to seek to hold TRW in contempt for violations of the consent decree.

### B.Plaintiff's Motion to Reconsider Statute of Limitations Ruling

**\*3** The apparent thrust of Plaintiff's motion for reconsideration is that the statute of limitations should be extended because of TRW's alleged willful conduct in violating the consent decree entered in the *Federal Trade Commission v. TRW* action. An action alleging violation of the FCRA may be brought "within two years from the date on which the liability arises," or, if material and willful misrepresentation of information required to be disclosed to the individual is involved, "within two years of discovery by the individual of the misrep-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                   Page 3
Not Reported in F.Supp., 1997 WL 1037886 (S.D.Cal.), 80 A.F.T.R.2d 97-5970

resentations."15 U.S.C. § 1681p. In Judge Moskowitz's November 6, 1996 Order ("Order"), the court dismissed the FCRA claims based on plaintiff's 1992 and 1993 credit reports as time barred but upheld the claims based on the 1995 credit report.

A motion for reconsideration under Local Rule 7.1(1)(2) must generally be brought within 30 days after entry of the order sought to be reconsidered. Plaintiff's motion was filed more than six months after the entry of Judge Moskowitz's Order. On this basis alone, Plaintiff's motion is denied. The court also notes that even if reconsidered, there has been no change in either facts or law which would justify a departure from that Order.

*C.Plaintiff's Motion to Declare Retirement Information Irrelevant*

Plaintiff seeks a declaration from this court that information concerning Barbara Richmond's retirement plan is irrelevant. The issue of Ms. Richmond's retirement plan has been the subject of several previous motions. On December 18, 1996, Judge Moskowitz reversed Magistrate Judge Porter's protective order and determined that the information was relevant to the government's defense in this action. On May 30, 1997, Magistrate Judge Porter entered an order that Ms. Richmond respond to the government's questions and requests for production of documents. Judge Porter ruled that Ms. Richmond's repeated assertion of the Fifth Amendment privilege during her deposition was inappropriate.

In essence, the government contends that information concerning Ms. Richmond's retirement plan is relevant because if the plaintiff or his wife had an interest in such a plan, the government was not required to release its pre-petition liens following the entry of the discharge in plaintiff's 1990 bankruptcy action. In an attempt to demonstrate that this court should reconsideration Judge Moskowitz's December 18, 1996 order, Plaintiff now contends that be-

cause the retirement plan is exempt property under California law, it is irrelevant to the government's defense.

Plaintiff's argument, even if reconsidered, is without merit. 26 U.S.C. § 6321 provides that a tax lien attaches to "all property and rights to property, whether real or personal, belonging to [a delinquent taxpayer]."*Connor v. United States,* 27 F.3d 365, 366 (9th Cir.1994). Thus, at this stage of the proceedings, plaintiff's motion is denied.

The government seeks reimbursement for its costs and fees in defending against this motion. This motion is denied. Although plaintiff's arguments are without merit, the arguments raised by plaintiff on this motion have never been previously raised and there is nothing in the record to indicate that plaintiff brought this motion in bad faith or for an improper purpose.

*D.Defendant State of California and Franchise Tax Board's Motion to Dismiss*

*4 The State of California and the Franchise Tax Board move to dismiss the complaint on the basis that they are immune from suit brought in federal court by its own citizens. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Federal court suits against a state, or one of its agencies, for damages are barred by the 11th amendment, unless waived by the state or an Act of Congress. *Pennhurst State School & 'Hospital v. Halderman,* 465 U.S. 89, 98-99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1131-32, 134 L.Ed.2d 252 (1996). Here, there is no indication that the either the State of California or Congress sought to waive the 11th Amendment on any of plaintiff's claims. Accordingly, plaintiff's claims against the State of California and the Tax Board are dismissed with prejudice.

*E.Defendant TRW's Motion to Dismiss Plaintiff's*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1997 WL 1037886 (S.D.Cal.), 80 A.F.T.R.2d 97-5970

*Amended Complaint*

Defendant TRW moves to dismiss the amended complaint under F.R.Civ.P. 12(b)(6) and 12(b)(1). Defendants Equifax and Trans Union join in this motion. TRW's motion under F.R.Civ.P. 12(b)(1) is premised on the joinder of the State of California and the Tax Board. TRW contends that the this court lacks subject matter jurisdiction over the action because the 11th Amendment bars suits against the state. Because this court has dismissed the State of California and the Tax Board this argument is without merit. Plaintiff's claims are properly before this court.

To the extent that TRW's motion is premised on the statute of limitations and on its ability to rely on information reported by the IRS, the court observes these arguments were addressed in Judge Moskowitz's November 16, 1996 Order. Under Local Rule 7.1(1)(2), any motion for reconsideration must generally be brought within 30 days. TRW offers no explanation why this court should revisit these issues again. The court will not decide these issues anew. As indicated in Judge Moskowitz's Order, these issues may be properly decided on a motion for summary judgment, but not under Rule 12(b)(6). Accordingly the court denies TRW's motion.

Lastly, TRW contends that plaintiff's amended allegations of fraud fail to state a claim under F.R.Civ.P. 12(b)(6). Plaintiff's allegations of fraud are nearly identical to those in the original complaint. Pursuant to Judge Moskowitz's Order, plaintiff was granted leave to amend to plead that the alleged misrepresentations were made to the plaintiff with the intent to induce reliance by him. Plaintiff has failed to adequately plead these elements. Accordingly, the court grants TRW's motion to dismiss without prejudice and with 20 days leave to amend. Plaintiff is cautioned that his failure to adequately plead all elements of fraud, and to comply with F.R.Civ.P. 9(b) if plaintiff chooses to file a third amended complaint, may result in dismissal of this claim with prejudice.

IT IS SO ORDERED.

S.D.Cal.,1997.
Richmond v. TRW Info Services Div.
Not Reported in F.Supp., 1997 WL 1037886 (S.D.Cal.), 80 A.F.T.R.2d 97-5970

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT C

## Unreported Cases Contained In Footnote No. 1

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

**c**
Bentley v. Providian Financial Corp.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Anthony Miles BENTLEY, Plaintiff,
v.
PROVIDIAN FINANCIAL CORP. and Experian
Information Solutions, Inc., Defendants.
**No. 02 Civ.5714(WHP)(FM).**

April 21, 2003.

Anthony M. Bentley, New York, New York, pro se.

*REPORT AND RECOMMENDATION TO THE
HONORABLE WILLIAM H. PAULEY III*

MAAS, Magistrate J.

I. *Introduction*

**\*1** *Prose* plaintiff, Anthony Bentley ("Bentley")
brings this suit seeking a declaratory judgment
against credit reporting agency, Experian Informa-
tion Solutions, ("Experian"), stating that it violated
the Fair Credit Reporting Act ("FCRA") by failing
to provide him with a copy of his credit report upon
his request. He also claims that defendant Providian
Financial Corporation ("Providian"), charged and
received a "criminally usurious" interest rate on a
credit card loan and violated a consent decree when
it failed to inform him of the benefits and limita-
tions of its Credit Protection plan.

Experian has moved to dismiss Complaint, pursuant
to Rule 12(b)(1) or 12(b)(6) of the Federal Rules of
Civil Procedure or Summary Judgment, and
Providian has moved to dismiss the complaint pur-
suant to 12(b)(6). Defendants state numerous
grounds, including lack of subject matter jurisdic-
tion and failure to state a claim upon which relief
can be granted. For the reasons set forth below, I
recommend that the defendants' motions be granted,

and that the Complaint be dismissed against both
defendants.

II *Facts*

In January of 2002, Bentley received a letter from
Providian indicating that his credit limit had been
reduced. (Compl.Ex. F). Providian's letter stated
that their decision was based "in whole or in part"
from information received from Experian. (*Id.*). Ex-
perian is a "repository of consumer credit informa-
tion that is reported to Experian by lenders and ob-
tained from the public record."(Declaration of Dav-
id Browne, ("Browne Decl.") at ¶ 3). The letter in-
structed Bentley how to obtain a copy of his credit
report from Experian. (Compl.Ex. F). Bentley sub-
sequently forwarded an "annotated copy" of the let-
ter to Experian requesting his credit report. (*Id.* Ex.
G).

In a letter dated January 29, 2002, Experian replied
stating that it was unable to compile Bentley's cred-
it report without additional information.(*Id.* Ex. I).
Experian requested Bentley provide *"all* of the fol-
lowing information in order to process [his] re-
quest: full name, ... address, ... Social Security
number (*required* to obtain your report); date of
birth; complete addresses ... and spouse's first name
(if applicable.)"(*Id* ). Bentley responded to this re-
quest by returning Experian's letter to them, and en-
closing a page from an older, previously obtained
Experian report. (*Id.* Ex. K). On the letter, Bentley
wrote "[y]ou know exactly who I am from the in-
formation provided. Indeed you have that account
[number] associated with your report on me dated
October 30, 2000."(*Id.*). In mid-February 2002, Ex-
perian again refused to provide Bentley with a cred-
it report, sending a letter identical to the letter sent
in January. (*Id.* Ex. L.). Bentley subsequently
provided Experian with the identifying information
it requested and received his credit report. (Browne
Decl. ¶ 11).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

In December 2001, Bentley received a separate letter from Providian informing him that his annual percentage rate ("APR") was being increased to 29.99%.(Id.Ex. B). The letter indicated that if Bentley's account was in Credit Protection status as of the end of January this increase would not take place.(*Id.*). Bentley did not purchase Credit Protection and Providian began charging his account at the new interest rate as of March 2002. (*Id.* ¶ 10).

*2 Bentley filed his Complaint on July 23, 2002. (*See*Docket No. 1). In his Complaint, Bentley claims (1) that the APR being charged by Providian is in violation of New York's criminal usury statute, (2) that Providian violated its consent order with the Office of the Comptroller of Currency when it failed to inform Bentley of the consequences of not purchasing credit protection, and (3) that Experian is unlawfully withholding his credit report in violation of the FCRA. (*Id.*). Bentley requests his "original credit report" and seeks a declaratory judgment stating that Experian improperly withheld plaintiff's report and Providian imposed an interest rate in violation of New York's criminal usury statute. (Id. at 4). Providian and Experian filed motions to dismiss, or for summary judgment in the alternative, on November 25 and November 27, 2002, respectively. (*See*Docket Nos. 9, 13). Bentley filed his response on December 18, 2002. (*See*Docket No. 19). During a November 5, 2002 conference, I expressed my intention to treat defendants' motions as motions for summary judgment. (Tr. at 16).

### III. *Standard of Review*

#### A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In deciding a motion for summary judgment, the court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and ... draw all permissible inferences in favor of that party."*Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). The Court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Moreover, assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court. *Id.;seealso*Fed.R.Civ.P. 56(e)1963 Advisory Committee Note. Thus, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried."*Fischl,* 128 F.3d at 55;*seealsoAnderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

To defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts."*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,586 (1986). The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."*Anderson,* 477 U.S. at 256.

Although the same summary judgment rules are applicable when a party is proceeding *prose,* special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. *SeeMorris v. Citibank, N.A.,* 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998); *seealsoEstelle v. Gamble,* 429 U.S. 97, 106 (1976)(*prose* complaint should be held to less stringent standard than formal pleadings drafted by counsel); *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999)(pleadings should be read liberally and interpreted to "raise the strongest arguments they suggest")(quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). By the same token, however, "a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

*prose* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."*Odom v. Keane,* 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997)(quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1995)).

IV. *Discussion*

A. *New York's Usury Law*

**\*3** Bentley's first claim is that Providian violated New York's criminal usury statute by raising the annual interest on his credit card account to 29.99%. (*See*N.Y. Penal Law § 190.40.) This claim must fail as Bentley's credit card agreement is governed by a New Hampshire choice of law clause, (Decl. of Christopher Turcotte, "Turcotte Decl." Ex. 1, ¶ 16), and New Hampshire has no such usury statute. As a general rule, choice of law provisions are valid and enforceable in New York. *Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir.2000); *International Minerals and Resources, S.A. v. Pappas,* 96 F.3d 586, 592 (2d Cir.1996)("Absent fraud or violation of public policy, contractual selection of governing law is generally determinative under New York choice of law rules so long as jurisdiction selected has sufficient contacts with transaction.").

Bentley conceded the application of New Hampshire law to his credit card agreement during the November 5, 2002 conference, a concession he now retracts. (*See* Tr. at 5). In his Omnibus Response by Declaration to Defendants' First Round of Dispositive Motions ("Pl.'s Resp."), Bentley rebuts the application of New Hampshire law by reference to Providian's seemingly irrelevant physical location and the date when he received notification of the choice of law clause. He then states that should New York's usury laws be unavailable, the APR violates the National Bank Act (12 U.S.C. § 85) and New Hampshire's pawnbroker statute (N.H.Rev.Stat.Ann.399-B:2).

Unfortunately, it is not appropriate to "raise new claims for the first time in submissions in opposition to summary judgment."*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 170 F.R.D. 111, 119 (S.D.N.Y.1997).*SeealsoLivingston v. Bev-Pak, Inc.,* 112 F.Supp.2d 242, 248 (N.D.N.Y.2000)(listing cases showing disfavor in other jurisdictions). But, even if the Court were inclined to construe Plaintiff's assertions as a motion to amend, it would nevertheless deny the motion on the grounds that the amendment would be futile. *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 283 (2d Cir.2000)(holding that a court need not construe a claim raised in response to a dispositive motion as a motion to amend where evidence suggests that the claim is the product of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility). The National Bank Act provides that a national bank may charge its loan customers interest at rate allowed by laws of state where bank is located. *SeeSmiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 737 (1996). New Hampshire allows annual percentage rates "as the agreement governing the plan provides or as established in the manner provided in the agreement governing the plan" (N.H.Rev.Stat. Ann. § 384-G:3 (West, Westlaw through 2002 Reg. Sess.)). Similarly, the sections of the pawnbroker statute cited by Bentley state that "a licensee may charge ... rates agreed to in writing by the borrower and the licensee."N.H. Rev. Stat Ann § 399-A:3. Although it is unlikely that Mr. Bentley's claims are properly brought under § 399-A:3, further analysis is unnecessary as his state claims would be dismissed absent liable federal claims. Accordingly, leave to amend would not provide Bentley with a fruitful claim.

B. *Providian's Consent Order*

**\*4** Bentley also contends that Providian has violated a consent order issued by the Comptroller of the Currency, under which Providian must disclose "all limitations on the benefits of Credit Protection" in any advertisements, solicitations or other com-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

. Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

munications with consumers, which promote Credit Protection or any other Payment Deferral product. (*See* Turcotte Decl. Ex. 2 at 13). Even assuming *arguendo* that the notice concerning Bentley's impending APR increase could be categorized as a communication "promoting" Credit Protection, Bentley's claim that Providian did not disclose the benefits of credit protection within this notice is without merit. The notice clearly states that consumers who have an account in credit protection status will not be subject to the increased APR. (Compl.Ex. B). Furthermore, the Consent order as written states that Providian must only disclose "limitations on the benefits." (Turcotte Decl. Ex. 2 at 13). It is unclear what limitation on the benefits Bentley claims went undisclosed, but to the extent that his claim refers to "the avoidance ... of a rate of interest deemed criminal" as he states in his Complaint, this claim is not valid as Providian's interest rates are not in violation of the criminal laws of New Hampshire. Therefore, Bentley's second claim against Providian does not state a claim upon which relief can be granted and must also be dismissed.

### C. FCRA

The FCRA governs consumer reporting agencies and has as its central purpose ensuring the "confidentiality, accuracy, relevancy and proper utilization of [consumers' credit] information."(15 U.S .C.A. § 1681(b)). Section 1681e provides that consumer reporting agencies shall maintain "reasonable procedures" designed to limit the furnishing of consumer report to those with proper purposes and in doing so make a "reasonable effort" to verify the identity of users and their intended use prior to furnishing that user a consumer report. (15 U.S.C.A. § 1681e(a)). Bentley seeks a declaration that Experian violated section 1681g of the FCRA when it failed to provide his credit report to him absent particular identifying information.FN1

> FN1. Section 1681g provides in pertinent part:

"(a) ... Every consumer reporting agency shall, upon request, and subject to § 1681h, clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request ..."

Experian argues that Bentley's claim against it must be dismissed as the FCRA does not enable this court to grant such a declaration. Indeed the provisions of the FCRA that create a private right of action under the Act do not permit individual plaintiffs to obtain declaratory or injunctive relief. (*See*15 USC §§ 1681n, 1681o). These provisions give individuals the right to sue for noncompliance with the FCRA and only provide for actual, statutory, and punitive damages, as well as costs and attorney's fees. Any injunctive, declaratory, or other equitable relief is delegated to the Federal Trade Commission ("FTC") under § 1681s(a).*See In re Trans Union Corp. Privacy Litigation,* 2002 WL 31028234 at *9 (N.D.Ill. September 10, 2002)("Congress vested the power to obtain injunctive relief solely with the FTC.").*See also Washington v. CSC Credit Services Inc,* 199 F.3d 163, 269 (5th Cir.2000). Thus, this court does not have the jurisdiction to grant Bentley the relief he seeks.

**\*5** The declaratory relief Bentley seeks is equally unavailable under the Declaratory Judgment Act ("DJA"). That statute is an enabling law which confers discretionary jurisdiction upon federal courts providing that in a case of an "actual controversy" within its jurisdiction:

... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a)(1994).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

Page 5

A DJA analysis must start with the question of whether an actual controversy exists. The question in each case is whether the facts alleged, under the circumstances, show that there is a substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Dow Jones & Co., Inc., v. Harrods, Ltd.,* 237 F.Supp.2d at 406 (S.D.N.Y.2002). Bentley has not disputed the fact that he has since received his credit report, has not put forth any facts to dispute Experian's claim that it could not prepare his report with the information he provided, and has not proven any damages for the period when he did not have his credit report. It therefore seems there is no actual controversy. Similar requests for declarations against credit reporting agencies have been denied as improperly brought under the DJA. *Trans Union,* 2002 WL 31028234, at *10. Finally, the FCRA is designed to guard against improper disclosure, and actionable harm is found only where reasonable procedures are not followed and disclosures are made. Bentley cannot claim that Experian failed to take reasonable procedures as his claim is that its procedures were in fact too stringent. For these reasons, no justification exists for declaratory action in this instance.

However, Bentley also requests that the Court render "such other or further relief deemed appropriate."(Compl. at 5). The court may thus construe Bentley's request for further legal relief to include a claim for actual damages. However, his claim should nonetheless be dismissed on the grounds that Bentley has not stated a claim for relief under the FCRA and the receipt of his credit report has rendered his claim moot.

While the FCRA does not define what was intended by "proper identifying information" necessary before an agency can disclose consumer reports, it is understandable that a name and address alone would be insufficient, and that relying exclusively on those two items would create a high probability of misidentification. (*See* Turcotte Decl. Ex. 2). In addition to the demands of the FCRA, Experian is

bound by a consent order entered between the FTC and TRW (Experian's predecessor corporation), to insure that the credit reports it compiles are of maximum possible accuracy. *FTC v. TRW, Inc.,* 784 F.Supp. 361 (N.D.Tx.1991). One of the goals of the consent decree was to avoid the occurrence of mixed files, which are files that erroneously contain information from more than one consumer. The consent decree issued in *FTC v. TRW,* states that with regards to furnishing consumer credit reports, TRW (Experian) shall "Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files, including but not limited to: (a) ... modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a consumers full identifying information."*Id.* at 362."Full Identifying Information" is later explained to include name, address, year of birth and social security number. *Id.*

**\*6** Before releasing a credit report to a consumer, the reporting agency must confirm the identity of the consumer making the request. One of the items Experian requested from Bailey was his social security number. (Compl.Exs.I, L). Experian requested Bentley's social security number in two separate letters, stating that it was "required to obtain [his] report." (*Id.*). Neither the FCRA nor the consent order specify that a social security number must be provided by the consumer when requesting his report, and nothing prevented Experian from furnishing Bentley with his credit report without this particular identifier. *See Menton v. Experian Corp.,* 2003 WL 941388 at *3 (S.D.N.Y. March 6, 2003). Their request for such information, however, is entirely understandable. A social security number is by its very purpose an important tool for identification. *See e.g., Shapiro v. City of New York,* 1999 WL 64290 (S.D.N.Y. February 8, 1999)("Social security numbers are used ... to expedite the identification process and to reduce the risk of misidentification of arrestees with common names or dates of birth."); *In re Riccardo,* 248 B.R. 717 Bkrtcy. (S.D.N.Y.2000) ("Misrepresentation of a debtor's social security number is a species of what has been

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

aptly termed "identity fraud."). Thus, Experian's request for such information was not improper.*Menton,* 2003 WL 941388 at *3.

Although it may not have been necessary for Experian to have Bentley's social security number in particular, the fact remains that Experian must obtain from consumers enough information to identify them before providing their credit report. In *Menton,* the court found that a consumer who provided a copy of his drivers license, a bank statement, a home telephone number and the address of his employer's website where a photo and other information was available, was sufficient for Experian to identify the consumer in absence of a social security number. *Id.* In contrast, Bentley provided only the name and address to which the original letter from Providian was mailed and a copy of an old Experian report containing a Providian account number in his request. (Compl.Ex. K). Although the FCRA provides that a consumer has the "right to obtain the entirety of his file" upon request, this right is qualified by the requirement that the consumer furnish the credit reporting agency with "proper identification." (15 U.S.C. 1681g, 1681h.)Bentley provides no evidence to support his assertions that he provided sufficient information for Experian to produce his report. In order for liability to attach, plaintiff must show that Experian "willfully fail[ed] to comply" with the FCRA. (*Id.*§ 1681n). We find that Bentley did not furnish Experian with sufficient identification to produce an accurate credit report, and no evidence exist that Experian "willfully [failed] to comply" with any requirement imposed under the FCRA.

Furthermore, Bentley subsequently obtained his credit report after furnishing Experian with the requested identifying information. (Browne Decl. at ¶ 11). His request for his "original credit report" has thus been rendered moot.[FN2]

> FN2. Experian explains that no "original credit report" was generated upon Bentley's first two requests, as they were unable to do so without sufficient identifying in-

formation. (Experian Mem. at 14.) Bentley does not present any facts to dispute the manner in which reports are generated. When Bentley made his, ultimately successful, third request, he obtained the equivalent of the original report.

### V. *Conclusion*

*7 For the reasons set forth above, Defendants' motions should be granted, and the Complaint should be dismissed.

### VI. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *Seealso*Fed.R.Civ.P. 6(a) and (e). Any such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *SeeThomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Fed.R.Civ.P. 6(a), 6(e), 72(b).

SO ORDERED.

S.D.N.Y.,2003.
Bentley v. Providian Financial Corp.
Not Reported in F.Supp.2d, 2003 WL 22234700 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

**H**
Miller v. CoreStar Financial Group of Pa., Inc.
E.D.Pa.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
James P. MILLER, et al.
v.
CORESTAR FINANCIAL GROUP OF PA, INC.,
et al.
**Civil Action No. 05-5133.**

June 29, 2006.

Andrew S. Kasmen, Burns & Kasmen, Jenkintown,
PA, David S. Markun, Pacific Palisades, CA, Ed-
ward S. Zusman, Kevin K. Eng, Markum Zusman
& Compton LLP, San Francisco, CA, for James P.
Miller.
James H. Rodio, Holland & Knight LLP, McLean,
VA, Leo G. Rydzewski, Holland & Knight LLP,
Washington, DC, Sheila Coombs Branyan, Blank
Rome LLP, Philadelphia, PA, for Corestar Finan-
cial Group of PA, Inc.

### MEMORANDUM

THOMAS N. O'NEILL, JR., J.
*1 Plaintiff James Miller filed a class action com-
plaint in this case against defendants CoreStar Fin-
ancial Group of Pa., Inc., CoreStar Financial
Group, LLC, and CoreStar Financial Group, Inc.,
(collectively "CoreStar") alleging violations of the
Fair Credit Reporting Act. Before me now are de-
fendants' motion to dismiss, plaintiff's response, de-
fendants' reply, plaintiffs' surreply, and defendants'
response to plaintiffs' surreply.

### BACKGROUND

James Miller received a letter from CoreStar ex-
tending a mortgage loan offer. The letter notified
him that he had been pre-approved for a loan from
CoreStar. Following an asterisk, the letter provided:

You are pre-approved for a mortgage loan, subject
to the following terms and conditions: The actual
loan amount will vary. This offer is contingent
upon receiving a valid first or second lien on your
owner occupied, one- to four-family residence or
condominium, excluding singlewide mobile homes
and co-ops. Final loan approval is subject to veri-
fication of acceptable income and credit. Minimum
and maximum property values may apply and a
property appraisal may be necessary.

The second page also contains a "Prescreen and Opt
Out Notice," which provided: "This 'prescreened'
offer of credit is based on information in your cred-
it report indicating that you meet certain criteria.
This offer is not guaranteed if you do not meet our
criteria [including providing acceptable property as
collateral]." The letter does not specify the amount
available to be borrowed, the applicable interest
rate, or the terms of the loan. CoreStar sent the let-
ter after it obtained a consumer report on Miller
without his consent or knowledge. The letter is un-
dated and Miller does not allege when he received it.

Miller's complaint, filed on September 28, 2005, al-
leges two violations of the Fair Credit Reporting
Act (FCRA). First, he argues that CoreStar's prac-
tice of obtaining and using consumer reports to so-
licit credit transactions without extending firm of-
fers of credit violates 15 U.S.C. § 1681b(c).
Second, he alleges that CoreStar's offer letters
failed to provide, in a clear and conspicuous man-
ner, the disclosures required by 15 U.S.C. §
1681m(d). Miller asks for statutory damages, punit-
ive damages, attorneys' fees, and an injunction per-
manently preventing CoreStar from obtaining con-
sumer reports on individuals unless it makes a firm
offer of credit to each individual, including the dis-
closures required by the FCRA.

In its motion to dismiss, CoreStar argues that there
is no private right of action available for violations
of the "clear and conspicuous" disclosure require-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

Page 2

ments of § 1681m(d). Further, CoreStar asserts that Miller cannot maintain a claim for FCRA damages because he has not alleged that he suffered any actual damages. CoreStar also argues that an injunction is not a remedy available to private litigants. I will address each argument in turn.

## STANDARD OF REVIEW

Federal Rule of Civil Procedures 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."Fed R. Civ. p. 12(b)(6)(2004). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, plaintiff may be entitled to relief."*Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996) (citation omitted). Nevertheless, in evaluating plaintiff's pleadings I will not credit any "bald assertions." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir.1997). Nor will I accept as true legal conclusions or unwarranted factual inferences. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."The complaint will be deemed to have alleged sufficient facts if it adequately put the defendant on notice of the essential elements of the plaintiff's cause of action."*Nami,* 82 F.3d at 65. A Rule 12(b)(6) motion is proper only if the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief."*Conley,* 355 U.S. at 45-46.

## DISCUSSION

**\*2** The FCRA was enacted to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."15 U.S.C. § 1681(b) (2006)."In the

FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole."*Philbin v. Trans Union Corp.,* 101 F.3d 957, 962 (3d Cir.1996).

A. *Private Right of Action for "Clear and Conspicuous" Violations*

Under the FCRA, any company who uses a consumer report to issue a credit solicitation must include specific disclosures in a clear and conspicuous statement. 15 U.S.C. § 1681m(d). The statement must include, among other information, notice that the consumer report was accessed, the consumer was selected because he satisfied certain creditworthiness criteria, and credit may not be extended if the consumer does not meet any applicable credit criteria or does not furnish adequate collateral. *Id.*

1. *Elimination of Private Actions*

The current version of the FCRA provides in § 1681m(h)(8): "No civil actions. [15 U.S.C. §§ 1681n and 1681o] shall not apply to any failure by any person to comply with this section."Further, it notes, "This section shall be enforced exclusively under [15 U.S.C. § 1681s] by the Federal agencies and officials identified in that section."*Id.* These sentence were added by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which became law on December 4, 2003. *See*Publ. L. No. 108-159, 117 Stat 1952 (2003). Prior to that amendment, private parties were permitted to bring civil actions to enforce the "clear and conspicuous" disclosure requirement. *See, e.g., Kelcher v. Sycamore Manor Helath Ctr.,* 305 F.Supp.2d 429, 433 (M.D.Pa.2004).

CoreStar argues that the amendments eliminated all private actions to enforce the disclosure requirements of § 1681m. Miller disagrees, arguing that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

CoreStar's position cannot be reconciled with the express language of the amendment, clashes against the context and structure of FACTA, and fails to account for the legislative history of the amendment.

Before I address Miller's arguments, I note that each court that has faced this challenge has decided that the FACTA amendments eliminated the private right of action to enforce the § 1681m disclosure requirements. *See, e.g., Phillips v. New Century Fin. Corp.,* No. 05-0692, 2006 U.S. Dist. LEXIS 18498 (C.D.Cal. Mar. 1, 2006); *McCane v. America's Credit Jewelers,* Inc., No. 05-5089 (N .D.Ill.Dec. 1, 2005); *Pietras v. Curfin Oldsmobile,* No. 05-4624 (N.D.Ill. Nov. 1, 2005); *Perry v. First National Bank,* No. 05-1470, 2005 U.S. Dist. LEX-IS 23100 (N.D.Ill. Sep. 13, 2005); *Murray v. Household Bank (SB),* 386 F.Supp.2d 993 (N.D.Ill.2005); *Murray v. Cross Country Bank,* 399 F.Supp.2d 843 (N.D.Ill.2005). The Court of Appeals, however, has not decided this issue so I will review Miller's arguments.

*\*3* Miller first suggests that CoreStar's reading of FACTA cannot be reconciled with the express language of the amendment. I disagree. The express language of the amendment eliminates the private right of action. "Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections."*Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004). House and Senate drafting manuals prepared by the legislative counsel's offices provide that each section shall be broken into subsections starting with (a), paragraphs starting with (1), subparagraphs starting with (A), and clauses starting with (i).*Id.* The FACTA amendment, located at § 1681m(h)(8)(B), provides, "This *section* shall be enforced exclusively under section 521 by the Federal agencies and officials identified in that section."Within § 1681m(h), § 1681n, § 1681o and § 1681s are each described as sections, indicating that sections are designated by the first letter following the number. § 1681m(h)(8); *see also Cross Country*

*Bank,* 339 F.Supp.2d at 844. Further, earlier in the statute, § 1681(a) is described as subsection (a), indicating that subsections are those parts of the statute beginning with lower case letters in parentheses. These indications show that "this section" must refer to § 1681m. Therefore, the FACTA amendments eliminated a private right of action under § 1681m.

Miller makes a few additional arguments to support his assertion that the FACTA amendments did not eliminate a private right of action under § 1681m. First, he argues that under CoreStar's reading of the statute, § 1681m(h)(4) would abrogate the notice requirement of § 1681m(a). Subsection § 1681m(a) provides that, in the event a person takes an adverse reaction with respect to a consumer based on information in a consumer report, the person must notify the consumer of the adverse action, and include information regarding the reporting agency and the consumer's right to obtain a free copy of the consumer report and dispute any inaccurate information. § 1681m(a). The later paragraph provides: "A person that is required to provide a notice under subsection (a) cannot meet that requirement by providing a notice under this subsection. § 1681m(h)(4). Miller seems to argue that because subsection (h) creates additional notice requirements that apply only to subsection (h), it is entirely self-contained and therefore cannot apply to § 1681m in its entirety. This argument is nonsensical. FACTA eliminated private causes of action, not notice requirements. While the later notice requirements apply only to subsection (h), there is no language in subsection (h) that precludes its applicability to other parts of the FCRA.

Miller also argues that FACTA's legislative history demonstrates that the amendment did not eliminate the right of private actions under § 1681m. As the Supreme Court has noted, "the authoritative statement is the statutory text, not the legislative or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

Page 4

lature's understanding of otherwise ambiguous terms."*Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). As I discussed above, the statute is clear; it contains no ambiguous terms. Therefore, there is no need to wade through the legislative history.[FN1]

> FN1. Although Miller urges me to consider the legislative history, he does not cite any legislative history that supports his position. The only legislative history he references is a statement in another district court case, which notes that the FACTA history did not indicate "such a sweeping change in enforcement."*Murray v. Household Bank,* 386 F.Supp.2d 993, 997 (2005). I cannot, however, base my decision on silence instead of the unambiguous language of the statute.

**2. *Retroactivity***

**\*4** Miller also asserts that even if the FACTA amendments to the FCRA eliminated all private actions, it cannot be retroactively applied to this case. He claims that dismissal is improper because the activity underlying this claim was completed before FACTA's effective date. The FACTA amendments were passed on December 4, 2003 and became effective on December 4, 2004. *See*Pub.L. No. 108-159, 117 Stat.1952 (2003). Miller's complaint was filed on September 28, 2005. Although Miller's complaint does not specify the date he received the offer letter, he offers two alternative fact scenarios, and thus two different potential dates for my analysis. First, he suggests that he received the letter before the effective date. Second, he proposes that even if he did not receive the letter before FACTA's effective date, CoreStar received his credit information before that date, and I should analyze his claim from that date.[FN2]In his surreply, Miller also argues that his complaint satisfied the short and plain statement requirement of Fed.R.Civ.P. 8.

> FN2. Miller argues that the conduct is

complete when the solicitations are designed and printed, often several months before the letter is sent. This suggestion is absurd. The disclosure requirements must be included "with each written solicitation made to the consumer."§ 1681m(d)(1). Therefore, no cause of action exists until the consumer receives the written solicitation.

As presented, this Count of Miller's complaint is not viable. As I discussed above, no private cause of action existed at the time of Miller's complaint to challenge the "clear and conspicuous" disclosure requirements. Therefore, I will dismiss this count of Miller's complaint with leave to amend if he received the offer letter before FACTA's effective date.[FN3]I am not dismissing this claim because it lacks detailed facts. Instead, I am dismissing it because, as it is presented, no claim exists.

> FN3. Miller urges me to undertake a retroactivity analysis. This analysis, however, is unnecessary at this time because Miller's complaint is silent as to the date he received the offer letter. If in good faith he amends his complaint to allege that he received the letter before FACTA's effective date, I will address this issue.

**B. *Actual and Statutory Damages***

CoreStar asserts that Miller's remaining claim should be dismissed because he has not alleged any actual damages. The FCRA contains two damages provisions, one providing liability for negligent violations, § 1681o, and one discussing liability for willful noncompliance, § 1681n. The willful compliance liability section provides for "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000."§ 1681n(a)(1) (emphasis added). It also allows punitive damages, costs and attorneys fees. *Id.* The negligent noncompliance section provides for only "actual damages sustained by the consumer," costs, and attorneys fees. § 1681 o(a).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

Miller's complaint alleges willful noncompliance, not negligent violations.

CoreStar bases its argument primarily on the Seventh Circuit's decision in *Ruffin-Thompkins v. Experian Info. Solutions, Inc.,* 422 F.3d 603 (7th Cir.2005). In that decision, the court found that a consumer must prove that he is entitled to actual damages before he can recover statutory damages. *Id.* at 610-611.I respectfully disagree. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."*Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). The provision in the willful compliance liability allows for actual damages or statutory damages. Although they are located in the same paragraph of the section, the statutory damages provision is not dependent on the plaintiff first proving actual damages. Instead, the paragraph allows a plaintiff to recover for either actual or statutory damages, but not both.

**\*5** As one district court has noted, the plain language of § 1681n"buttresses the view that actual damage is not required in an action to enforce any liability under the Act."*Ackerley v. Credit Bureau of Sheridan, Inc.,* 385 F.Supp. 658, 661 (D.Wyo.1974). The *Ackerley* court further opined, "This section does not speak in terms of requiring actual damages; rather, it refers to actual damages as one portion of any award or relief that might be granted."*Id.* Therefore, as the statute clearly provides, Miller need not allege actual damages in order to recover statutory damages.

C. *Injunctive Relief*

CoreStar also argues that, under the FCRA, injunctive relief is not available under the FCRA. The two sections of the FCRA discussing private remedies are § 1681n, which discusses liability for willful violations, and § 1681o, which discusses liability for negligent violations. Neither of those sections mention the availability of injunctive relief. In another

section, the FCRA specifically granted the power to obtain injunctive relief to states and the FTC. *See*§ 1681s(c)(1) (the state "may bring an action to enjoin such violation"); § 1681s(a) (referencing the FTC's enforcement powers under the Federal Trade Commission Act, 15 U.S.C. § 45); and 15 U.S.C. § 45(b) (discussing FTC's ability to require persons to "cease and desist").

Courts have split on the issue. *See, e.g., Washington v. CSC Credit Services, Inc.,* 199 F.3d 263, 268 (5th Cir.2000) (denying availability of injunctive relief); *Andrews v. Trans Union Corp.,* 7 F.Supp.2d 1056, 1084 (C.D.Cal.1998) (allowing injunctive relief). I agree with the Fifth Circuit. As that court has reasoned, "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."*Washington,* 199 F.3d at 268.

The Court of Appeals has come to a similar conclusion with a statute similar to the FCRA, the Fair Debt Collection Practices Act ("FDCPA").*See Weiss v. Regal Collections,* 385 F.3d 337 (3d Cir.2004). In that case, the plaintiff sought statutory damages, declaratory, and injunctive relief under the FDCPA.*Id.* at 339.In their analysis, the Court noted that the FDCPA did not explicitly provide for injunctive or declaratory relief in private actions.*Id.* at 341*citing*15 U.S.C. § 1692k (2004). Like the FCRA, the FDCPA specifically permitted the Federal Trade Commission to pursue injunctive relief. The Court held, "Because the statute explicitly provides declaratory and equitable relief only through actions by the Federal Trade Commission, ... the different penalty structure demonstrates Congress's intent to preclude equitable relief in private actions."*Id.* at 341-42.Although a different statute is at issue here, the conclusion must be the same. Congress's explicit grant of power to the FTC and states, when viewed together with Congress's si-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                      Page 6
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

lence as to the right of private parties' to pursue in-
junctions, mandates the conclusion that injunctive
relief is not available to private parties.

**\*6** An appropriate order follows.

### ORDER

AND NOW, this 29th day of June 2006, upon con-
sideration of defendants' motion to dismiss,
plaintiff's response, defendants' reply, plaintiffs'
surreply, and defendants' response to plaintiffs' sur-
reply, and for the reasons set forth in the accompa-
nying memorandum, defendants' motion to dismiss
is GRANTED as to Miller's "clear and conspicu-
ous" disclosures claim and Miller's request for in-
junctive relief. The defendants' motion to dismiss is
DENIED as to all other claims.

Plaintiff is granted leave to amend his Complaint
within thirty days regarding his claim under the
"clear and conspicuous" disclosures requirement.
The request for injunctive relief is DISMISSED
WITH PREJUDICE.

E.D.Pa.,2006.
Miller v. CoreStar Financial Group of Pa., Inc.
Slip Copy, 2006 WL 1876584 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 3534234 (N.D.Tex.)

**C**
Thompson v. Homecomings Financial
N.D.Tex.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Texas, Dallas Division.
Kendra A. THOMPSON Plaintiff,
v.
HOMECOMINGS FINANCIAL, et al. Defendants.
**No. 3-05-CV-1800-L.**

Dec. 19, 2005.

Kendra A. Thompson, Dallas, TX, pro se.
Paul L. Myers, Strasburger & Price, Frisco, TX, J. Garth Fennegan, Settle & Pou, Amanda Stamps Lewis, Strasburger & Price, Derek D. Rollins, Shackelford Melton & McKinley, Chad Pinson, Van H. Beckwith, Baker Botts, Tanya D. Henderson, Brian T. Morris, Winstead Sechrest & Minick, Dallas, TX, for Defendants.

*FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

KAPLAN, Magistrate J.
*1 Defendants CitiFinancial Mortgage Company, Inc. ("CMC"), Homecomings Financial Network, Inc. ("HFN"), and Trans Union LLC ("TU") have filed separate motions to dismiss this *pro se* civil action brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* and for negligence. For the reasons stated herein, the motions should be granted in part and denied in part.

I.

Plaintiff Kendra Thompson alleges that she was the victim of an identity theft scheme perpetrated by an unknown person who used her confidential information to obtain credit without authorization. (*See* Plf. Orig. Pet. at 2, ¶ 6). This unauthorized credit includes a $99,200 mortgage loan from Bayrock

Mortgage Corporation, which was subsequently assigned to CMC, and a $202,350 mortgage loan from HFN. (*See* Plf Resp. to CMC's Mot. to Comp. & Dism., Appx. at 2, ¶ 9 & Plf. Resp. Br. to HFN's Mot. to Dism. at 7, ¶ 9). After the unknown perpetrator defaulted on the mortgage loans and filed for bankruptcy using plaintiff's name, CMC and HFN allegedly reported that information to various consumer reporting agencies, including TU, CSC Credit Services, Inc. ("CSC"), and Equifax Credit Information Services, Inc. ("Equifax"). (*See* Plf. Resp. to CMC's Mot. to Comp. & Dism., Appx. at 13-15; Plf. Resp. Br. to HFN's Mot. to Dism. at 1, ¶ 2). The reporting agencies, in turn, included the information in plaintiff's credit report. (*See* Plf. Resp. to HFN's Mot. to Dism., Attch. 1, 2-3).

Upon discovering that the two defaulted mortgage loans and the bankruptcy filing appeared on her credit report, plaintiff notified the lenders and the consumer reporting agencies of the alleged identity theft. When the disputed information was not removed from her credit file, plaintiff sued CMC, HFN, TU, CSC, and Equifax in Texas state court for violations of the FCRA and negligence. CSC, joined by the other defendants, timely removed the case to federal court.[FN1] In separate motions, CMC, HFN, and TU now move to dismiss this action on the grounds that: (1) plaintiff has failed to allege sufficient facts to state a claim for relief under the FCRA; and (2) her negligence claim is preempted by federal law. TU also seeks dismissal of plaintiff's claim for injunctive relief and, in the event its motion to dismiss is not granted, a more definite statement with respect to plaintiff's FCRA claim. The issues have been fully briefed by the parties and the motions are ripe for determination.[FN2]

> FN1. Federal jurisdiction is proper because a claim under the FCRA "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 3534234 (N.D.Tex.)

FN2. Although plaintiff has not yet filed a response to CMC's second motion to dismiss and TU's partial motion to dismiss and partial motion for more definite statement, most of the legal issues raised by these motions were fully briefed by plaintiff in her responses to CMC's first motion to dismiss and HFN's motion to dismiss. In order to avoid undue delay, the court decides all pending motions without awaiting further responses from plaintiff.

II.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6)"is viewed with disfavor and is rarely granted."*Lowrey v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997), *quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,*459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). A district court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996).

*2 The exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Fed.R.Civ.P. 8(a). In what has been characterized as a "seminal pleading case," the Supreme Court has reminded lower courts that, in order to survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 922, 998, 152 L.Ed.2d 1 (2002), *quoting*Fed.R.Civ.P. 8(a)(2). This simplified pleading standard applies to all civil actions. *Id.,* 122 S.Ct. at 998. Except in a limited set of cases,[FN3] a plaintiff is not required to plead facts supporting each and every element of his claim or

legal theory. *Id.* Rather, a complaint is sufficient if it "give [s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."*Id., quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).*See also Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002) (interpreting *Swierkiewicz* to mean that "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts"). Liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of unmeritorious claims. *See Swierkiewicz,* 122 S.Ct. at 998.

FN3. These exceptions are found in Rule 9(b), which provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

III.

The FCRA imposes certain duties on consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *See*15 U.S.C. § 1681, *et seq.* Consumer reporting agencies, like TU, CSC, and Equifax, are required to reinvestigate the completeness or accuracy of any item of information disputed by a consumer. *Id.* § 1681i(a)(1). If the disputed information is inaccurate, incomplete, or cannot be verified, the consumer reporting agency must:

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or de-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 3534234 (N.D.Tex.)

leted from the file of the consumer.

*Id.* § 1681i(a)(5). Creditors, such as CMC and HFN, are considered "furnishers of information" under the Act. *See Thomasson v. Bank One, Louisiana, N.A.,* 137 F.Supp.2d 721, 723 (E.D.La.2001). Furnishers are required to investigate disputed consumer information, report the results of their investigation to the consumer reporting agency, and modify or delete information that is inaccurate, incomplete, or cannot be verified. *See* 15 U.S.C. § 1681s-2(b). A reporting agency or furnisher of information who fails to comply with its obligations under the statute is liable to the aggrieved consumer for actual damages, attorney's fees and, upon proof of a willful violation, statutory and punitive damages. *Id.* §§ 1681n & 1681o.

### A.

*3 In her *pro se* complaint, plaintiff alleges that she was the victim of an identity theft scheme perpetrated by an unknown person or persons in and around August 2002. According to plaintiff:

The Defendants have been given information by Plaintiff that reveals that she is not the person or one of the persons who stole Plaintiff's identity and made unauthorized purchases and filed bankruptcy. *Defendants have refused to remove the false information from plaintiff's credit file in light of the information in Defendants' possession.* Plaintiff filed affidavit with supporting documents showing the court has dismissed the suit for bankruptcy but the defendants have refused to remove the incorrect information.

The defendants had a duty to Plaintiff not to cause harm to her credit rating after being supplied with information that confirms Plaintiff did not initiate, participate, profit, or assist in the theft of her identity. *Defendant has a duty to report the correct information* on Plaintiff's credit report but has failed to do so for unknown reasons.

(Plf. Orig. Pet. at 2-3, ¶¶ 6-7) (emphasis added). Liberally construed, it is apparent that plaintiff is suing both the consumer reporting agencies and furnishers of information for failing to delete inaccurate information from her credit file. Such conduct, if proved, may violate the FCRA. Without suggesting a view on the merits of these claims or whether dismissal would be proper in another procedural context, such as a motion for summary judgment, the court concludes that defendants cannot prevail on a Rule 12(b)(6) motion at this stage of the litigation.[FN4]

> FN4. The court also denies TU's partial motion for a more definite statement. Local Civil Rule 12.1 provides:
>
> > Except for motions complaining of failure to plead fraud or mistake with particularity pursuant to Fed.R.Civ.P. 9(b), a motion for more definite statement may only be filed where the information sought cannot be obtained by discovery.
>
> > LCivR 12.1. There is no reason why TU cannot obtain the information it seeks through interrogatories or by deposing plaintiff.

### B.

CMC and HFN correctly point out that a private right of action exists against a furnisher of information only if the furnisher receives notice from a *consumer reporting agency* that the consumer disputes the information.[FN5]*See* 15 U.S.C. § 1681s-2(b); *see also Young v. Equifax Credit Information Services, Inc.,* 294 F.3d 631, 639 (5th Cir.2002) (private right of action under section 1681s-2(b) requires proof that consumer reporting agency notified furnisher of information of dispute concerning the information); *Downs v. Clayton Homes, Inc.,* Nos. 03-5259 & 03-6055, 88 Fed.Appx. 851, 853-54 (6th Cir. Feb.9, 2004) (plaintiff must show that the furnisher received notice from consumer reporting agency that the credit

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3534234 (N.D.Tex.)

information is disputed).*But cf. Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1060 (9th Cir.2002) (consumer may bring an action against furnisher of inaccurate information if the consumer has notified the credit agency of the dispute). In her complaint, plaintiff alleges that "[d]efendants have been given information *by Plaintiff* that reveals that she is not the person or one of the persons who ... made unauthorized purchases and filed bankruptcy."(Plf. Orig. Pet. at 2, ¶ 6) (emphasis added). This suggests that CMC and HFN received notice of the disputed information from plaintiff, not a consumer reporting agency.

> FN5. Section 1681s-2(a) of the FCRA prohibits a furnisher from providing inaccurate information to a credit reporting agency after receiving notice of the inaccuracy *from the consumer.* However, there is no private right of action for a violation of section 1681s-2(a). *See Bank One, N.A. v. Colley,* 294 F.Supp.2d 864, 868 (M.D.La.2003).

**\*4** Notwithstanding this pleading deficiency, plaintiff would have no way of knowing at this early stage of the litigation whether the reporting agencies discharged their statutory duty by notifying CMC and HFN of the disputed information. Recognizing this problem, other courts have allowed similar claims to go forward, subject to the furnisher's right to seek dismissal if, after discovery, it cannot be established that notice of the disputed information was provided by a consumer reporting agency. *See, e.g. Jaramillo v. Experian Information Solutions, Inc.,* 155 F.Supp.2d 356, 363-64 (E.D.Pa.2001); *Sullivan v. Equifax, Inc.,* No. 01-4336, 2002 WL 799856 at *2 n. 3 (E.D.Pa. Apr.19, 2002).*But see King v. Equifax Information Services,* No. H-05-0628, 2005 WL 1667783 at *3 (S.D. Tex. Jul 15, 2005) (requiring plaintiff to amend complaint to plead that a consumer reporting agency notified the furnisher of the dispute, even if such an allegation was made only "on information and belief"). This approach is particularly appropri-

ate where, as here, the consumer alleges that she disputed the information with the reporting agencies as well as with the furnishers themselves. *See Jaramillo,* 155 F.Supp.2d at 363-64;*Sullivan,* 2002 WL 799856 at *2 n. 3. The court therefore should decline to dismiss plaintiff's FCRA claim against CMC and HFN on this ground.

IV.

Plaintiff also sues all defendants for negligence under Texas law. (*See* Plf. Orig. Pet. at 3, ¶ 7). CMC, HFN, and TU contend that this claim is preempted by section 1681h(e) of the FRCA, which prohibits a consumer from bringing "any action or proceeding in the nature of defamation, invasion of privacy, or *negligence,...* except as to false information furnished *with malice or willful intent to injure* such consumer."15 U.S.C. § 1681h(e) (emphases added); *see also Young,* 294 F.3d at 638 (FRCA provides qualified immunity for consumer reporting agencies with respect to negligence claims). Although no federal appeals court has addressed this precise issue, another judge in this district has held that "[t]here is no cause of action under Texas law for negligence where the offending action was taken with intent to injure."*Carlson v. Trans Union, LLC,* 261 F.Supp.2d 663, 665 (N.D.Tex.2003) (Sanders, J.), *citing Michels v. Crouch,* 122 S.W.2d 211, 213-14 (Tex.Civ.App.-Eastland 1938, no writ). Noting that a claim for "intentional negligence" is an oxymoron, the court held that allegations of simple negligence in the context of a FCRA case, such as those made by plaintiff in her complaint, fail to state a claim upon which relief may be granted. *Id.; see also Carlson v. Trans Union, LLC,* 259 F.Supp.2d 517, 521 n. 1 (N.D.Tex.2003) (Sanders, J.) ("[W]here there is a requirement of 'malice or willful intent to injure[,]' there is no cause of action for negligence."). Accordingly, plaintiff's negligence claim should be dismissed.

V.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3534234 (N.D.Tex.)

Finally, to the extent plaintiff seeks injunctive relief against TU and the other consumer reporting agencies, such claims also must be dismissed. In her prayer for relief, plaintiff requests that the court "have the Defendants to clear all false and incorrect information on Plaintiff's account removed at once [sic]." (Plf. Orig. Pet. at 4). The FCRA limits the remedies available to private litigants to actual damages, attorney's fees and, upon proof of a willful violation, statutory, and punitive damages. *See* 15 U.S.C. §§ 1681n & 1681o. Private litigants may not seek injunctive or equitable relief against a consumer reporting agency. *Washington v. CSC Credit Services Inc.,* 199 F.3d 263, 268 (5th Cir.), *cert. denied,* 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000) ("Congress vested the power to obtain injunctive relief solely with the FTC."); *see also Poulson v. Trans Union, LLC,* 370 F.Supp.2d 592, 593 (E.D.Tex.2005). Thus, the court lacks authority to order the reporting agencies to delete disputed information from plaintiff's credit file.

## RECOMMENDATION

**\*5** Defendants' motions to dismiss should be granted in part and denied in part. The motions should be granted with respect to plaintiff's claim for negligence and any claim for injunctive relief against the consumer reporting agencies. In all other respects, the motions should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996).

N.D.Tex.,2005.

Thompson v. Homecomings Financial
Not Reported in F.Supp.2d, 2005 WL 3534234 (N.D.Tex.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

Page 1

**C**
Hogan v. PMI Mortg. Ins. Co.
N.D.Cal.,2006.
Only the Westlaw citation is currently avail-
able.NOT FOR CITATION
United States District Court,N.D. California.
Michelle HOGAN, David Hogan, Kay Cartwright,
and William Cartwright, on Behalf of Themselves
and Others Similarly Situated, Plaintiffs,
v.
PMI MORTGAGE INSURANCE CO., Defendant.
No. C 05-3851 PJH.

May 12, 2006.

Stephen L. Meagher, Law Offices of Stephen L.
Meagher, San Francisco, CA, Douglas Bowdoin,
Douglas Bowdoin, P.A., Orlando, FL, Kathleen
Clark Knight, Terry A. Smiljanich, James Hoyer
Newcomer & Smiljanich, P.A., Tampa, FL, for
Plaintiffs.
Michael J. Agoglia, Rita Lin, Stuart C. Plunkett,
Morrison & Foerster LLP, San Francisco, CA, for
Defendant.

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DIS-
MISS**

PHYLLIS J. HAMILTON, District Judge.
*1 Defendants' motion to dismiss claims one, three,
five, six, seven and eight of the amended complaint
came on for hearing before this court on April 26,
2006. Plaintiffs appeared by their counsel Tamra
Cursten Givens, Stephen L. Meagher, and Kathleen
Clark Knight, and defendant appeared by its coun-
sel Stuart C. Plunkett. Having read the parties' pa-
pers and carefully considered their arguments and
the relevant legal authority, and good cause appear-
ing, the court hereby GRANTS the motion to dis-
miss claims five, six, seven and eight, and DENIES
the motion to dismiss claims one and three.

**INTRODUCTION**

This is a proposed class action alleging violations
of the Fair Credit Reporting Act, 15 U.S.C. § 1681,
et seq. ("FCRA"). Plaintiffs Michelle Hogan, David
Hogan, Kay Cartwright, and William Cartwright
(collectively "plaintiffs") filed this action on
September 23, 2005, against defendant PMI Mort-
gage Insurance Company ("PMI"). Plaintiffs filed
the amended complaint ("AC") on January 4, 2006.

In the AC, plaintiffs assert four causes of action al-
leging violations of three provisions of the FCRA
(claims one, two, three, and four); two causes of ac-
tion for declaratory relief, seeking declarations that
PMI is obligated to provide notice of adverse action
to consumers and that PMI's use of consumer report
information violated the FCRA (claims five and
seven); two causes of action for injunctive relief,
seeking orders prohibiting PMI from violating the
FCRA (claims six and eight); and one cause of ac-
tion under state law alleging violation of Califor-
nia's Consumer Credit Reporting Agencies Act
("CCRAA") (claim nine). See California Civil
Code §§ 1785.25(a)-(c). PMI now moves to dismiss
certain claims from the AC pursuant to Federal
Rule of Civil Procedure 12(b)(6) for failure to state
a claim, as follows: 1) claims one, three, five and
six on the basis that the FCRA no longer provides a
private right of action for these claims; and, 2)
claims five, six, seven and eight because declarat-
ory and injunctive relief is not available for private
litigants under the FCRA.

**BACKGROUND**

Plaintiffs Michelle and David Hogan, and Kay and
William Cartwright are two couples who used res-
idential loans to finance the purchase of their new
homes in Texas and Georgia, respectively. As part
of their loan transactions, plaintiffs allege they
were required to pay premiums for mortgage insur-
ance. Mortgage insurance covers the mortgage

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

lender against losses due to borrower default when the loan collateral is not sufficient to make the lender whole. Plaintiffs' mortgage lenders obtained mortgage insurance on plaintiffs' loans from defendant PMI.

Plaintiffs assert violations of three sections of the FCRA-15 U.S.C. § 1681b, § 1681m, and § 1681q-and one section of the CCRAA-Cal. Civ.Code § 1785 (subsections § 1785.19 and § 1785.31)-both in their individual capacities and as proposed representatives of a putative class of similarly situated individuals against whom PMI allegedly took adverse action, without providing notice, based on information contained in consumer reports.

*2 First, plaintiffs allege that PMI used information contained in plaintiffs' consumer reports to determine the rate of their mortgage insurance premiums, that PMI took adverse action against plaintiffs by charging them a rate that was higher than PMI's best premium, and that PMI failed to notify plaintiffs of this adverse action as required under § 1681m. Plaintiffs also allege that these actions reflect PMI's corporate policy to use information contained in consumer reports to determine insurance premiums and to charge higher premiums if information contained in the report is derogatory for any reason. Furthermore, plaintiffs allege that PMI has made a corporate decision to fail or refuse to provide adequate notice of adverse action to consumers. Specifically, in the first cause of action, plaintiffs assert that PMI willfully violated the FCRA by failing to notify consumers of "adverse action" based on consumer reports as required by § 1681m. In the third cause of action, plaintiffs assert defendant negligently violated FCRA in failing to notify consumers when it used a consumer report to charge higher premiums for mortgage insurance required by § 1681m. In the fifth cause of action, plaintiffs request a judicial declaration of the rights of the parties regarding PMI's obligation to provide adequate notice of adverse action as required by the FCRA. In the sixth cause of action, plaintiffs seek an order enjoining PMI from failing to provide no-

tice of adverse action under the FCRA.

Second, plaintiffs allege that the transactions to acquire mortgage insurance were initiated by the lenders, not the consumers, and that consumers are not the insured parties on the mortgage insurance policies issued by PMI. In the second cause of action,[FN1] plaintiffs assert that PMI has no permissible purpose for using consumer report information for plaintiffs and for class members to set mortgage insurance premium rates pursuant to § 1681b. Furthermore, to the extent that PMI led the provider of the consumer report to believe that the report would be used for a transaction initiated by the consumer, or with the permission of the consumer, PMI obtained the report under false pretenses thereby willfully violating § 1681q. In the fourth cause of action,[FN2] plaintiffs allege that PMI failed to institute reasonable procedures to ensure compliance with the FCRA and that PMI's conduct constitutes negligent violation of § 1681b and § 1681q. In the seventh cause of action, plaintiffs request a judicial declaration of the rights of the parties regarding PMI's alleged illegal use of plaintiffs' consumer report information. In the eighth cause of action, plaintiffs seek an order enjoining PMI from violating the rights of consumers by using their consumer report information without a permissible purpose.

> FN1. PMI does not move to dismiss the second cause of action.

> FN2. PMI does not move to dismiss the fourth cause of action.

Third, plaintiffs allege violations under California state law. Plaintiffs repeat their allegations that PMI uses consumer reports to set mortgage insurance premiums, that these reports are used in transactions not initiated by the consumer, and that the consumer is not the insured party under the mortgage insurance policies, and further that if PMI led the provider of the consumer reports to believe that the transactions were initiated by consumers or with the permission of the consumers, then PMI obtained the reports under false pretenses. Finally, plaintiffs

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

allege that all of PMI's conduct occurred within the State of California. In the ninth cause of action,[FN3] plaintiffs assert that PMI has no permissible purpose for using the report information, violating Cal. Civ.Code § 1785.11. Plaintiffs further assert that the actions of PMI constitute willful noncompliance with the requirements of CCRAA, Cal. Civ.Code § 1785.19 and § 1785.31.

> FN3. PMI does not move to dismiss the ninth cause of action.

### DISCUSSION

*3 PMI argues that plaintiffs' claims fail to state a claim under the FCRA, and should be dismissed pursuant to Rule 12(b)(6). PMI asserts that an amendment to the FCRA has eliminated any private right of action for violations of section 1681m. PMI, therefore, argues that counts one, three, five, and six of the complaint which seek relief under § 1681m fail as a matter of law and must be dismissed. Furthermore, PMI asserts that counts five through eight, which seek injunctive and declaratory relief, fail because declaratory and injunctive relief are not available to private litigants under the FCRA. Finally, PMI argues that to the extent plaintiffs rely on state law for equitable relief, those claims are preempted by the FCRA.

### A. Legal Standard

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir.1994). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th

Cir.1996).

Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *See United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."*Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995) (citations omitted).

### B. Defendant's Motion

1. Claims for Failure to Notify of Adverse Action

PMI asserts that counts one, three, five, and six are barred as a matter of law, because the 2003 amendment to the FCRA eliminated any private right of action under § 1681m. In 2003, Congress amended the FCRA with the enactment of the Fair and Accurate Transactions Act ("FACTA"). Among other things, FACTA § 311 amended private enforcement rights available under the FCRA. Thus, while § 1681n and § 1681o of the FCRA generally establish a private right of action for certain violations of the FCRA, § 1681m(h)(8) (added by FACTA) now expressly provides that there is no private right of action for alleged violations of § 1681m:

(8) Enforcement

(A) No civil actions. Sections 1681n and 1681o shall not apply to any failure by any person to comply with this section.

(B) Administrative enforcement. This section shall be enforced exclusively under section 1681s by Federal agencies and officials identified in that section.

*4 15 U.S.C. § 1681m(h)(8) ("Enforcement Language"). PMI asserts that every court to have con-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

Page 4

sidered the issue has held that the Enforcement Language, effective December 1, 2004, bars private actions under section 1681m. Plaintiffs do not dispute that the effect of the Enforcement Language is to bar private rights of action under § 1681m. Instead they argue that the FACTA amendment does not apply because defendant's conduct took place in September and October 2003, before the effective date of the amendment.

PMI acknowledges that the courts have split on the issue of whether the FACTA amendment bars a claim brought after the effective date of the amendment where, as here, the complaint alleges that defendant's conduct occurred prior to the amendment's effective date. PMI argues that dismissal of plaintiffs' § 1681m claims does not require retroactive application of the FACTA amendment for two reasons: a) there is no retroactive application because the relevant activity affected by FACTA is the filing of lawsuits under § 1681m, not the underlying compliance obligations under that section; and, b) even if applying the Enforcement Language to this action would be retroactive, it is not impermissibly retroactive under the *Landgraf* test. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 280 (1994).

In its first argument, PMI asserts that the court need not reach the *Landgraf* test, because PMI is not asking the court to apply the Enforcement Language retroactively. PMI argues that since plaintiffs brought suit *after* the effective date of the amendment, no retroactive application is required. PMI argues that the relevant activity to consider, when evaluating whether the Enforcement Language is retroactively applied, is the act of filing suit, rather than the conduct of the defendant. If the relevant conduct is the act of filing suit, then the Enforcement Language would be applied prospectively rather than retroactively.

PMI asserts that "[a] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the con-

trary."*Bradley v. Sch. Bd. of City of Richmond,* 416 U.S. 696, 711 (1974). According to PMI, since the Enforcement Language was the law in effect at the time plaintiffs filed suit, it eliminates the plaintiffs' private right of action. PMI cites *Killingsworth v. Household Bank (SB) N.A.,* from the Northern District of Illinois, in which the court looked to the date of filing as the relevant act being regulated by the Enforcement Language. 2006 WL 250704 (N.D.Ill. Jan. 31, 2006). In that case, because the suit was filed after the effective date of the amendment, the court dismissed the section 1681m claims. *Id.* at *13.

PMI also cites *Landgraf* for the proposition that "a statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment."511 U.S. at 269. In fact, PMI notes that the concurrence in *Landgraf* explains that the "critical issue" for application of the retroactivity analysis "is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates."*Id.* at 291 (Scalia, J., concurring). Thus, PMI argues that the "relevant activity" is the conduct that must precede the statute's effective date, which PMI asserts is the act of filing.

*5 In its second argument, PMI asserts that even if the court were to agree with the plaintiffs that applying the Enforcement Language to this action would amount to retroactive application, such application would not be *impermissibly* retroactive under *Landgraf.*PMI relies on *Southwest Center for Biological Diversity v. United States Department of Agriculture,* 314 F.3d 1060 (9th Cir.2002). In *Southwest,* the Ninth Circuit applied a law retroactively to eliminate the right of a plaintiff to access information under the Freedom of Information Act, and thus dismissed the plaintiff's case. *Id.* at 1061.The Ninth Circuit observed that the plaintiff had not relied upon existing law, and suffered prejudice when that law changed. *Id.* The plaintiff had merely requested and sued for information. PMI asserts that similarly in this case, there is no allega-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

Page 5

tion that plaintiffs took any action in reliance on the continued availability of a private right of action under the FCRA. In fact, plaintiffs' first action was to file suit on September 23, 2005, *after* the Enforcement Language had already become effective.

Plaintiffs assert that the relevant activity for the court to consider is PMI's conduct in September and October 2003, which occurred before the Enforcement Language took effect. Plaintiffs cite *Fisher v. Finance America, LLC,* holding that application of the FACTA amendment retroactively, to conduct that occurred before the amendment took effect, is improper. SACV 05-0888 CJC (N.D.Cal. Jan. 23, 2006), Def. Request for Judicial Notice ("RJN"), Exh. 1, at 15. Plaintiffs also argue that *Scott v. Boos,* 215 F.3d 940 (9th Cir.2000), is more analogous to this case than *Southwest.* In *Scott,* the court considered the congressional amendment to the civil RICO statute which provided that securities fraud could no longer serve as a predicate act for a civil RICO claim. Scott, 215 F .3d at 941-42. The Ninth Circuit held that "[i]t appears that the [Private Securities Litigation Reform Act of 1995] has retroactive effect because prior to the PSLRA a plaintiff had a RICO claim based on a defendant's alleged securities fraud, while afterwards a plaintiff does not."*Id.* at 944-45.The Scott court also found that "the date of the filing of the claim does not appear relevant."*Id.* at 949.

The court finds that application of the Enforcement Language to this case would be impermissibly retroactive. Consideration of whether a statute applies retroactively is controlled by *Landgraf.*In *Landgraf,* the Supreme Court held that there is a presumption against the retroactive application of legislation. *Landgraf,* 511 U.S. at 265. When a case implicates a federal statute enacted after the events that gave rise to the suit, the district court must first examine the language of the statute to determine whether Congress has expressly provided the statute's proper reach. *Id.* at 280.If the statutory language expressly provides for either prospective or retroact-

ive application, then the court is required to "give effect to the congressional will, subject only to constitutional restraints."*Id.* However, it the statute does not specify its temporal reach, the court must proceed to the second step, under which the court determines whether the new statute would have any retroactive effect-that is, "whether it would impair rights a party had when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."*Id.*

*6 Because the statute here does not specify whether it is retroactive, the court must proceed to the second step of the analysis and determine whether FACTA would have any retroactive effect. In three recent decisions, district judges in the Central District of California have applied *Landgraf* and determined that retroactive application of § 1681m(h)(8) has impermissible retroactive effects. *See Fisher,* Def. RJN, Exh. 1; *Phillips v.. New Century Fin. Corp.,* 2006 WL 517653 (C.D.Cal., Mar. 1, 2006); *Parthiban v. GMAC Mortgage Corp.,* Pl. RJN, Exh. C, SA CV 05-768 DOC (C.D.Cal.2006).

As noted, PMI cites *Killingsworth* for its argument that the statute does not apply retroactively because the relevant activity effected by the amendment is the act of filing suit. 2006 WL 250704. However, both *Fisher* and *Parthiban,* which the court finds are more persuasive, explicitly reject this argument. *See Fisher,* Def. RJN, Exh. 1, at 10 (relying on *Scott,* 215 F.3d at 949);*Parthiban,* Pl. RJN, Exh. C at 7.

In *Parthiban,* the plaintiff alleged that defendant obtained plaintiff's consumer report without plaintiff's knowledge or consent, and then mailed plaintiff a written solicitation for a home mortgage, which did not contain a firm offer of credit or provide, in a clear and conspicuous manner, mandated consumer rights disclosures. *Id.* The defendant's conduct-sending the allegedly illegal letter-occurred before the effective date of FACTA. Pl. RJN, Exh. C, at 7. However, the plaintiff did not file suit until after the amendment took effect. *Id.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

For purposes of analyzing retroactivity, the *Parthiban* court held that the focus should be on the date the conduct at issue took place, not the date that the plaintiff brought suit. *Id.* (citing *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 947 (1997)). The court reasoned that the fact that the plaintiff waited until after the amendment took effect to file suit did not vitiate the illegality of the defendant's conduct. *Id.*

Moreover, the *Parthiban* court held that the FACTA amendment did not bar plaintiff's claim because to hold otherwise would have impermissible retroactive effect, where defendant's conduct at issue occurred before the effective date of the amendment. Pl. RJN, Exh. C, at 7. The court acknowledged the Seventh Circuit's decision in *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 951 (7th Cir.2006), holding that the amendment does not apply retroactively to credit offers made before FACTA's effective date. Pl. RJN, Exh. C, at 5. The court, however, noted that the question was not settled in the Ninth Circuit.

The *Parthiban* court followed the two-step analysis of *Landgraf. Id.* First, the court found that the language of the amendment did not expressly prescribe its own temporal reach, requiring the court to address the second prong of the *Landgraf* test. *Id.* at 6. Second, the court analyzed whether the amendment would have retroactive effect. *Id.* Relying on *Scott,* the court stated that under Ninth Circuit law, a statute eliminating a private right of action under a given law has retroactive effect. *Id.* The court borrowed the reasoning from *Scott,* because, similar to *Scott,* defendant's actions in *Parthiban* give rise to different legal consequences before and after the effective date of FACTA. *Id.* After FACTA, defendants faced a significantly lesser chance of being held liable, since "an entire class of plaintiffs" was eliminated by the amendment. *Id.* (noting that after FACTA, group of plaintiffs comprising "consumers who received illegal credit solicitations" could no longer sue defendants privately). According to the court, this was an impermissible

retroactive effect. *Id.*

*7 Finally, the *Parthiban* court rejected the defendant's argument that *Southwest* governed the retroactivity issue. *Id.* First, the court noted that the facts of *Parthiban* were more closely analogous to *Scott* than *Southwest,* since, like *Scott,* the case concerned the elimination of a private right of action by statutory amendment. *Id.* The court acknowledged that it was unclear whether the Ninth Circuit intended to add an additional requirement to the retroactivity analysis by its holding in *Southwest. Id.* However, the court noted that no court had ever cited *Southwest* for the proposition that there can be no retroactive effect without proof that a plaintiff affirmatively acted in reliance on prior law. *Id.*

Similarly, in *Fisher,* the district court held that the abrogation of a private right of action had an impermissible retroactive effect, because it impaired the rights plaintiff possessed at the time that the defendant failed to make the required disclosures, and attached new legal consequences to pre-enactment conduct. Specifically, the court found that before FACTA was passed, a consumer receiving an unsolicited credit solicitation could sue for failure to include a "clear and conspicuous" statement, whereas after FACTA, she could not. *Fisher,* Def. RJN, Exh. 1, at 7-9.

In reaching this conclusion, the court relied on Scott, discussed above. The *Fisher* court also relied on *Hughes Aircraft,* where the Supreme Court held that the enactment of an amendment to the False Claims Act ("FCA") had an impermissible retroactive effect because it eliminated a previously-available defense to qui tam suits, and significantly increased the likelihood that defendants would be held liable by expanding the universe of potential plaintiffs to include private persons "motivated by prospects of monetary reward rather than the public good."*Fisher,* Def. RJN, Exh. 1, at 8-9 (citing *Hughes Aircraft,* 520 U.S. at 949). The Court held that the change in the identity of the potential plaintiffs, and the consequent change in the incentive to sue, essentially created a new cause of action,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

Page 7

not just an increased likelihood that an existing cause of action would be pursued. *Hughes Aircraft,* 520 U.S. at 950. Similarly, the *Fisher* court held that the change created by the FACTA amendment-removal of a profit incentive for suit by eliminating the private right of action-would affect the substantive rights of the parties by essentially eliminating an entire cause of action and subjecting defendants to a much decreased likelihood of liability. *Fisher,* Def. RJN, Exh. 1, at 9.

In *Phillips,* the court held that the FACTA amendment eliminating the private right of action did not bar plaintiff's claim, where before the Enforcement Language became effective, the defendant allegedly accessed the plaintiff's credit report and sent a solicitation that did not constitute a firm offer of credit. 2006 WL 517653 at *6. Plaintiff did not file suit until after the Enforcement Language took effect. *Id.* The court rejected the argument that the focus should be on the date plaintiff brought suit, rather than the date of the conduct at issue. *Id.* (citing *Hughes Aircraft,* 520 U.S. at 947).

*8 The *Phillips* court's reasoning is in line with the *Parthiban* and *Fisher* courts. Like both of those courts, in *Phillips,* the district court relied on the Ninth Circuit's decision in Scott, as opposed to that in *Southwest.* Similarly, the court also held that applying the FACTA amendment to eliminate the private right of action arising out of defendant's conduct that occurred before the amendment took effect would have impermissible retroactive effects under *Landgraf* and *Scott. Id.* at * 7.

*Phillips* and *Parthiban* are similar factually to the case here, and both courts relied on *Scott* rather than *Southwest. Scott* is also more analogous to the facts here, since Scott dealt with whether the elimination of a private right of action had impermissible effect, and in Southwest the Ninth Circuit applied a law retroactively to eliminate the right of a plaintiff to access information under the Freedom of Information Act. Here, as in Scott, PMI's actions give rise to different legal consequences before and after the effective date of FACTA. After FACTA,

PMI faces a significantly lesser chance of being held liable, since an entire category of plaintiffs was eliminated by the amendment. *Id.* Under the reasoning of *Scott,* this is impermissible retroactive effect.

Furthermore, given the dearth of authority to the contrary, the court is simply not persuaded by PMI's argument that the Ninth Circuit intended in *Southwest* to add an third requirement to the long-established *Landgraf* test. Thus, defendant's motion to dismiss claims one, three, five, and six is DENIED, because retroactive application of FACTA to bar plaintiffs' claims would have impermissible effect.

2. Claims for Declaratory and Injunctive Relief

Plaintiffs' claims for declaratory and injunctive relief under the FCRA are found in counts five through eight of the plaintiffs' AC. A claim for injunctive relief under state law may be included in count eight of plaintiffs' AC, though count eight does not expressly state whether plaintiffs are seeking relief under federal or state law.

a. Availability of equitable relief to private litigants under FCRA

PMI argues that the claims for declaratory relief (fifth and seventh causes of action) and the claims for injunctive relief (sixth and eighth causes of action) must be dismissed because declaratory and injunctive relief are not available as remedies to private litigants under the FCRA. Private rights of action to enforce alleged violations of the FCRA, to the extent they exist, are based solely on 15 U.S.C. § 1681n and § 1681o. PMI notes that § 1681n and § 1681o list only actual and statutory damages, punitive damages, and attorney's fees as possible remedies available to private litigants, and do not list either declaratory or injunctive relief. By contrast, where Congress intended to make declaratory or injunctive relief available under the FCRA, it did so explicitly. *See*15 U.S.C. § 1681s(a)(1) and §

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

1681u(m).

*9 PMI asserts that courts have almost unanimously found that equitable relief is unavailable to private litigants in FCRA suits. *See Howard v. Blue Ridge Bank,* 371 F.Supp.2d 1139, 1145 (N.D.Cal.2005) ("the express inclusion of injunctive relief in certain provisions of the FCRA and its omission from the provisions creating plaintiff's cause of action to be a sufficiently 'clear command' from Congress that injunctive relief is not available to plaintiff"); *White v. E-Loan, Inc.,* 409 F.Supp.2d 1183, 1187 n. 6 (N.D.Cal.2006) (granting judgment on the pleadings sua sponte on claims for injunctive and declaratory relief under the FCRA); *Yeagley v. Wells Fargo & Co.,* 2006 WL 193257, at *2 (N.D.Cal.2006) ("By limiting the remedies for private rights of action to damages and attorneys' fees Congress demonstrated that it did not intend for private litigants to obtain injunctive or declarative relief."). PMI further contends that since the Fifth Circuit's decision in *Washington v. CSC Credit Services, Inc.,* 199 F.3d 263 (5th Cir.2000), not a single district court has permitted a private litigant to recover injunctive relief under FCRA.

Plaintiffs assert that courts are split on the availability of injunctive and declaratory relief under consumer protection statutes. Furthermore, in the cases most often mentioned in an analysis of equitable relief under the FCRA-*Washington* and *Howard v. Blue Ridge* Bank, 371 F.Supp. at 1139 (which relies in large part on *Washington)*-the courts did not address their "independent authority" to award injunctive and declaratory relief under 28 U.S.C. § 2201 and § 2202. Plaintiffs contend that declaratory and injunctive relief are consistent with the grant of enforcement authority to the FTC under § 1681s, disputing the finding in the *Washington* and *Howard* decisions that in enacting § 1681s(a) (enforcement by the Federal Trade Commission of requirements imposed under §§ 1681, et seq.), Congress intended to grant the FTC the exclusive right to seek injunctive relief. To the contrary, plaintiffs argue, § 1681s(a) is not a limitation on individual

enforcement authority, but rather simply an expansion of the FTC's enforcement powers.

Plaintiffs also argue that declaratory and injunctive relief are consistent with the right of individuals to seek to enjoin the FBI under § 1681u. Plaintiffs claim that without the addition of this section, consumers could not sue the U.S. government, as the government enjoys immunity from suit. Plaintiffs contend, therefore, that the finding by the *Washington* and *Howard* courts-that Congress, by granting private litigants the authority to seek injunctive relief from the federal government, implicitly precluded such litigants from seeking injunctive relief elsewhere-is not persuasive. They argue that neither court addressed the fact that, without this grant of authority, private litigants would be foreclosed from suing the United States or any of its agencies for violations of the FCRA.

*10 PMI responds that courts have rejected plaintiffs' argument that Congress expressly provided for the FTC's authority to seek injunctive relief under § 1681s(a), because Congress wanted to expand the FTC's enforcement powers. See *White,* 378 F.Supp.2d at 424 ("The absence of any express provision for injunctive relief in Sections 1681n and 1681o [providing for suit by private plaintiffs], coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it.").

PMI also argues that courts have rejected the argument regarding authorization for consumers to sue the government for improperly obtaining information under § 1681u:

"Congress added an additional subsection, *see* 1681u(m), that expressly authorized injunctive relief in addition to the remedies at law permitted in subsection (i). By contrast Congress did not include any provision providing for equitable relief in either section 1681o or 1681n. The only way to give meaning to Congress's different treatment of these

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                     Page 9
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

sections is to conclude that Congress intended to limit injunctive relief to state and federal agencies except where otherwise expressly provided."

*Parthiban,* Pl. RJN, Ex. C, at 9.

The court finds the Fifth Circuit's reasoning in *Washington,* as well as the decisions in *Howard, Yeagley,* and *White,* to be persuasive. See *Washington,* 199 F.3d at 268-70;*Howard,* 371 F.Supp.2d at 1145;*Yeagley,* 2006 WL 193257 at *2;*White,* 378 F.Supp.2d at 424. Moreover, the fact that Congress specifically enumerated the types of remedies available to consumers (in § 1681n and § 1681o), and did not include injunctive or declaratory relief, and the fact that Congress expressly authorized such relief on behalf of federal and state agencies, suggests that Congress intended to limit such equitable relief to those instances in which it expressly authorized it. Therefore, defendant's motion to dismiss the claims for injunctive and declaratory relief (counts five, six, seven, and eight) is GRANTED.

b. FCRA preemption of state law claims

PMI, relying on *Howard,* where the court rejected plaintiffs' attempt to circumvent the FCRA's limitations by seeking injunctive relief under the CCRAA, argues that injunctive and declaratory relief is also unavailable under the CCRAA. See 371 F.Supp.2d at 1146 ("[T]he provision of [the CCRAA] providing for injunctive relief is preempted by the FCRA."). PMI argues that allowing injunctive and declaratory relief under the CCRAA would subvert Congress' intent to limit equitable relief in this area to actions brought by the FTC. *See Lin v. Universal Card Servs. Corp.,* 238 F.Supp.2d 1147, 1152 (N.D.Cal.2002) (finding preemption of the CCRAA where "Congress intended to have exclusive authority to enforce such claims through the Federal agencies and officials" that were identified in the corresponding section of the FCRA).

*11 Plaintiffs respond that state-based requests for equitable relief are not preempted by the FCRA.

First plaintiffs assert that *Howard* and *Lin* are not binding, and that a complete analysis of the FCRA and CCRAA reveals that injunctive relief is available to consumers. Furthermore, plaintiffs argue that the *Lin* holding is not applicable here, because the court only held that the CCRAA § 1785.31 was inconsistent with FCRA § 1681s-2(d). Therefore, because the FCRA provision at issue in the immediate case is not the same provision that was at issue in *Lin,* plaintiffs maintain that the case before this court requires a different result.

Plaintiffs argue that Congress only intended that the FCRA preempt a state statute regulating subsections 1681b(c) or 1681 b(e) of the FCRA. Section 1681t of the FCRA governs the relationship between the FCRA and state laws, including the issue of preemption. Section 1681t(b)(1)(A) states that "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ...subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports."Plaintiffs argue that reference to subsections (c) and (e) implies the exclusion of subsection (a)-regulating permissible use of consumer report information-from the list of preempted provisions. *See Dodd v. U.S.,* 545 U.S. 353, 356-57 (2005). Therefore, plaintiffs conclude that California's regulation of § 1681b(a) under CCRAA § 1785.31, providing injunctive relief, is not preempted.

PMI responds that plaintiffs argument that the FCRA does not preempt all claims under section 1681b(a) is irrelevant, because § 1681b(a) regulates prescreened offers of credit, not injunctive relief. PMI argues that Congress intended to limit injunctive and declaratory relief regarding all fair credit reporting violations to actions brought by the FTC, whether or not they are related to section 1681b(a).

To the extent that claim eight seeks injunctive relief under the CCRAA, the court finds that PMI's motion to dismiss must be GRANTED. *Lin,* and four district court cases citing *Lin,* are instructive on the issue of state law preemption by the FCRA. *See*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

*Lin,* 238 F.Supp.2d at 1151-53;*Howard,* 371 F.Supp.2d at 1146;*Gorman v. Wolpoff & Abramson, LLP,* 370 F.Supp.2d 1005, 1011 (N.D.Cal.2005); *Ornelas v. Fid. Nat'l Title Co. of Washington, Inc.,* 2005 WL 3359112, at *4 (W.D.Wash.2005); *Roybal v. Equifax,* 405 F.Supp.2d 1177, 1178-79 (E.D.Cal.2005).

*Lin* involved a consumer action against a credit card issuer, alleging that it violated California's CCRAA by inaccurately supplying consumer credit information about him to a credit reporting agency. 238 F.Supp.2d at 1148. In response to the defendant's motion to dismiss, the court held that CCRAA provisions providing consumers with a private right of action to sue furnishers of consumer credit information were not excepted from preemption. *Id.* at 1152-53.The court noted that § 1681t makes it clear that Congress did not enact a blanket preemption of state law in the area of consumer credit reporting. *Id.* at 1151.Congress only intended to preempt state laws that are inconsistent with federal law. *Id.* Section 1681t(a) provides:

**\*12** Except as otherwise provided in subsection (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any States with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provisions of this title, and then only to the extent of the inconsistency.

The court determined that "[i]n enacting the provision regarding furnishers of consumer credit information, Congress found that the specific language contained in CCRA § 1785.25(a) is not inconsistent with its FCRA counterpart, § 1681s-2(a), and thus did not preempt the California provision."*Id.* at 1152 (citing 15 U.S.C. § 1681t(b)(1)(F)(ii). The *Lin* court, however, determined that FCRA § 1681s-2(d) did, on the other hand, preempt CCRAA §§ 1785.25(g) and 1785.31, which provide consumers with a private right of action under California law, because the California

provisions "are inconsistent with the enforcement scheme of Congress ... in matters relating to furnishers of consumer credit information."*Id.*

*Howard,* and three other cases, cite *Lin* and find that CCRAA § 1785.31 is preempted by the FCRA. *Howard* found that the plaintiff was not entitled to injunctive relief under the CCRAA, as the provision of that statute providing for injunctive relief was preempted by the FCRA. 371 F.Supp.2d at 1146.

In *Gorman,* the court found that because the FCRA preempts CCRAA § 1785.25(g) and § 1785.31, the plaintiff had no private right of action to bring suit against furnishers of consumer credit information for a violation of CCRAA § 1785.25(a) (prohibiting furnishers of consumer credit information from knowingly reporting inaccurate information).370 F.Supp.2d at 1011.

In *Ornelas,* defendants moved for summary judgment of plaintiff's claims under the Washington Consumer Protection Act on the basis that such claims were preempted by the FCRA.2005 WL 3359112 at *4. The court cited *Lin* for the proposition that "federal law preempts the area of private consumer action against furnishers of credit information."*Id.* (quoting *Lin,* 238 F.Supp.2d at 1153).

In *Roybal,* consumers who claimed that their credit report contained inaccurate information brought suit under federal and state law against credit reporting agencies and furnishers of credit information. 405 F.Supp.2d at 1178-79. In analyzing whether state law was preempted by the FCRA, the court found that no private right of action existed under CCRAA § 1785.25(a), since § 1785.25(g) and § 1785.31 were preempted by the FCRA. *Id.* at 1182 n. 5 (citing *Lin,* 238 F.Supp.2d at 1152). Thus, in line with the holdings of *Lin* and *Howard,* this court also finds that CCRAA § 1785.31, which provides for injunctive relief, is preempted by the FCRA.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

Page 11

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion to dismiss claims one, three, five, and six because applying FACTA would have an impermissible retroactive effect. However, the court GRANTS the motion to dismiss claims five, six, seven and eight, WITH PREJUDICE, because declaratory and injunctive relief are not available to private litigants under FCRA. Furthermore, because CCRAA § 1785.31 is preempted by the FCRA, any claim for injunctive relief under state law in count eight is also dismissed with prejudice. The claims that survive PMI's motion to dismiss are one, two, three, four, and nine.

**\*13** Additionally, the court declines to consider the supplemental authorities and arguments improperly filed by plaintiffs on May 5, 2006 under Local Rule 7-3(d).

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Hogan v. PMI Mortg. Ins. Co.
Not Reported in F.Supp.2d, 2006 WL 1310461 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

**H**
Yeagley v. Wells Fargo & Co.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Stephen C. YEAGLEY, Plaintiff,
v.
WELLS FARGO & COMPANY et al., Defendant.
No. C 05-03403 CRB.

Jan. 23, 2006.

Gail Killefer, San Francisco, CA, Douglas
Bowdoin, Douglas Bowdoin, P.A., Orlando, FL,
Kathleen Clark Knight, Terry A. Smiljanich, James,
Hoyer, Newcomer & Smiljanich, Tampa, FL, for
Plaintiff.
Michael J. Steiner, Severson & Werson, San Fran-
cisco, CA, for Defendants.

MEMORANDUM AND ORDER

CHARLES R. BREYER, J.
*1 This is a Fair Credit Reporting Act ("FCRA")
class action. Plaintiff seeks damages, attorneys'
fees, declaratory relief, and injunctive relief. De-
fendant Wells Fargo moves to dismiss the claims
for declaratory and injunctive relief on the ground
that such relief is not available under the FCRA.
After carefully considering the papers submitted by
the parties, the Court concludes that oral argument
is unnecessary, *see* Local Rule 7-1(b), and
GRANTS defendant's motion.

ALLEGATIONS OF THE COMPLAINT

Under the FCRA a person may not obtain a credit
report for any purpose unless-"(1) the consumer re-
port is obtained for a purpose for which the con-
sumer report is authorized to be furnished under
this section."15 U.S.C. § 1681b(f).*See* Complaint ¶
17. The permissible purposes generally arise only
in connection with transactions initiated by the con-

sumer (the subject of the credit report).*Id.* ¶
18.However, the FCRA does permit a person to ob-
tain a credit report in the absence of a consumer-ini-
tiated transaction when the recipient of the credit
report "undertakes to extend to the consumer a
'firm offer of credit.' "*Id.* ¶ 19 (citing 15 U.S.C. §
1681b(c)(1)(B)).

Wells Fargo "regularly obtains consumer reports on
large numbers of individuals without their know-
ledge or consent by purchasing 'prescreening' lists
from consumer reporting agencies."*Id.* ¶ 23.Wells
Fargo subsequently mails written solicitations to in-
dividuals on the prescreening reports. *Id.* ¶
24.Plaintiff alleges that these solicitations do not
satisfy the "firm offer of credit" requirement of sec-
tion 1681b(c)(1)(B), and therefore Wells Fargo's
use of the credit reports to make the solicitations vi-
olates the FCRA.*Id.* ¶¶ 32-37.

The First Claim for Relief makes a claim for dam-
ages. The Second makes a claim for declaratory re-
lief, and the Third a claim for injunctive relief.
Wells Fargo moves to dismiss the Second and Third
Claims for Relief on the ground that declaratory
and injunctive relief are not available in a private
action under the FCRA.

DISCUSSION

"Absent the clearest command to the contrary from
Congress, federal courts retain their equitable
power to issue injunctions in suits over which they
have jurisdiction."*Califano v. Yamasaki,* 442 U.S.
682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).
The Fifth Circuit (the only Circuit to have ad-
dressed the issue), and *all* of the district courts to
have reached the issue during the past six years,
have held that Congress did not give the federal
courts the power to issue equitable relief in private
FCRA suits. This Court agrees.

Sections 1681n and 1681o create a private right of
action under the FCRA. *SeeNelson v. Chase Man-*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

*hattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir.2002). Section 1681n, entitled "Civil liability for willful noncompliance," provides that any person who willfully violates the FCRA shall be liable to the consumer for actual damages or damages of not less than $100 or more than $1000, punitive damages, and attorneys' fees. 15 U.S.C. § 1681n(a). Thus, it creates a private right of action for *willful* violations. The available remedies do not include injunctive or declaratory relief. Section 1681o, entitled "Civil liability for negligent noncompliance," provides that any person who *negligently* fails to comply with the FCRA may be liable to the consumer for actual damages and attorneys' fees. Again, the section does not mention injunctive or declaratory relief.

*\*2* By limiting the remedies for private right of actions to damages and attorneys' fees Congress demonstrated that it did not intend for private litigants to obtain injunctive or declarative relief. *SeeTransamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). This conclusion is buttressed by the FCRA's affirmative grant of injunctive relief to the Federal Trade Commission. In 15 U.S.C. section 45 Congress "empowered" the FTC to prevent certain persons from violating the FCRA. It later adopted section 1681s which provides that "[c]ompliance with the requirements imposed under this subchapter shall be enforced under the Federal Trade Commission Act by the Federal Trade Commission with respect to consumer reporting agencies and all other persons subject thereto, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to some other government agency."15 U.S.C. § 1681s(a)(1). This section thus reads as an exclusive grant of the injunctive remedy to the FTC and other delineated government agencies.

Moreover, the FCRA gives federal courts jurisdiction to hear "an action to enforce any *liability* created under this subchapter."15 U.S.C. § 1681p. The only actions to enforce a "liability" that may be brought by a private litigant are those set forth in 1681n and 1681o, that is, actions for damages and attorneys fees.

Under the private right of action statutes, a defendant is liable only if the private litigant proves the defendant *willfully* or *negligently* violated the FCRA. Under plaintiff's reasoning, a private litigant could also pursue equitable relief for any violation of the Act, even if not negligent or willful. Such an outcome would be contrary to Congress's expressed intent of limiting liability to private litigants to willful or negligent conduct.

The only Circuit to have addressed this issue held that a private litigant may not obtain injunctive or declaratory relief under the FCRA. *Washington v. CSC Credit Services, Inc.,* 199 F.3d 263 (5th Cir.2000). The court held that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."*Id.* at 268.

The Fifth Circuit concluded that its holding was supported by Congress's subsequent enactment of section 1861u which requires consumer reporting agencies to disclose consumer information to the FBI for counterintelligence purposes. 15 U.S.C. § 1681u. The section also provides consumers with a damages remedy against the government that is nearly identical to the private right of action provisions found in sections 1681n and 1681o. 15 U.S.C. § 1681u(i). Unlike sections 1681n and 1681o, however, section 1681u has an *additional* subsection that gives an aggrieved consumer the right to obtain injunctive relief. 15 U.S.C. § 1681u(m). The Fifth Circuit reasoned that "where Congress intended to allow private injunctive relief under the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

FCRA, it expressly stated that this relief was avail-
able. This language would be unnecessary if in-
junctive relief were otherwise available."199 F.3d
at 269;*see also Howard v. Blue Ridge Bank,* 371
F.Supp.2d 1139, 1145(N.D.Cal.2005) (finding the
Fifth Circuit's reasoning in *Washington* persuasive).

*3 Moreover, although the Fifth Circuit is the only
Circuit to have addressed the availability of a
private right of action for equitable relief under the
FCRA, the Third Circuit has considered the avail-
ability of equitable relief under the Federal Debt
Collection Practices Act ("FDCPA"), a statute with
a structure similar to the FCRA. The FDCPA, like
the FCRA, has a section giving private litigants the
right to pursue damages, 15 U.S.C. § 1692k(a), and
a section giving the FTC the right to pursue equit-
able remedies. 15 U.S.C. § 1692(i). In *Weiss v.
Regal Collections,* 385 F.3d 337, 341-42 (3d
Cir.2004), the Third Circuit held that a private litig-
ant could not obtain equitable relief under the FD-
CPA. The court cited the Fifth Circuit's reasoning
in *Washington* as support for its holding.

The cases cited by plaintiff are not persuasive. In
*Andrews v. Trans Union Corp.,* 7 F.Supp.2d 1056
(C.D.Cal.1998), for example, the court did not dis-
cuss the language and structure of the FCRA. In
*Natale v. TRW, Inc.,* 1999 WL 179678 (N.D.Cal.
March 30, 1999), the defendants did not argue that
injunctive relief was not available; instead, all the
parties assumed that such relief was available to a
private litigant. Plaintiff does not, and cannot, cite a
single case which addresses and then refutes the
reasoning of the Fifth Circuit in *Washington.*

Plaintiff's contention with respect to the purpose
behind the enactment of section 1681u is beside the
point. Even assuming plaintiff's argument is cor-
rect, it does not respond to the fact that Congress
created a private right of action which includes the
right to recover only damages and attorneys' fees.

CONCLUSION

The language and structure of the FCRA compel
the conclusion that a private litigant may not main-
tain an action for injunctive relief or declaratory re-
lief under the FCRA. Accordingly, defendants' mo-
tion to dismiss the Second and Third Claims for Re-
lief is GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2006.
Yeagley v. Wells Fargo & Co.
Not Reported in F.Supp.2d, 2006 WL 193257
(N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

C

Crowder v. PMI Mortg. Ins. Co.

M.D.Ala.,2006.

Only the Westlaw citation is currently available.

United States District Court,M.D.

Alabama,Northern Division.

Andrew CROWDER, et al., Plaintiff,

v.

PMI MORTGAGE INSURANCE CO., Defendant.

**Civil Action No. 2:06CV0114-VPM.**

May 26, 2006.

Jere L. Beasley, Roman Ashley Shaul, Wilson Daniel Miles, III, William Henry Robertson, V, Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL, for Plaintiff.

James Asberry Byram, Jr., Kelly Fitzgerald Pate, Balch & Bingham LLP, Montgomery, AL, for Defendant.

**MEMORANDUM OPINION AND ORDER ON MOTION**

VANZETTA PENN McPHERSON, Magistrate Judge.

*1 Pending before the court is the defendant PMI Mortgage Insurance Company's ["PMI"] motion to dismiss (Doc. # 4) plaintiffs Andrew and Alisa Crowder's [collectively "the Crowders"] complaint, which alleges that PMI violated the Fair Credit Reporting Act ["FCRA"] (Doc. # 1).[FN1]15 U.S.C. § 1681 *et seq.* (2000). The issues raised by PMI's motion have been fully briefed by both parties (Docs.5, 9, 14). Upon review of the motion, the supporting briefs filed by the parties, and the relevant law, the court finds that the motion should be granted.

> FN1. This lawsuit concerns the FCRA as amended by the Fair and Accurate Credit Transactions Act of 2003 ["FACTA"], Pub.L. No. 108-159, 117 Stat.1952 (codified in 20 U.S.C. §§ 1681*et seq.).* For

ease of reference, the court refers to the statute as codified as the "FCRA" and refers to the "FACTA" only when discussing the amendments specifically.

**I. BACKGROUND AND FACTS**

On 26 July 2004, the Crowders purchased a home and executed a mortgage the terms of which required them to secure mortgage insurance (Doc. # 1, p. 4). PMI issued the mortgage insurance policy and, based upon information provided in the Crowders' credit history report, established a monthly insurance premium of $313.15. *Id.*

According to the Crowders, the premium established was not the lowest premium offered by PMI, and PMI failed to notify them of this fact as the Crowders contend PMI was required to do under the FCRA. *Id.; see* § 1681m. On 6 February 2006, the Crowders filed this lawsuit alleging willful and negligent violations of the FCRA and seeking actual, statutory and punitive damages, as well as costs and attorney fees. *Id.* The Crowders also seek declaratory and injunctive relief. *Id.*

**II. STANDARD OF REVIEW FOR MOTION TO DISMISS**

Pursuant to the Federal Rules of Civil Procedure, PMI moved to dismiss this action on the grounds that the Crowders have failed "to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). Countered by the exceedingly light burden imposed upon plaintiffs in asserting their legal claims,[FN2] motions of this sort are infrequently successful and may be granted only when "the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)), *cert. denied,*525 U.S. 1000 (1998); *see also St. Joseph's Hosp., Inc. v. Hosp. Corp. of*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

Page 2

*Am.,* 795 F.2d 948, 953 (11th Cir.1986) ("Although authorized by the Federal Rules of Civil Procedure, the liberal rules as to the sufficiency of a complaint make it a rare case in which a motion on this ground should be granted").

FN2.*See*Fed.R.Civ.P. 8(a).

In assessing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true any allegations in the plaintiff's complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 706 (11th Cir.1998).

The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. A 12(b)(6) motion tests only the sufficiency of the claim set out in the plaintiff's pleadings. Denial of such a motion, therefore, does not indicate that the plaintiff will ultimately prevail on a claim which withstands a 12(b)(6) challenge.

*2 *Harris v. Procter & Gamble Cellulose Co.,* 73 F.3d 321, 324 (11th Cir.1996) (citing *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 293 (5th Cir.1977)).

### III. ANALYSIS

#### A. The Relevant Legislation and the Parties' Arguments

Prior to the enactment of the FACTA, persons failing to comply with section 1681m were subject to administrative and private enforcement actions 15 U.S.C. §§ 1681n (providing a private right of action for willful failure to comply with the FCRA); 1681o (providing a private right of action for negligent failure to comply with the FCRA); 1681s (providing for administrative enforcement). On 4 December 2003, in enacting the FACTA, Congress

amended section 1681m to eliminate private enforcement.

(8) ENFORCEMENT.-

(A) NO CIVIL ACTIONS.-Sections 616 and 617 [§§ 1681n, 1681o] shall not apply to any failure by any person to comply with this section.

(B) ADMINISTRATIVE ENFORCEMENT.-This section shall be enforced exclusively under section 621 [§ 1681s] by the Federal agencies and officials identified in that section.

§ 311, 117 Stat.1952.[FN3]

> FN3. Congress eliminated or limited private civil liability for noncompliance with other provisions as well. *See* § 151(a)(1), 117 Stat.1952 (codified in relevant part at 15 U.S.C. § 1681g(e)(6)-(7)); § 312, 117 Stat.1952 (codified in relevant part at 15 U.S.C. § 1681s-2(c)-(d)).

With certain irrelevant exceptions, the FACTA did not provide for a specific date upon which its provisions would become effective. Instead, Congress directed the Board of Governors of the Federal Reserve System and the Federal Trade Commission as follows:

(1) before the end of the 2-month period beginning on the date of enactment of this Act, ... prescribe regulations in final form establishing effective dates for each provision ...; and

(2) the regulations prescribed under paragraph (1) shall establish effective dates that are as early as possible, while allowing a reasonable time for the implementation of the provisions of this Act, but in no case shall any such effective date be later than 10 months after the date of issuance of such regulations in final form.

§ 3, 117 Stat.1952.

Pursuant to the Legislature's directive, the agencies

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

adopted a regulation that gave effect to the relevant provision as of 1 December 2004, approximately 14 months before the Crowders filed this lawsuit (Doc. # 1).16 C.F.R. § 602.1; *see* FACTA, Pub.L. No. 108-159, §§ 3 and 311, 117 Stat.1952.

PMI contends that the FACTA amendments foreclose this lawsuit, in which the Crowders allege that PMI failed to comply only with section 1681m (Docs.1, 4, 5, 14). In addition, and for different reasons, PMI contends that the Crowders also are precluded from seeking declaratory and injunctive relief under the FCRA (Doc. # 5).

The Crowders concede that declaratory and injunctive relief are not available to them (Doc. # 9-1, p. 2). Moreover, they "do not contend that the enforcement provision changes did not eliminate private actions concerning conduct that arose after December 1, 2004" (Doc. # 9-1, p. 4).[FN4] They contend nevertheless that the bar to private enforcement does not apply in this case because PMI's non-compliance preceded the effective date of the relevant provision, and "there is no reason to believe that the new changes bar private actions concerning conduct that" occurred prior to 1 December 2004 (Doc. # 9-1, p. 4). Therefore, they conclude that application of the bar to preclude their lawsuit would be impermissibly retrospective.

> FN4. Federal courts have struggled with the issue of whether the limitation in section 1681m(h)(8) applies to 1681m in its entirety or solely to subsection 1681m(h).*Contrast, e.g., **Bruce v. Wells Fargo Bank, N.A.,*** No. 2: 05 cv 243 PS, 2006 WL 1195210, at *2 (N.D.Ind. May 2, 2006) (finding that it applies to 1681m in whole) *with **Barnette v. Brook Road, Inc.,*** No. 3: 05 cv 590, 2006 WL 1195913 (E.D.Va. May 3, 2006) (finding that it applies only to 1681m(h)).
>
> A conclusion that it applies only to the relevant subsection would result in a finding in favor of the Crowders because

their cause of action arguably arises under section 1681m(a). As the cases cited immediately *supra* demonstrate, a reasonable argument exists that the bar does not apply to 1681m(a), but the Crowders have failed to so argue.

As a matter of semantics, the Crowders' declining to "contend" that the bar to private enforcement did not eliminate all private actions under 1681m arguably falls short of a concession that it did. The court, however, is not interested in non-legislative semantic nuances. Therefore, the Crowders' acknowledgment of the issue without argument leads the court to conclude that the Crowders concede the point. Consequently, the court need not address the issue, and, for the purpose of the law of this case, it is irrelevant. The court simply assumes that there is no private right of action for failure to comply with section 1681m.

**\*3** In reply, PMI contends that whether the bar may be applied retroactively is not at issue because 1681m(h)(8) does not address the conduct giving rise to a cause of action and concerns only the ability to bring a civil action, which, in this case, was filed well after the bar's effective date.

### B. The Rule Against Retroactivity

As a general rule, "[a] court is to apply the law in effect at the time it renders its decision...."*Bradley v. Sch. Bd. of City of Richmond,* 416 U.S. 696, 711 (1974)*quoted in **Fed. Deposit Ins. Corp. v. 232, Inc.,*** 920 F.2d 815, 818 (11th Cir.1991). Occasionally, application of this long-held principle would contravene another one, namely the " 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place.' " *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 855

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                        Page 4
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

(1990)).

Resolving the conflict, the Supreme Court concluded in *Landgraf* that the former must give way to the latter when application of the law in effect at the time of the court's decision would operate retroactively unless Congress evidences a clear intent that the statute at issue is to so apply. 511 U.S. at 265;[FN5]*see also Hughes Aircraft Co. v. United States* ex rel. *Schumer,* 520 U.S. 939, 946 (1997) (requiring "clear" Congressional intent).

> FN5. The Court's stated rationale was that

>> the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.

>> *Id.*

The Court of Appeals recently explained that

[f]irst, we must examine "whether Congress has expressly prescribed the statute's proper reach."*Landgraf v. USI Film Prods.,* 511 U.S. 244, 280 (1994). When Congress does not expressly address the issue of retroactivity in the statute, as with the TVPA, then we employ normal rules of statutory construction to ascertain the temporal scope of the statute. *Craig v. Eberly,* 164 F.3d 490, 494 (10th Cir.1998) (internal citations omitted). Third, if the statute's temporal scope cannot be determined by means of normal statutory interpretation methods, then we must consider whether the statute has a retroactive effect. *Lindh v. Murphy,* 521 U.S. 320, 325-26 (1997).

*Cabello v. Fernandez-Larios,* 402 F.3d 1148, 1154 (11th Cir.2005) (parallel citations omitted).

### D. The Temporal Reach of Section 1681m(h)(8)

Contrary to the Crowders' contention, and notwithstanding the failure of both parties as well as most courts addressing the issue to mention it, there is in fact reason to believe that Congress intended for the bar to apply to conduct occurring prior to 1 December 2004.

Section 312(f) of the FACTA provides:

RULE OF CONSTRUCTION.-Nothing in this section, the amendments made by this section, *or any other provision of this Act* shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. 1681n, 1681o)*that existed on the day before the date of enactment of this act.*

*4 117 Stat.1952 (emphasis added).[FN6]

> FN6. At the time this opinion was entered, the only mention of this section in the cases addressing the relevant issues comes from the Eastern District of Virginia in the opinion finding that section 1681m(h)(8) applies only to 1681m(h).*Barnette,* 2006 WL 1195913 at *4 (describing section 312(f) as "a provision unexamined by any court addressing the FACTA amendments to date").

This provision buttresses the conclusion that Congress did not intend for the bar to private civil lawsuits to apply to conduct giving rise to private civil liability *before 4 December 2003.*Giving Congress the benefit of any doubt about its ability to distinguish the date of enactment from the effective date, the logical inference to be drawn is that Congress intended to bar private civil actions filed *after* the relevant effective date (1 December 2004) when the conduct occurred *after 3 December 2003.*[FN7]With this in mind, section 312(f) prohibits applying the bar to private enforcement to conduct giving rise to a cause of action (and, consequently, administrative enforcement as well) that occurred prior to the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

FACTA's enactment without regard to the effective date of the FACTA's provisions or the date on which the civil lawsuit is filed, assuming, of course, it is not otherwise time barred.

> FN7. Notably, because the FCRA and the FACTA provide for administrative enforcement, courts construe sections 616 and 617 as providing the only avenues for private enforcement. *Kekich v. Travelers Indem. Co.,* 64 F.R.D. 660 (W.D.Pa.1974) ("Given the fact that the FTC has the express power to enforce noncompliance, if indeed the defendant has been systematically violating the Act, there appears to be no reason for a private attorney general, an office which the plaintiff seems to have assumed.") *cited approvingly in Jones v. Sonic Automotive, Inc.,* 391 F.Supp.2d 1064, 1065 (M.D.Ala.2005) (Fuller, J.) (restricting private enforcement of the FCRA to the extent expressly allowed and, conversely, limited by sections 616 and 617) (citing also *Washington v. CSC Credit Svcs., Inc.,* 199 F.3d 263, 268 (5th Cir.2000) ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."), *cert. denied* 530 U.S. 1261 (2000)).

In other words, had PMI issued the mortgage insurance policy on 3 December 2003, the Crowders could have filed their lawsuit after the bar became effective so long as they complied with the appropriate time limitations. Because PMI issued the policy after 4 December 2003, however, the Crowders could file a lawsuit only until the date that the amendments became effective. They failed to do so. Their lawsuit is therefore precluded.

To be sure, the intent assigned to Congress (based on the court's reading of section 312(f)) is inferential. For this reason, the court continues its analysis under the framework set out in *Cabello.* Because the court concludes that the canons of statutory construction offer no aid, the court turns its attention to whether application of the bar would have a retroactive effect.

### E. Retroactive Effect

Unfortunately, "deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Landgraf,* 511 U.S. at 268. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law." *Id.* at 269-70 (citing *Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 100 (1992) (Thomas, J., concurring in part and concurring in judgment)).

On the contrary, as the Crowders acknowledge, "[a] statute has a retroactive effect if it 'would impair rights *a party possessed when he acted, increase* a party's liability for past conduct, or impose new duties with respect to transactions already completed' " (Doc. # 9-1, p. 5, quoting *Landgraf,* 511 U.S. at 280) (emphasis added). Despite the Crowders' best semantic efforts to characterize the harm they claim would befall them if the bar is applied in this case, the court is not persuaded that applying the bar would have the retroactive effects with which the Supreme Court is concerned.[FN8]

> FN8. Notably, as the Crowders acknowledge, both *Landgraf* and *Hughes Aircraft* concerned legislation that created or increased liability or exposure to potential liability for past conduct. FACTA, on the other hand, did not augment liability.

Importantly, when the Crowders acted, *i.e.,* filed their lawsuit, the right to file a private civil action to redress noncompliance with section 1681m had

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

Page 6

long since expired. Nor does application of the bar upset the parties' reasonable expectations at the time the conduct occurred, which followed FACTA's enactment by approximately six months. In addition, applying the bar does not "increase" either parties' liability or responsibilities.

**\*5** "Application of new statutes passed after the events in suit is unquestionably proper in many situations."*Landgraf,* 511 U.S. at 273. The situation before the court is one of them.[FN9]

> FN9. Generally, one who acts pursuant to a right conferred by legislative act exercises that right at the pleasure of the legislature. *See, e.g., Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 706 (11th Cir.1998) ("When Congress enacts statutes creating public rights or benefits, it can impose time limits on their availability. These time limits can either completely extinguish the right or simply bar the remedy for enforcement."); *Gen. Motors Acceptance Corp. v. Saliba,* 260 F.2d 262, 263 (5th Cir.1958) (adopting the view that "no one has a vested right in statutory privileges and exemptions, and that until final judgment on a pending action, the repeal of the statute, which gives the right of action, or upon which the suit is predicated, destroys it"); *Battaglia v. Gen. Motors Corp.,* 169 F.2d 254 (2d Cir.1948) (stating that statutory claims that "had not ripened into final judgment ... were subject to whatever action Congress might take with respect to them" regardless of "whether the activities on which they were based had been performed") (citing, *inter alia, Western Union Tel. Co. v. Louisville & Nashville RR. Co.,* 258 U.S. 13 (1922)).

> Notably, the Crowders do not contend that application of the bar would violate their Constitutional rights.

Although the cases cited by the parties are not on

point, and the Court of Appeals has not addressed the precise issues presented in this case, the court's ultimate conclusion is buttressed by the cases cited by PMI. *See Fla. Evergreen Foliage v. E.I. du Pont de Nemours & Co.,* 165 F.Supp.2d 1345 (S.D.Fla.2001); *Kolfenbach v. Mansour,* 36 F.Supp.2d 1351 (S.D.Fla.1999).*Kolfenbach* is particularly instructive.

The plaintiff in *Kolfenbach* argued that legislation that eliminated civil claims for securities fraud under the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. §§ 1961-68 (2000) should not preclude the lawsuit at issue, which, though filed after the legislation went into effect, related to conduct that occurred before its enactment. The court disagreed.

If there was ever a right embodied in a securities fraud-based civil RICO cause of action, it was only the right to pursue a claim that had already been filed *before* the 1995 Reform Act came into effect. Plaintiff has offered no authority to support the proposition that there is an inviolable right to preserve the mere possibility of bringing a claim.

*Kolfenbach,* 36 F.Supp.2d at 1354. Consequently, the court determined that the plaintiff could not maintain the cause of action.

The cases cited by the Crowders, on the other hand, are not persuasive.*Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir.2006), arrived at the conclusion the Crowders seek here without lending any insight into the court's rationale. Moreover, the other cases cited, none of which have been reported, appear to adopt the Crowders' faulty logic. *Phillips v. New Century Fin. Corp.,* No. SACV050692DOVRNBX, 2006 WL 517653 at \*5 (C.D.Cal. Mar. 1, 2006); *Fisher v. Finance Am., LLC,* No. CV-05-0888-CJC at 9 (N.D.Cal. Jan. 23, 2006) (attached to pl's brief as Ex. F); *Parthiban v. GMAC Mortgage Corp.,* No. CV-05-768-DOC at 6 (C.D.Cal. Mar. 1, 2006).

The conclusion that a particular rule operates

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

"retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound ... instinct[s]," see **Danforth v. Groton Water Co.,** 59 N.E. 1033, 1034 (Mass.1901), and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Landgraf,* 511 U.S. at 269-70.

The judicial instincts operative in this case support the conclusion that giving effect to section 1681m(h)(8) to preclude the Crowders' lawsuit would not be impermissibly retroactive. Therefore, the law currently in existence-i.e., no private right of action-must apply, and the Crowders consequently have failed to state a claim upon which relief can be granted.

## IV. CONCLUSION

*6 Therefore, it is hereby

ORDERED that the defendant's motion to dismiss the plaintiff's complaint is GRANTED. The plaintiff's complaint is DISMISSED with prejudice, and the Clerk of Court is DIRECTED to terminate all pending motions and close this case.

M.D.Ala.,2006.
Crowder v. PMI Mortg. Ins. Co.
Not Reported in F.Supp.2d, 2006 WL 1528608 (M.D.Ala.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT D**

*Murray v. E\*Trade Financial Corp.*

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 2006 WL 2054381 (N.D.Ill.)

▷
Murray v. E*Trade Financial Corp.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
     United States District Court,N.D. Illinois, Eastern
                        Division.
            Scott A. MURRAY, Plaintiff,
                          v.
     E*TRADE FINANCIAL CORPORATION and
          E*Trade Bank, Defendants.
                  No. 05 C 5433.

                   July 19, 2006.

Daniel A. Edelman, James O. Latturner, Jeremy
Patrick Monteiro, Edelman, Combs, Latturner &
Goodwin, LLC, Chicago, IL, for Plaintiff.
David A. Vogel, Douglas P. Lobel, Cooley God-
ward LLP, Reston, VA, Jason P. Shaffer, Katten
Muchin Rosenman LLP, Chicago, IL, for Defend-
ants.


        MEMORANDUM OPINION AND ORDER

PLUNKETT, Senior J.
*1 Plaintiff, Scott A. Murray, ("Plaintiff"), has filed
a lawsuit against E*Trade Financial Corporation
and E*Trade Bank, ("Defendants") for violations of
the Fair Credit Reporting Act, 15 U.S.C. § 1681*et
seq.* ("FCRA" or "the Act"). Before us is Defend-
ants' Federal Rule of Civil Procedure ("Rule")
12(c) motion for judgement on the pleadings. For
the reasons stated below, Defendants' motion for
judgment on the pleadings is granted in part and
denied in part.


                        Facts

We accept, as we must, the following facts as true.
In 2003, Murray began to receive mail from De-
fendants offering pre-approved home equity rates
and home installment loans. (Comp. ¶¶ 7, 8, 30 .) In
2005, Defendants approved and sent the solicitation

to Plaintiff and approximately 200 other individuals
explaining that the reason they were sent the flyer
was because they had reached a certain level of
creditworthiness. (*Id.* ¶¶ 8, 9, 12, 15; 16, 19.)In
reality, however, those individuals were chosen by
Defendants because their consumer report showed
poor credit or bankruptcy discharges, and Defend-
ants were trying to prey upon their "subprime cred-
it." (*Id.* ¶ 20.)Plaintiff did not in any way authorize
Defendants access to his consumer report, nor did
he initiate any transaction with Defendants. (*Id.* ¶¶
21, 22, 23 .)As a result of the 2005 mailing,
Plaintiff alleges he was subjected to an increased
risk of improper disclosures and identity theft. (*Id* ¶
13.)Plaintiff further alleges Defendants willfully vi-
olated the FCRA by sending the solicitation without
Plaintiff's written approval or for a "permissible
purpose" as articulated under the Act. (*Id.* ¶¶ 26-30,
32, 33.)Plaintiff also contends that the flyer violates
the FCRA by failing to present clear and conspicu-
ous disclosures of how to prevent future access to
his credit. (*Id.* ¶¶ 31,33.)Plaintiff seeks statutory
damages, injunctive relief and fees and costs.


                   Legal Standard

In a review of whether to grant judgment on the
pleadings, we must use the same standard that is
applied to dismissals under Fed.R.Civ.P. 12(b)(6)
for failure to state a claim on which relief can be
granted. *See R.J. Corman Derailment Servs., LLC
v. Int'l Union of Operating Eng'rs, Local Union
150,* 335 F.3d 643, 647 (7th Cir.2003). In consider-
ing a Rule 12(c) motion for judgment on the plead-
ings, a court accepts the complaint's well-pleaded
factual allegations as true and draws all reasonable
inferences in favor of the plaintiff or the non-
moving party. *See Gustafson v. Jones,* 117 F.3d
1015, 1017 (7th Cir.1997). Judgment is appropriate
only when it appears beyond doubt that the non-
moving party cannot prove any facts that would
sustain his claim. *See R.J. Corman,* 335 F.3d 643.


© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2054381 (N.D.Ill.)

*Discussion*

The FCRA was enacted to protect consumers' privacy and maintain integrity with regard to the information that may be found in the records of consumer reporting agencies. *Cole v. U.S. Capital, Inc.* 389 F.3d 719, 729 (7th Cir.2004); *See also*15 U.S.C. § 1681(a)(4). To accomplish this, the Act states that sharing a consumer's credit report is prohibited unless the release is made with the consumer's consent or if it is for one of the "permissible purposes" articulated in § 1681b(a) of the Act. *Id.;*15 U.S.C. § 1681b(c)(1)(B)(i). Thus, the complaint will be dismissed if Defendants had a permissible purpose, such as using the information to make a "firm offer of credit." 15 U.S.C. § § 1681b(c)(1)(B)(i).

*2 Defendants contend that the offer of credit in the flyer was firm, that Plaintiff has failed to allege a willful violation of the FCRA, and now ask this Court to enter judgment in their favor. A "firm offer" is defined as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on the information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer."15 U.S.C. § 1681a(1). The statute provides that the offer may be conditioned on whether the consumer has reached a certain level of credit worthiness, whether he continues to meet the requirements that first qualified him for the offer, and whether he is able to provide a certain amount of collateral, which is both pre-determined and disclosed to the consumer in the offer. 15 U.S.C. § 1681a(l)(1); *Cole v. U.S. Capital, Inc.* 389 F.3d 719, 729 (7th Cir.2004). To determine whether an offer is firm, we must consider: (1) the entire offer and the effect of all of the material conditions; (2) the amount of credit to be extended; (3) the rate of interest charged; and (4) the method of computing interest and the repayment period. *Cole,* 389 F.3d at 728. If an offer is missing these terms, it is "impossible for a court to determine from the pleadings whether the offer has value."*Id.*

Here, the flyer itself contains a pre-approved line of credit for a home equity loan of $7,500, it states there will be no application fees or closing costs; the response date is June 15, 2005; the initial rate is guaranteed at 1.99% for the first three months; the rate thereafter would vary according to the market; and what the annual fee and penalties are.[FN1]However, Plaintiff alleges that this is insufficient to create a firm offer because, among other things, it is illusory. For example, there is no guaranteed value beyond the solicitation for business, no firm interest rate is offered, no details of the method and length of repayment period is discussed, and the solicitation falsely states that the interest rate is predictable and fixed where the rates are in fact undetermined. Plaintiff contends that Defendants' "unfettered discretion" to approve the loan, coupled with the ambiguity of its terms, render the flyer a sham and a mere guise for solicitation.

> FN1. As the Seventh Circuit tells us, we may consider the flyer because it is central to Plaintiff's complaint and referred to repeatedly as support for his allegations. *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994).

Defendants disagree, stating that on its face, the flyer has met all of the requirements of a firm offer and conditions the offer only upon the expressly acceptable terms under the Act. We agree with Defendants that the conditions placed on the offer are acceptable, i.e., the varying amount that is awarded, the loan being subject to approval of the consumer's creditworthiness, and the ability of the consumer to offer collateral, 15 U.S.C. § 1681a(1). The offer clearly states that the approval is subject to the credit information that is acquired after the consumer responds to the offer, as well as the consumer's ability to provide collateral, including clear title, acceptable lien priority, and sufficient available equity and flood insurance certification.

*3 However, beyond these acceptable conditions, there are other essential terms in the solicitation

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2054381 (N.D.Ill.)

that we believe are ambiguous. As we are told in *Cole,* it is not possible to determine if an offer has value if, when taking into account the entire offer, the interest rate or repayment provisions are not included. *Cole,* 289 F.3d at 728. From the flyer, it is not apparent that there is a guarantee of a specific loan; rather, the solicitation simply invites the customer to call and find out more on how to get the loan. Also, the range in interest rates and the absence of the time and details for repayment raises a question as to whether the terms of the offer were all presented.[FN2]

> FN2. Defendants answer this by stating the type of loan that is being offered is a unique loan that provides that repayment is based on each consumer's individual circumstances. Even so, that detail is not communicated in the offer to present to the average consumer the necessary details for him to construe the solicitation as a firm offer.

Defendants contend that even if it is determined that Plaintiff has made a bona fide claim under FCRA, he has not sufficiently alleged a *willful* violation. Recovery for willful violations is available under FCRA when it is shown that a defendant knowingly and intentionally violated the Act. 15 U.S.C. § 1681n; *Wantz v. Experian Info. Solutions,* 386 F.3d 829, 834-35 (7th Cir.2004) (stating that in acting willfully it must be shown that a defendant knew that its action would violate an individual's rights.) One way companies prove that their actions were not willful is to establish that they have a compliance program in which a compliance officer authorizes mailings or that the documents are reviewed and approved by a consumer reporting agency. *See Wanek v. C.M.A. Mortgage, Inc.,* 05 C 4775, (N.D.Ill.Dec. 12, 2005).

To this, Plaintiff asserts that under notice pleading he is required only to make a short statement to support a cause of action and he has more than satisfied this liberal pleading standard. Fed.R.Civ.P. 12; *Walker v. Thompson,* 288 f.3d 1005, 1007 (7th

Cir.2002). At this early stage, we may not preclude Plaintiff from presenting evidence that would establish that Defendants' actions were intentional. It is a heavy burden for Defendants to establish that simply based on the pleadings, without the assistance of further discovery, affidavits, or evidence, Plaintiff has not sufficiently alleged a FCRA complaint. Under the notice pleading standard, Plaintiff must only allege a set a facts that if proven to be true, could constitute a violation. At this juncture, we must not make credibility determinations or resolve factual disputes. Our task is only to determine whether all of the allegations, if proven, could lead a reasonable jury to conclude that the flyer sent by Defendants did not constitute a firm offer and violated FCRA. Here, Defendants are alleged to have prepared and reviewed the offer. They are presumed to know the law. Thus, we believe Plaintiff has sufficiently alleged a willful violation of the FCRA, and Defendants motion for judgement on this claim is denied.

Next, Plaintiff alleges in his complaint that Defendants also violated the FCRA by failing to present clear and conspicuous disclosures in their communication to him. The FCRA articulates that disclosures in offers are to be "clear and conspicuous" 15 U.S.C. § 1681m(d). The statute specifically provides that companies sending offers must disclose the manner in which they obtained the consumer's information and how a consumer may remove his name from a list to avoid getting future solicitations. 15 U.S.C. § 1681m(d)(1)(A)-(D) & (d)(2). However, Defendants direct us to both case law and the statutory provision and assert that this cause of action is no longer recoverable. 15 U.S.C. § 1681m(h)(8); see e.g. *Murray v. Household Bank (SB), N.A.,* 386 F.Supp.2d 993, 999 (N.D.Ill.2005); *Murray v. Cross Country Bank,* 399 F.Supp.2d 843, 844-45 (N.D.Ill.2005). Pursuant to the 2004 amendments to the Act, the enforcement of the clear and conspicuous requirement is now reserved exclusively for administrative proceedings. 15 U.S.C. § 1681m(h)(8). Plaintiff concedes that the district courts have concluded that no private right of ac-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2054381 (N.D.Ill.)

Page 4

tion exists under this provision, but contends that the determination could be changed by the Seventh Circuit. We believe that until the Seventh Circuit tells us otherwise, prior to exhausting the claim through administrative proceedings, there is no longer a private right of action available in this Court for failure to present clear and conspicuous disclosures. Thus, Defendants' Rule 12(c) motion questioning the nature of the disclosure is granted and those allegations will be stricken from the complaint.

*4 Finally, Plaintiff asks for injunctive relief. Defendants claim that not only is injunctive relief not available under the statute, but also that Plaintiff has not properly asserted an injunctive claim. Section 1681n outlines the civil liability for willful noncompliance with FCRA and states in part:

Any person who willfully fails to comply with any requirement imposed under this title [ ] with respect to any consumer is liable to that consumer in an amount equal to the sum of-

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

The statute neither expressly provides, nor prohibits injunctive relief. Therefore, because Congress did

not specifically enjoin equitable relief under the statute, we may assume that injunctive relief is available under FCRA.*Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 956 (implying that in a FCRA case a plaintiff could potentially recover damages and/or an injunction.) In order to obtain a permanent injunction, the moving party must show: (1) actual success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Joelner v. Village of Wash. Park,* 378 F.3d 613, 619 (7th Cir.2004); *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharm. Svc., Inc.,* 40 F.Supp.2d 987, 991 (N.D.Ill.1999) (referring to *Plummer v. Am. Inst. of Certified Pub. Accountants,* 97 F.3d 220, 229 (7th Cir.1996)).

Because Plaintiff's claim has been preserved, it is not yet determined whether Plaintiff will prevail and have actual success on the merits. Therefore, whether he would be entitled to an injunction may not be addressed until the outcome of Plaintiff's claims have been decided. We will not treat Plaintiff's request for injunctive relief until the resolution of Plaintiff's claims on the merits. Thus, Defendants motion to preclude injunctive relief is denied without prejudice.

*Conclusion*

For the reasons set forth above, Defendants' Rule 12(c) motion for judgement on the pleadings is granted in part and denied in part. Defendants' motion to dismiss Plaintiff's willful violation of the FCRA claim is denied. Defendants' motion to dismiss Plaintiff's clear and conspicuous claim is granted. Defendants' motion to preclude injunctive relief is denied without prejudice.

N.D.Ill.,2006.
Murray v. E*Trade Financial Corp.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                     Page 5
Not Reported in F.Supp.2d, 2006 WL 2054381 (N.D.Ill.)


Not Reported in F.Supp.2d, 2006 WL 2054381
(N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT E

## Unreported Cases Contained In Footnote No. 2



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

Page 1

▷
Natale v. TRW, Inc.
N.D.Cal.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Frank Peter NATALE, Plaintiff,
v.
TRW, INC., et al., Defendants.
**No. C 97-3661 CRB.**

March 30, 1999.

MEMORANDUM AND ORDER

BREYER, District J.
*1 Now before the Court are the motions for partial summary judgment and summary judgment of defendants TRW, Inc. ("TRW"), Experian Information Solutions, Inc. ("Experian"), Equifax Credit Information Services, Inc. ("Equifax"), and Trans Union, L.L.C. ("Trans Union"). After carefully considering the papers and evidence submitted by the parties, and having had the benefit of oral argument on March 26, 1999, the motions for partial summary judgment are GRANTED in part and DENIED in part.

BACKGROUND

A. The Fair Credit Reporting Act

This is an action under the Fair Credit Reporting Act ("FCRA") and California Consumer Credit Reporting Agencies Act ("CCRAA"). The FCRA requires "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."15 U.S.C. § 1681(b)."The FCRA provides for compensation in

the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of the FCRA."*Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1332 (9th Cir.1995) (citing 15 U.S.C. § 1681o). The FCRA also permits a consumer to recover punitive damages if the defendant's noncompliance with the Act was willful. *See id.* (citing 15 U.S.C. § 1681n).

B. Procedural History

Plaintiff's Second Amended Complaint alleges that defendants negligently and willfully failed to follow reasonable procedures in violation of the FCRA, 15 U.S.C. § 1681e(b) (First and Second Causes of Action); negligently and willfully failed to disclose sources of credit information upon request in violation of the FCRA, 15 U.S.C. § 1681g(a)(2) (Third and Fourth Causes of Action); negligently and willfully failed to include consumer dispute statements upon request in violation of 15 U.S.C. § 1681i(c) (Fifth and Sixth Causes of Action ); and negligently and willfully failed to correct inaccuracies in credit reports in violation of the CCRAA, California Civil Code § 1785.1*et seq.* (Seventh and Eighth Causes of Action). Plaintiff also seeks injunctive relief (Ninth Cause of Action).

Plaintiff originally filed this action on October 6, 1997. As a result of serious statute of limitations issues, plaintiff amended his complaint for a second time in July 1998. The Second Amended Complaint states expressly that plaintiff does not seek to recover any damages for injuries which occurred prior to October 5, 1995. SAC ¶ 16. It also states that plaintiff does not seek to recover damages arising out of defendants' conduct subsequent to July 13, 1998, the date he filed his Second Amended Complaint. SAC ¶ 16.

DISCUSSION

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, (1986). A principal purpose of the summary judgment procedure is to identify and to dispose of factually unsupported claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)."Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." ' *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

**\*2** "Upon a showing that there is no genuine issue of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor 'upon all *or any part* thereof." ' W. Schwarzer, A.W. Tashima, J. Wagstaffe, *Federal Civil Procedure Before Trial* at ¶ 14:33 (citing Fed.R.Civ.P. 56(a), (b)) (emphasis in original); *see e.g., Amdahl v. Profit Freight Systems, Inc.,* 65 F.3d 144 (9th Cir.1995) (affirming grant of partial summary judgment). Such a procedure allows a court to narrow the issues for trial.

It is worth noting that in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."*Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (internal quotations omitted). Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. *See id.*

## II. ISSUES COMMON TO ALL DEFENDANTS

The Court will first address the legal issues that are common to all of the motions for summary judgment and are not limited to any specific cause of action.

### A. *Statute of Limitations*

The FCRA provides that a lawsuit for violation of the Act must be brought "within two years from the date on which liability arises."15 U.S.C. § 1681p. The statute of limitations for the CCRAA is the same. Cal. Civil Code § 1785.33. The parties do not dispute that in this case "liability arises" at the latest with respect to plaintiff's claims for inaccurate credit reporting on the date on which a credit reporting agency provides the consumer credit report at issue to a third party. *See Andrews v. Trans Union Corp.,* 7 F.Supp.2d 1056, 1066 (C.D.Cal.1998).

Defendants argue that the statute of limitations therefore bars all of plaintiff's claims to the extent they are based upon consumer credit reports that were provided to third parties prior to October 6, 1995. Plaintiff responds that there are no such claims in this lawsuit since he has disavowed recovery for any *damages* suffered prior to October 5, 1995. The FCRA, however, provides that the statute of limitations begins to run on the date that defendant's liability arises, not on the date the plaintiff suffered damages. It is not apparent that plaintiff's definition of when damages are "suffered" is the date upon which a defendant provides the allegedly inaccurate credit report to a third party. Indeed, the Second Amended Complaint implies that plaintiff contends that he may recover damages arising from the disclosure of inaccurate consumer reports to the Small Business Association ("SBA") even though it is undisputed that defendants provided the consumer credit reports at issue to the SBA prior to October 6, 1995.

Accordingly, the Court will grant the defendants' motion for summary judgment on statute of limitations grounds. All of plaintiff's claims that arise from consumer credit reports which defendants

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

Page 3

provided to third parties prior to October 6, 1995 are barred by the two-year statute of limitations. The barred claims include claims arising from defendants' disclosure of consumer credit reports to the SBA and the SBA's subsequent decision to loan plaintiff less than he requested. The Court does not by its ruling intend to express any opinion as to whether *evidence* of defendants' conduct prior to October 6, 1995 is admissible at trial.

### B. *The Carusso & Baxter Judgment*

**\*3** Plaintiff until recently steadfastly maintained in correspondence to defendants that defendants' reporting of a unsatisfied judgment by the law firm of Carusso & Baxter in New Jersey was in error. At his deposition, however, plaintiff admitted that defendants' reporting of the judgment was correct. Accordingly, summary judgment is granted in favor of defendants to the extent plaintiff makes claims based upon the alleged inaccuracy of the Carusso & Baxter judgment.

### C. *Business Damages*

Defendants also ask the Court to rule that under the FCRA plaintiff is not entitled to recover damages for injuries to his businesses.

The FCRA applies only to "consumer reports." The statute defines "consumer reports" as follows:

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.

15 U.S.C. § 1681a(d). Defendants contend that damages to plaintiff's businesses are not recoverable since a report furnished to a potential creditor for business purposes is not a consumer report within the meaning of the FCRA.

Defendants' interpretation of the FCRA accords with that of Federal Trade Commission ("FTC"), the agency responsible for administering the Act. The FTC has stated:

A report on a consumer for credit or insurance in connection with a business operated by the consumer is not a consumer report and the Act does not apply to it.... The FCRA does not cover reports furnished for the transactions that consumers enter into primarily in connection with businesses they operate (e.g. a consumer's rental of equipment for use in his retail store).

55 Fed.Reg. 18811, 18814 (1990); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Counsel,* 467 U.S. 837, 842-44 (1984) (holding that courts should give deference to an executive agency's construction of a statute it is entrusted to administer). Moreover, the FCRA itself provides that it is intended to protect consumers applying for "credit or insurance to be used primarily for personal, family, or household purposes."15 U.S.C. § 1681a(d)(1)(A). As a result, several courts have held that where the purpose of a plaintiff's credit application was to secure credit for business purposes, as opposed to personal, family or household purposes, the reporting agency's conduct was not covered by the Act. *See, e.g., Yeager v. TRW, Inc.,* 961 F.Supp. 161, 162 (E.D.Tex.1997) ("FCRA does not apply to business transactions even those involving consumers and their credit information"); *Cook v. Equifax Information Systems, Inc.,* 1992 WL 356119 (D.Md. Nov. 20, 1992) (holding that "credit reports used to acquire commercial or business credit are not afforded the protection of the FCRA"); *Wrigley v. Dun & Bradstreet, Inc.,* 375 F.Supp. 969, 970-971 (N.D.Ga.1974) ("The court is constrained to the view that both the legislative history of the Act and the official administrative inter-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

pretation of the statutory terminology involved compel the conclusion that the Act does not extend coverage to a consumer's business transactions") (citations omitted).

**\*4** Plaintiff responds that his businesses are sole proprietorships and thus his situation is distinguishable from the cases cited by defendants. The form of ownership, however, is immaterial; the FTC and the case law hold that the FCRA does not apply to transactions related primarily to businesses operated by the consumer.

Defendants have not specifically identified any consumer reports which were provided to third parties in connection with transactions involving businesses operated by plaintiff, other than the credit reports furnished to the SBA. As is set forth above, the statute of limitations bars plaintiff from recovering damages related to the SBA loan. Without any other specific facts and transactions before the Court, it is premature for the Court to finally determine what if any damages plaintiff may recover as a result of the allegedly inaccurate credit reports. Plaintiff may not, however, recover damages related primarily to his businesses.

## II. THE SPECIFIC CAUSES OF ACTION

The Court will now address the motions for summary judgment as to each cause of action.

### A. Inaccurate reporting and unreasonable procedures (§ 1681e(b)-First Cause of Action)

"Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information."*Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995). In *Guimond,* the Ninth Circuit set forth the requirements for establishing liability under this section:

In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tend-

ing to show that a credit reporting agency prepared a report containing inaccurate information.... The FCRA does not impose strict liability, however-an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures. The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.

*Id.* TRW and Experian have not moved for summary judgment on plaintiff's section 1681e(b) negligence claim, but Trans World and Equifax have. Accordingly, the Court will examine whether as a matter of law those defendants are entitled to judgment.

### 1. Equifax

#### a. There is a genuine issue as to the accuracy of the reports.

As is set forth above, a threshold question in a section 1681e(b) claim is whether the challenged credit information is correct. Equifax contends generally that plaintiff has not submitted sufficient evidence to show that information was inaccurate because in many instances he is attacking the accuracy of the creditor's report to Equifax, as opposed to Equifax's reporting of what the creditor disclosed to Equifax. Equifax, however, does not specifically address the instances of alleged inaccuracies detailed in plaintiff's declaration. Accordingly, the Court cannot conclude that defendant is entitled to judgment as a matter of law on the ground that no reasonable jury could find that the information was inaccurate.

#### b. There is a genuine issue as to whether Equifax used reasonable procedures.

**\*5** Equifax also argues that it is entitled to judgment because plaintiff has not proved that Equifax's procedures were unreasonable. The parties dispute who has the ultimate burden of proving to the jury that Equifax's procedures were unreasonable.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                        Page 5
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

Plaintiff contends that under *Guimond,* the defendant bears the burden of proving that its procedures were reasonable while defendant contends that plaintiff bears the burden of proving that its procedures were unreasonable. *See generally Philbin v. Trans Union Corporation,* 101 F.3d 957, 963-65 (3d Cir.1996) (discussing the different views on the burden issue).

The Court need not resolve this dispute at this stage in the lawsuit, however, because it cannot conclude that no reasonable jury could find that Equifax's procedures were unreasonable. First, plaintiff's evidence of the inaccuracies in Equifax's report alone is sufficient in this case to survive summary judgment. *See Philbin,* 101 F.3d at 966. This is especially so given that Equifax has not produced evidence that specifically explores the procedures followed by Equifax in each instance of an error alleged by plaintiff. For example, plaintiff alleges that many of the credit reports were inaccurate because they did not report his positive account information with respect to two Citibank loans. Equifax contends that it is not required to report information which is not reported to it, but plaintiff has offered evidence that Equifax did include the information in May 1995, and then did not include it on subsequent reports. Thus, there is a genuine dispute as to whether Equifax accurately reported the information in its own files.

Second, the Ninth Circuit has noted that in "most cases" the question of reasonableness is a question for the jury. *Guimond,* 45 F.3d at 1335. Equifax has not explained why this case is different from "most cases." Accordingly, summary judgment must be denied.

2. Trans Union

Trans Union likewise argues that plaintiff has not proved that the credit reports at issue were inaccurate and that Trans Union's procedures were unreasonable. Trans Union's motion fails for the same reason as the motion of Equifax. While Trans Uni-

on has specifically responded to some of the alleged inaccuracies, it has not responded to all of them. Accordingly, judgment must be denied.

Moreover, there are genuine disputes with respect to at least some of the alleged inaccuracies which Trans Union addressed. For example, Trans Union claims the child support information it reported, and in particular, its reporting of a certain amount as "past due" was accurate because that is how the amount was reported to Trans Union. Plaintiff has offered evidence, however, that shows that Trans Union at least once reported the child support obligations without including a "past due" amount. Thus, there is a dispute as to whether Trans Union's reports with a "past due" amount were accurate. Similarly, the fact that Trans Union apparently corrected the error identified by plaintiff (reporting a "past due amount") and then in subsequent credit reports repeated the same error creates a genuine dispute as to whether Trans Union's procedures were reasonable. *See Philbin,* 101 F.3d at 965.

B. Failure to disclose sources (§ 1681(g)(a)(2)- Second Cause of Action)

*6 The FCRA provides that a "consumer reporting agency shall, *upon written request and proper identification of any consumer,* clearly and accurately disclose to the consumer ... at the time of the request ... the source of information [in its files]."15 U.S.C. § 1681(a)(g)(2) (emphasis added). The statute on its face thus requires disclosure only after the consumer has made a written request for such disclosure.

1. TRW

Plaintiff's opposition does not identify a single instance in which TRW failed to disclose a source of credit information in response to a request from plaintiff. Accordingly, TRW is entitled to summary judgment on the Third Cause of Action.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

Page 6

2. Experian

Plaintiff contends that Experian has never identified the source of Experian's inaccurate identification of his spouse by the name "Spon." While plaintiff offers evidence that Experian did inaccurately identify his spouse, he does not identify any evidence that suggests he ever requested that Experian identify the source of that information. Accordingly, this claim fails.

Plaintiff also contends that Experian never responded to requests for source information that he made in October and November 1998. Plaintiff's Second Amended Complaint is expressly limited to conduct occurring prior to July 18, 1998-the date of the Second Amended Complaint. Accordingly, this evidence is insufficient to create a triable issue in *this* lawsuit.

3. Equifax

Plaintiff has submitted evidence that suggests that plaintiff requested Equifax to provide him with the source of erroneous information as to a prior home address and that Equifax did not respond. Equifax has not submitted any evidence demonstrating that it did advise plaintiff of the source of the erroneous information. Accordingly, Equifax's motion for judgment on this claim must be denied.

4. Trans Union

Plaintiff has submitted evidence that in March 1998, it requested the source of allegedly "bogus" information appearing on his credit report. Trans Union has not offered any evidence that it specifically responded to this request for source information. Accordingly, judgment may not be granted as a matter of law in favor of Trans Union.

Plaintiff also offers evidence of requests for "source" information which he made subsequent to the filing of his Second Amended Complaint. As such conduct is beyond the scope of this lawsuit,

such evidence has not been considered by the Court in deciding the summary judgment motion.

C. Failure to include consumer dispute statements (§ 1681i(c)-Fifth Cause of Action)

The FCRA also provides that

[w]henever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

*7 15 U.S.C. § 1681i(c). In order to establish liability under section 1681i(c), plaintiff must show that he disputed an item in his file and that any reinvestigation conducted by defendants did not resolve the dispute. *See Guimond,* 45 F.3d at 1335. Plaintiff must also show that he filed a statement of dispute, and that the statement was not included with subsequent copies of his credit report. *See id.*

All defendants move for summary judgment on plaintiff's Fifth and Sixth Causes of Action on the ground that plaintiff has not produced any evidence that any of them ever failed to include a statement of dispute in a consumer report. In response, plaintiff argues-without citing any specific evidence or even distinguishing among defendants-that "defendants" failed to adequately investigate and notify creditors of plaintiff's disputes. Plaintiff's Second Amended Complaint, however makes no claim under 15 U.S.C. § 1681i(a)(2), the section that requires a consumer reporting agency to investigate and notify subscribers of disputes; plaintiff's argument is thus irrelevant. The issue before the Court is whether plaintiff has submitted evidence sufficient for a trier of fact to find that each defendant failed to include in a subsequent consumer report a statement of dispute which had been filed.

As plaintiff's opposition does not identify a single

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

instance within the statute of limitations in which any of the defendants failed to include a filed consumer dispute statement, each defendant is entitled to summary judgment on the Fifth Cause of Action.

**D. California Civil Code § 1785.1 (Seventh Cause of Action)**

The CCRAA is identical to the FCRA. *See Guimond,* 45 F.3d at 1335. Since the Court has denied summary judgment on plaintiff's claim for negligent inaccurate reporting, the Court will deny summary judgment on the CCRAA claim for the same reason.

**E. Punitive Damages for Willful Conduct (Second, Fourth, Sixth and Eighth Cause of Action)**

To recover punitive damages under the FCRA, a plaintiff must prove that a reporting agency "willfully violated an FCRA requirement." 15 U.S.C. § 1681n. All defendants move for summary judgment on plaintiff's claims of "willful" violations on the grounds that plaintiff has not submitted evidence sufficient for a reasonable jury to find that their violations of the FCRA, if any, were willful as opposed to negligent.

Since the Court has granted summary judgment on plaintiff's claim that defendants failed to include a consumer statement in the credit reports, it must also grant summary judgment on plaintiff's claims that defendants' willfully failed to include the statements. Similarly, TRW and Experian are entitled to judgment on plaintiff's claims that defendants willfully failed to disclose source information since the Court has concluded that no reasonable jury could find that plaintiff requested such disclosure during the relevant time period.

With respect to the remaining claims, plaintiff's only response to defendants' motion is that causation is an issue for the jury and that the jury should be able to determine, based on the sheer number of errors, if defendants' violations were willful.

Plaintiff also asks rhetorically why defendants failed to respond to plaintiff's requests for sources.

**\*8** Plaintiff has not submitted evidence sufficient for a jury to find that defendants' failure to comply with the FCRA was willful, or at least evidenced a reckless disregard for the law. The record demonstrates that each defendant responded on several occasions to plaintiff's complaints and made many adjustments to their reporting of his credit as a result of their reinvestigations. There is absolutely nothing in the record that suggests, for example, that on those one or two occasions when a defendant failed to respond to plaintiff's request for the source of an erroneous Georgia home address the failure was anything more than negligent. The same is true for the alleged inaccuracies in the credit reports. Nor does plaintiff cite any authority for the proposition that evidence of inaccurate reporting without more is sufficient for a jury to find that a defendant's violations of the FCRA were willful. Accordingly, defendants' motions for summary judgment on plaintiff's claims for willful violations of the FCRA and CCRAA must be granted.

**F. Injunctive Relief (Ninth Cause of Action)**

**1. TRW**

TRW moves for judgment on plaintiff's claim for injunctive relief on the ground that TRW is no longer in the consumer credit reporting business and thus does not engage in any conduct which may be enjoined. *See Andrews v. Trans Union Corp.,* 7 F.Supp.2d 1056, 1082 (C.D.Cal.1998) (dismissing plaintiff's claim for injunctive relief on that ground that "there is no justification for any injunction against TRW ... which itself is no longer covered by the FCRA"). Plaintiff has not offered any justification for injunctive relief against TRW. Accordingly, TRW is also entitled to summary judgment on plaintiff's Ninth Cause of Action.

**2. Equifax and Trans Union**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 8
Not Reported in F.Supp.2d, 1999 WL 179678 (N.D.Cal.)

Equifax's and Trans Union's motions for summary
judgment on the Ninth Cause of Action must be
denied. Since there is a genuine dispute as to the
accuracy of the reports, there may be a need for in-
junctive relief at the conclusion of trial.

### CONCLUSION

For the foregoing reasons, the Court rules as fol-
lows:

1. TRW's motion for partial summary judgment is
GRANTED. Plaintiff's Second, Third, Fourth,
Fifth, Sixth, Eighth, and Ninth Causes of Action are
dismissed.

2. Experian's motion for partial summary judgment
is GRANTED. Plaintiff's Second, Third, Fourth,
Fifth, Sixth, and Eighth Causes of Action are dis-
missed.

3. Equifax's motion for summary judgment is
GRANTED in part and DENIED in part. Plaintiff's
Second, Fourth, Fifth, Sixth, and Eighth Causes of
Action are dismissed.

4. Trans Union's motion for summary judgment is
GRANTED in part and DENIED in part. Plaintiff's
Second, Third, Fourth, Fifth, Sixth and Eighth
Causes of Action are dismissed.

IT IS SO ORDERED.

N.D.Cal.,1999.
Natale v. TRW, Inc.
Not Reported in F.Supp.2d, 1999 WL 179678
(N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

**H**
Yeagley v. Wells Fargo & Co.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Stephen C. YEAGLEY, Plaintiff,
v.
WELLS FARGO & COMPANY et al., Defendant.
No. C 05-03403 CRB.

Jan. 23, 2006.

Gail Killefer, San Francisco, CA, Douglas
Bowdoin, Douglas Bowdoin, P.A., Orlando, FL,
Kathleen Clark Knight, Terry A. Smiljanich, James,
Hoyer, Newcomer & Smiljanich, Tampa, FL, for
Plaintiff.
Michael J. Steiner, Severson & Werson, San Fran-
cisco, CA, for Defendants.

MEMORANDUM AND ORDER

CHARLES R. BREYER, J.
*1 This is a Fair Credit Reporting Act ("FCRA")
class action. Plaintiff seeks damages, attorneys'
fees, declaratory relief, and injunctive relief. De-
fendant Wells Fargo moves to dismiss the claims
for declaratory and injunctive relief on the ground
that such relief is not available under the FCRA.
After carefully considering the papers submitted by
the parties, the Court concludes that oral argument
is unnecessary, *see* Local Rule 7-1(b), and
GRANTS defendant's motion.

ALLEGATIONS OF THE COMPLAINT

Under the FCRA a person may not obtain a credit
report for any purpose unless-"(1) the consumer re-
port is obtained for a purpose for which the con-
sumer report is authorized to be furnished under
this section."15 U.S.C. § 1681b(f).*See* Complaint ¶
17. The permissible purposes generally arise only
in connection with transactions initiated by the con-

sumer (the subject of the credit report).*Id.* ¶
18.However, the FCRA does permit a person to ob-
tain a credit report in the absence of a consumer-ini-
tiated transaction when the recipient of the credit
report "undertakes to extend to the consumer a
'firm offer of credit.' "*Id.* ¶ 19 (citing 15 U.S.C. §
1681b(c)(1)(B)).

Wells Fargo "regularly obtains consumer reports on
large numbers of individuals without their know-
ledge or consent by purchasing 'prescreening' lists
from consumer reporting agencies."*Id.* ¶ 23.Wells
Fargo subsequently mails written solicitations to in-
dividuals on the prescreening reports. *Id.* ¶
24.Plaintiff alleges that these solicitations do not
satisfy the "firm offer of credit" requirement of sec-
tion 1681b(c)(1)(B), and therefore Wells Fargo's
use of the credit reports to make the solicitations vi-
olates the FCRA.*Id.* ¶¶ 32-37.

The First Claim for Relief makes a claim for dam-
ages. The Second makes a claim for declaratory re-
lief, and the Third a claim for injunctive relief.
Wells Fargo moves to dismiss the Second and Third
Claims for Relief on the ground that declaratory
and injunctive relief are not available in a private
action under the FCRA.

DISCUSSION

"Absent the clearest command to the contrary from
Congress, federal courts retain their equitable
power to issue injunctions in suits over which they
have jurisdiction."*Califano v. Yamasaki,* 442 U.S.
682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).
The Fifth Circuit (the only Circuit to have ad-
dressed the issue), and *all* of the district courts to
have reached the issue during the past six years,
have held that Congress did not give the federal
courts the power to issue equitable relief in private
FCRA suits. This Court agrees.

Sections 1681n and 1681o create a private right of
action under the FCRA. *SeeNelson v. Chase Man-*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

Page 2

*hattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir.2002). Section 1681n, entitled "Civil liability for willful noncompliance," provides that any person who willfully violates the FCRA shall be liable to the consumer for actual damages or damages of not less than $100 or more than $1000, punitive damages, and attorneys' fees. 15 U.S.C. § 1681n(a). Thus, it creates a private right of action for *willful* violations. The available remedies do not include injunctive or declaratory relief. Section 1681o, entitled "Civil liability for negligent noncompliance," provides that any person who *negligently* fails to comply with the FCRA may be liable to the consumer for actual damages and attorneys' fees. Again, the section does not mention injunctive or declaratory relief.

*2 By limiting the remedies for private right of actions to damages and attorneys' fees Congress demonstrated that it did not intend for private litigants to obtain injunctive or declarative relief. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). This conclusion is buttressed by the FCRA's affirmative grant of injunctive relief to the Federal Trade Commission. In 15 U.S.C. section 45 Congress "empowered" the FTC to prevent certain persons from violating the FCRA. It later adopted section 1681s which provides that "[c]ompliance with the requirements imposed under this subchapter shall be enforced under the Federal Trade Commission Act by the Federal Trade Commission with respect to consumer reporting agencies and all other persons subject thereto, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to some other government agency." 15 U.S.C. § 1681s(a)(1). This section thus reads as an exclusive grant of the injunctive remedy to the FTC and other delineated government agencies.

Moreover, the FCRA gives federal courts jurisdiction to hear "an action to enforce any *liability* created under this subchapter." 15 U.S.C. § 1681p. The only actions to enforce a "liability" that may be brought by a private litigant are those set forth in 1681n and 1681o, that is, actions for damages and attorneys fees.

Under the private right of action statutes, a defendant is liable only if the private litigant proves the defendant *willfully* or *negligently* violated the FCRA. Under plaintiff's reasoning, a private litigant could also pursue equitable relief for any violation of the Act, even if not negligent or willful. Such an outcome would be contrary to Congress's expressed intent of limiting liability to private litigants to willful or negligent conduct.

The only Circuit to have addressed this issue held that a private litigant may not obtain injunctive or declaratory relief under the FCRA. *Washington v. CSC Credit Services, Inc.,* 199 F.3d 263 (5th Cir.2000). The court held that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC." *Id.* at 268.

The Fifth Circuit concluded that its holding was supported by Congress's subsequent enactment of section 1861u which requires consumer reporting agencies to disclose consumer information to the FBI for counterintelligence purposes. 15 U.S.C. § 1681u. The section also provides consumers with a damages remedy against the government that is nearly identical to the private right of action provisions found in sections 1681n and 1681o. 15 U.S.C. § 1681u(i). Unlike sections 1681n and 1681o, however, section 1681u has an *additional* subsection that gives an aggrieved consumer the right to obtain injunctive relief. 15 U.S.C. § 1681u(m). The Fifth Circuit reasoned that "where Congress intended to allow private injunctive relief under the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

FCRA, it expressly stated that this relief was available. This language would be unnecessary if injunctive relief were otherwise available."199 F.3d at 269;*seealso*Howard v. Blue Ridge Bank, 371 F.Supp.2d 1139, 1145(N.D.Cal.2005) (finding the Fifth Circuit's reasoning in *Washington* persuasive).

*3 Moreover, although the Fifth Circuit is the only Circuit to have addressed the availability of a private right of action for equitable relief under the FCRA, the Third Circuit has considered the availability of equitable relief under the Federal Debt Collection Practices Act ("FDCPA"), a statute with a structure similar to the FCRA. The FDCPA, like the FCRA, has a section giving private litigants the right to pursue damages, 15 U.S.C. § 1692k(a), and a section giving the FTC the right to pursue equitable remedies. 15 U.S.C. § 1692(i). In *Weiss v. Regal Collections,* 385 F.3d 337, 341-42 (3d Cir.2004), the Third Circuit held that a private litigant could not obtain equitable relief under the FDCPA. The court cited the Fifth Circuit's reasoning in *Washington* as support for its holding.

The cases cited by plaintiff are not persuasive. In *Andrews v. Trans Union Corp.,* 7 F.Supp.2d 1056 (C.D.Cal.1998), for example, the court did not discuss the language and structure of the FCRA. In *Natale v. TRW, Inc.,* 1999 WL 179678 (N.D.Cal. March 30, 1999), the defendants did not argue that injunctive relief was not available; instead, all the parties assumed that such relief was available to a private litigant. Plaintiff does not, and cannot, cite a single case which addresses and then refutes the reasoning of the Fifth Circuit in *Washington.*

Plaintiff's contention with respect to the purpose behind the enactment of section 1681u is beside the point. Even assuming plaintiff's argument is correct, it does not respond to the fact that Congress created a private right of action which includes the right to recover only damages and attorneys' fees.

CONCLUSION

The language and structure of the FCRA compel the conclusion that a private litigant may not maintain an action for injunctive relief or declaratory relief under the FCRA. Accordingly, defendants' motion to dismiss the Second and Third Claims for Relief is GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2006.
Yeagley v. Wells Fargo & Co.
Not Reported in F.Supp.2d, 2006 WL 193257 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.